# EXHIBIT A

VIRGINIA:

IN THE CIRCUIT COURT OF THE COUNTY OF DINWIDDIE

GILERY W. ENTZMINGER

and

TIMOTHY KLABUNDE,

        Plaintiffs,

v.                        Case #: CL25000958

LEXINGTON INSURANCE COMPANY,

NATIONAL UNION FIRE INSURANCE COMPANY,

STATE FARM MUTUAL INSURANCE COMPANY,

ACUITY, A MUTUAL INSURANCE COMPANY,

MARKEL INSURANCE COMPANY,

RICKY ARNOLD MCNELLY,

ALAN J. CHENERY, III,

AUDIE CHENERY,

SAMUEL J. BANKS,

VIRGINIA MOTOR SPORT CLUB,

VA. MOTORSPORTS PARK, LLC, d/b/a Virginia Motorsports Park,

VIRGINIA MOTORSPORTS PARK, L.C.,

FRANKLIN COMPANIES, LLC, d/b/a Virginia Motorsports Park,

TOMMY L. FRANKLIN,

        Defendants.

FILED

SEP 2 5 2025

Dinwiddie Circuit Court
Clerk's Office

1

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs Gilery W. Entzminger ("Entzminger") and Timothy Klabunde ("Klabunde") hereby file this Complaint for Declaratory Relief against Lexington Insurance Company ("Lexington") and National Union Fire Insurance Company ("National Union"), and the other Defendants named above, seeking a declaration of Entzminger's and Klabunde's rights under certain insurance policies, and allege as follows:

### I.    NATURE OF ACTION

1.    This is an action seeking declaratory relief pursuant to *Virginia Code* § 8.01-184, *et seq.*, concerning applicable coverage under policies of insurance issued by Lexington and National Union.

2.    More specifically, Enzminger and Klabunde seek a determination that a liability insurance policy issued by Lexington, policy number 41-LX-061736200-0-NH-107 (the "Lexington Policy"), and a related commercial umbrella policy issued by National Union, policy number 29-UD-019919981-0-001 (the "National Union Policy"), afford coverage applicable to their claims for personal injuries described below.

### II.    CLAIMS OF ENTZMINGER AND KLABUNDE TO COVERAGE

3.    The personal injuries in question were suffered by Entzminger and Klabunde on April 1, 2023, while serving as station workers during an autocross event (the "Autocross Event") held in the parking lot of the motor sports park located at 8018 Boydton Plank Road in Dinwiddie County, Virginia (the "Parking Lot") when, standing on the course in their capacity as station workers, they were struck by a car driven by Defendant Ricky Arnold McNelly ("McNelly").

2

4.     There is now pending in this Court a Third Amended Complaint filed by Entzminger, CL25000178, a copy of which is attached as Exhibit 1, the purpose of which is to recover money damages on account of the personal injuries he received as claimed above.

5.     Also, there is now pending in this Court a Third Amended Complaint filed by Klabunde, CL25000168, a copy of which is attached as Exhibit 2, the purpose of which is to recover money damages on account of the personal injuries he received as claimed above.

## III. THE PARTIES

6.     Entzminger, Klabunde, Lexington, and National Union are parties to this Complaint for the reasons stated above.

7.     Defendant State Farm Mutual Insurance Company affords liability insurance to McNelly and also affords uninsured/underinsured motorist coverage to Entzminger.

8.     Defendant Acuity, A Mutual Insurance Company, affords uninsured/underinsured motorist coverage to Klabunde.

9.     Defendant Market Insurance Company affords liability insurance to the defendant Virginia Motor Sport Club.

10.     The other defendants listed are not insurance carriers but are parties because of the allegations asserted below.  Particularly, Franklin Companies and the entities that it controls, Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park, were the insured parties under the insurance policies underlying the dispute in this action.

## IV. THE POLICIES

11.     Attached as Exhibit 3 is a copy of the Lexington Policy, in force during the term January 25, 2023, to January 25, 2025.

12.    Defendant Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park was the applicant/insured under the Lexington Policy. (Exhibit 3, page 1).

13.    The location of the premises to which the Lexington Policy applied included the Parking Lot, located at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803. (Exhibit 3, page 2).

14.    Attached as Exhibit 4 is a copy of the National Union Policy, in force during the term January 25, 2023, to January 25, 2025.

15.    Defendant Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park was the named insured under the National Union Policy. (Exhibit 4, page 181).

16.    The location of the premises to which the National Union Policy applied included the Parking Lot, located at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803. (Exhibit 4, page 181).

17.    The Commercial General Liability Coverage Form (Exhibit 3, page 89) of the Lexington Policy (Exhibit 3, page 116), in relevant part affords coverage to Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park as follows:

> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. (Exhibit 3, page 89).
>     ....
>
> b.    This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:
>
>    (1) The "bodily injury" or "property damage":
>
>       (a)    Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or
>
>       (b)    Arises out of the project or operation shown in the Schedule; (Exhibit 3, page 116).

4

18.    The premises (including the Parking Lot) has been previously identified, and the "project or operation shown in the Schedule" is "Motorsports racing events and activities and operations necessary or incidental to the motorsports racing events and activities." (Exhibit 3, p. 116).

### IV.    FACTS GIVING RISE TO CLAIM FOR COVERAGE

19.    On April 1, 2023, Virginia Motor Sport Club was sponsoring an autocross event with racing vehicles at the Parking Lot.

20.    At that time, Virginia Motorsports Park, L.C. owned the Parking Lot.

21.    At that time, Virginia Motorsports Park, L.C. had leased the premises, including the Parking Lot, to Franklin Companies, LLC, doing business as Va. Motorsports Park, LLC.

22.    The Autocross Event was organized and sponsored by Defendant Virginia Motor Sport Club, under a rental agreement with Defendant Va. Motorsports Club, LLC, d/b/a Virginia Motorsports Park.

23.    Attached as Exhibit 5 is a copy of the rental agreement referred to above, between Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park and Virginia Motor Sport Club (the "Track Rental Agreement").

24.    On April 1, 2023, at approximately 1:50 p.m., McNelly was a participant in the Autocross Event.

25.    At that time and place, McNelly was racing his vehicle in the Autocross Event.

26.    At that time and place, McNelly, as a competitor in the Autocross Event, was permitted to enter the restricted area of competition and was in fact in the restricted area of competition, occupied by competitors like himself.

27.     The restricted area of competition was an area where access to the general public was prohibited.

28.     On April 1, 2023, at approximately 1:50 p.m., Klabunde was a participant in the Autocross Event.

29.     At that time and place, Klabunde was participating in the Autocross Event by serving as a station worker on the autocross course while McNelly was racing his vehicle on the autocross course.

30.     At that time and place, Klabunde was permitted to enter the restricted area of competition and was in fact in the restricted area of competition while the area was occupied by competitors such as McNelly.

31.     On April 1, 2023, at approximately 1:50 p.m., Entzminger was a participant in the Autocross Event.

32.     At that time and place, Entzminger was participating in the Autocross Event by serving as a station worker on the autocross course while McNelly was racing his vehicle on the autocross course.

33.     At that time and place, Entzminger was permitted to enter the restricted area of competition and was in fact, in the restricted area of competition while the area was occupied by competitors such as McNelly.

34.     On April 1, 2023, at approximately 1:50 p.m., while racing his vehicle in the restricted area on the autocross course at the Parking Lot, McNelly lost control of his vehicle and struck Klabunde, causing personal injuries.

6

35.    After thus striking Klabunde, on April 1, 2023, at approximately 1:50 p.m., while racing his vehicle in the restricted area on the autocross course at the Parking Lot, McNelly lost control of his vehicle and struck Entzminger, causing personal injuries.

36.    Many of these facts have been admitted by Defendant Virginia Motor Sport Club in response to Requests for Admission, a copy of which is attached hereto as Exhibit 6.

### V. Klabunde and Entzminger Are Eligible For Coverage Under the Lexington Policy

**A. Coverage for Klabunde and Entzminger under the Lexington Policy.**

37.    The Lexington Policy affords coverage for bodily injury due to an accident in two ways:

      a. For injuries occurring on the Parking Lot; and

      b. For injuries arising from motorsports racing events.

38.    For the reasons stated below, under each clause, Klabunde and Entzminger are entitled to coverage under the Lexington Policy for injuries they suffered during the Autocross Event.

**B. Coverage For Klabunde And Entzminger under Lexington's Motorsports Participants Liability Endorsement**

39.    The Lexington Policy contains an endorsement entitled "Motorsports Participants Liability." (Exhibit 3, page 122).

40.    In relevant part, this endorsement provides coverage "for 'bodily injury' to a 'participant' in any contest or exhibition of an athletic or sports nature ... including any person permitted to enter any 'restricted area' of competition while occupied by competitors. 'Restricted area' means any area where access by the general public is prohibited." *Id.*

41.    When Klabunde and Entzminger were hurt, they were serving as station workers in the Parking Lot and on the autocross course while McNelly was racing on the course.

7

42.     When Klabunde and Entzminger were hurt, they were in the Parking Lot and on the autocross course.

43.     When Klabunde and Entzminger were hurt, they were in a restricted area—namely, in the Parking Lot and on the autocross course.

**C.     Coverage For Klabunde and Entzminger under Lexington's Definition of an Insured**

44.     The Lexington Policy defines who is an insured under the policy. (Exhibit 3, page 97-98).

45.     This definition includes "[y]our 'volunteer workers' only while performing duties related to the conduct of your business …." (Exhibit 3, page 98, Section II (2)(a).)

46.     Klabunde and Entzminger were station workers during the Autocross Event.

**VI. The Lexington Policy Affords Liability Coverage To Various Defendants**

**A.     The Lexington Policy Affords One Million Dollars Of Liability Coverage To Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park On Account Of The Claims Of Damages Asserted Against It By Klabunde In CL25000168 And Affords A Separate One Million Dollars Of Liability Coverage To Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park On Account Of The Claims Of Damages Asserted Against It By Entzminger In CL25000178.**

47.     Entzminger and Klabunde incorporate by reference the allegations set forth in the paragraphs above.

48.     The Subscribing Members Certificate of the Lexington Policy states that Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park is a named insured. (Exhibit 3, page 2).

49.     The Lexington Policy states, "If you are designated in the Declarations as … [a] limited liability company, you are an insured." (Exhibit 3, page 97).

50.     The Lexington Policy affords $1,000,000 liability coverage for each occurrence. (Exhibit 3, page 3).

8

51.    The Lexington Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Exhibit 3, page 103).

52.    McNelly's car struck Klabunde before McNelly's car struck Entzminger.

53.    Klabunde was injured when the front of McNelly's car struck him.

54.    Enzminger was injured when the panel of the passenger door on the driver's side of McNelly's car struck him.

55.    The claims asserted by Klabunde in CL25000168 and the claims asserted by Entzminger in CL25000178 arose from different "occurrences" within the meaning of the Lexington Policy.

56.    The Lexington Policy affords one million dollars of liability coverage to Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park on account of the claims of damages asserted against it by Klabunde in CL25000168 and affords a separate one million dollars of liability coverage to Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park on account of the claims of damages asserted against it by Entzminger in CL25000178.

**B.    The Lexington Policy Affords One Million Dollars Of Liability Coverage To McNelly Under Lexington's "Motorsports Participants Liability" Endorsement On Account Of The Claims Of Damages Asserted Against Him By Klabunde In CL25000168 And Affords A Separate One Million Dollars Of Liability Coverage To McNelly On Account Of The Claims Of Damages Asserted Against Him By Entzminger In CL25000178.**

57. Entzminger and Klabunde incorporate the paragraphs set forth above.

58. The Lexington Policy contains an endorsement entitled "Motorsports Participants Liability". (Exhibit 3, page 122).

59. This endorsement affords coverage "for 'bodily injury' to a 'participant' in any contest or exhibition of an athletic or sports nature." (*Id.*)

60. This endorsement defines "participant" as follows:

'Participant' means any person while trying out, practicing or rehearsing for, or participating in any sport or athletic contest or exhibition, including any person permitted to enter any 'restricted area' of competition while occupied by competitors. (*Id.*)

61. This endorsement defines "restricted area" as "any area where access by the general public is prohibited." (*Id.*)

62. When Klabunde and Entzminger were hurt as alleged in CL25000168 and CL25000178, they were in a "restricted area" within the meaning of this endorsement.

63. When Klabunde and Entzminger were hurt as alleged in CL25000168 and CL25000178, they were "participants" within the meaning of this endorsement.

64. This endorsement affords one million dollars of liability coverage to McNelly on account of the claim of damages asserted against him by Klabunde in CL25000168 and a separate one million dollars of liability coverage on account of damages asserted against him by Entzminger in CL25000178.

**C.    The Lexington Policy Affords One Million Dollars Of Liability Coverage To Alan J. Chenery, III, Audie Chenery, Samuel J. Banks, and Virginia Motor Sport Club Under Lexington's "Additional Insured—Managers or Lessors of Parking Lot" Endorsement On Account Of The Claims Of Damages Asserted Against Them By Klabunde In CL25000168, And Affords A Separate One Million Dollars Of Liability Coverage To These Four Defendants On Account Of The Claims Of Damages Asserted Against Them By Entzminger In CL25000178.**

65. Entzminger and Klabunde incorporate by reference the allegations set forth in the paragraphs above.

66. The Lexington Policy contains an endorsement entitled, "Additional Insured—Managers or Lessors of Parking Lot." (Exhibit 3, page 111).

67. This Endorsement amends the "Who Is An Insured" section of the Lexington Policy to include as an additional insured "those acting on your behalf in connection with the ownership, maintenance or use of the Parking Lot leased to you…." (*Id.*)

68. Pursuant to the terms of the Track Rental Agreement, Virginia Motor Sport Club was contractually obligated in several ways to act on behalf of Va. Motorsports Park, LLC regarding the Parking Lot, including but not limited to the obligation to maintaining the Parking Lot as "a well-groomed and clean facility" for the Autocross Event.

69. At all relevant times Alan J. Chenery was a member of the Virginia Motor Sport Club.

70. At all relevant times Audie Chenery was a member of the Virginia Motor Sport Club and as a member helped organize the Autocross Event and encouraged Entzminger and Klabunde to participate in it in spite of the rain.

71. At all relevant times Samuel J. Banks was a member of the Virginia Motor Sport Club and as a member laid out the course for the Autocross Event.

72. This endorsement affords one million dollars of liability coverage to Alan J. Chenery, III, Audie Chenery, Samuel J. Banks, and Virginia Motor Sport Club on account of the claim of damages asserted against them by Klabunde in CL25000168 and a separate one million dollars of liability coverage on account of damages asserted against them by Entzminger in CL25000178.

**D.      The Lexington Policy Affords One Million Dollars Of Liability Coverage To Alan J. Chenery, III, Audie Chenery, Samuel J. Banks, and Virginia Motor Sport Club Under Lexington's "Additional Insured—Designated Person Or Organization" Endorsement On Account Of The Claims Of Damages Asserted Against Them By Klabunde In CL25000168 And Affords A Separate One Million Dollars Of Liability Coverage To These Four Defendants On Account Of The Claims Of Damages Asserted Against Them By Entzminger In CL25000178.**

11

73. Entzminger and Klabunde incorporate by reference the allegations set forth in the paragraphs above.

74. The Lexington Policy contains an endorsement entitled "Additional Insured—Designated Person Or Organization." (Exhibit 3, page 112).

75. This additional insured clause in relevant part amends the definition of an insured under the Lexington Policy to include "[a]ny person or organization sponsoring racing vehicles or sponsoring racing vehicle drivers" and "[a]ny person or organization sponsoring your activities or events."

76. When the Autocross Event took place, Virginia Motor Sport Club was an organization sponsoring racing vehicles or sponsoring racing vehicle drivers on the Parking Lot within the meaning of the Lexington Policy.

77. When the Autocross Event took place, Virginia Motor Sport Club was an organization sponsoring activities or events within the meaning of the Lexington Policy.

78. This endorsement affords one million dollars of liability coverage to Alan J. Chenery, Audie Chenery, Samuel J. Banks, and Virginia Motor Sport Club on account of the claim of damages asserted against them by Klabunde in CL25000168 and a separate one million dollars of liability coverage on account of damages asserted against them by Entzminger in CL25000178.

12

## VII. The National Union Policy Affords Liability Coverage
### To Various Defendants.

79. Entzminger and Klabunde incorporate by reference the allegations set forth in the paragraphs above.

80. The Named Insured in the National Union Policy is Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park, 8018 Boydton Plank Road, North Dinwiddie, VA 23803. (Exhibit 4, page 181).

81. The National Union Policy contains a definition of "insured". (Exhibit 4, page 233).

82. The National Union Policy defines an insured to include "the Named Insured" and "any person or organization, other than the Named Insured, included as an additional insured under Scheduled Underlying Insurance." (Exhibit 4, page 233 Section M (7)).

83. The Lexington Policy is the "Scheduled Underlying Insurance" referred to above. (Exhibit 4, page 190).

84. Franklin Companies, LLC, d/b/a Virginia Motorsports Park is an additional insured under the Lexington Policy.

85. Ricky Arnold McNelly is an additional insured under the Lexington Policy.

86. Alan J. Chenery, III is an additional insured under the Lexington Policy.

87. Audie Chenery is an additional insured under the Lexington Policy.

88. Samuel J. Banks is an additional insured under the Lexington Policy.

89. Virginia Motor Sport Club is an additional insured under the Lexington Policy.

90. The National Union Policy affords liability coverage to Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park, to Franklin Companies, LLC, d/b/a Virginia Motorsports Park, to

Ricky Arnold McNelly, to Alan J. Chenery, III, to Audie Chenery, to Samuel J. Banks, and to Virginia Motor Sport Club.

## COUNT ONE: DECLARATORY JUDGMENT

91. Entzminger and Klabunde incorporate by reference the allegations set forth in the paragraphs above.

92. An actual controversy exists between Entzminger and Klabunde on the one hand and Lexington and National Union on the other, concerning the availability of liability insurance coverage under the Lexington Policy and the National Union Policy.

93. Entzminger and Klabunde assert that the Lexington Policy and the National Union Policy afford coverage for their claims as explained above, and Lexington and National Union deny the existence and/or extent of such coverage, thereby giving rise to an actual controversy within the meaning of *Virginia Code* § 8.01-184.

94. Entzminger and Klabunde demand a trial by jury of all issues triable by jury.


**WHEREFORE**, Gilery W. Entzminger and Timothy Klabunde respectfully ask this Honorable Court to declare:

1.    That the Lexington Policy affords coverage to each of them in the amount of one million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park.

2.    That the Lexington Policy affords coverage to each of them in the amount of one million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Franklin Companies, LLC, d/b/a Virginia Motorsports Park.

14

3.    That the Lexington Policy affords coverage to each of them in the amount of one million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Ricky Arnold McNelly.

4.    That the Lexington Policy affords coverage to each of them in the amount of one million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Alan J. Chenery, III.

5.    That the Lexington Policy affords coverage to each of them in the amount of one million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Audie Chenery.

6.    That the Lexington Policy affords coverage to each of them in the amount of one million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Samuel J. Banks.

7.    That the Lexington Policy affords coverage to each of them in the amount of one million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Virginia Motor Sport Club.

8.    That the National Union Policy affords coverage to each of them in the amount of four million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Va. Motorsports Park, LLC, d/b/a Virginia Motorsports Park.

9.    That the National Union Policy affords coverage to each of them in the amount of four million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Franklin Companies, LLC, d/b/a Virginia Motorsports Park.

15

10.    That the National Union Policy affords coverage to each of them in the amount of four million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Ricky Arnold McNelly.

11.    That the National Union Policy affords coverage to each of them in the amount of four million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Alan J. Chenery, III.

12.    That the National Union Policy affords coverage to each of them in the amount of four million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Audie Chenery.

13.    That the National Union Policy affords coverage to each of them in the amount of four million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Samuel J. Banks.

14.    That the National Union Policy affords coverage to each of them in the amount of four million dollars for damages sustained by them as alleged in CL25000178 and CL25000168 on account of the negligence of Virginia Motor Sport Club.

15.    That they are entitled to attorney fees, expenses, and costs of litigation.


In addition, Gilery W. Entzminger and Timothy Klabunde ask this Honorable Court to grant them such other and further relief as the Court may deem just and proper.

GILERY W. ENTZMINGER

By _____
    Charles H. Cuthbert, Jr.


16

TIMOTHY KLABUNDE *by CHC, Jr., with permission*

By _Kari La Fratta_
    Kari La Fratta

Charles H. Cuthbert, Jr. (VSB #14519)
Richard M. Cuthbert (VSB #82025)
Cuthbert Law Offices
A Professional Corporation
220 North Sycamore Street
Petersburg, Virginia 23803-3228
Telephone (804) 733-3100; Fax (804) 732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com
*Counsel for Entzminger*

And

Kari J. La Fratta (VSB: 87658)
Richard C. Armstrong (VSB: 46053)
Allen, Allen, Allen & Allen
946 Grady Ave., Suite 201
Charlottesville, VA 22903
Telephone/Fax: 434-284-4291
richard.armstrong@allenandallen.com
kari.lafratta@allenandallen.com
*Counsel for Klabunde*

17

# EXHIBIT 1

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF DINWIDDIE

GILERY W. ENTZMINGER,

     Plaintiff,

v.                          Case No.: CL25000178

RICKY ARNOLD MCNELLY,

ALAN J. CHENERY, III,

AUDIE CHENERY,

VIRGINIA MOTOR SPORT CLUB,

VA. MOTORSPORTS PARK, L.L.C., d/b/a Virginia Motorsports Park,

VIRGINIA MOTORSPORTS PARK, L.C.,

FRANKLIN COMPANIES, L.L.C., d/b/a Virginia Motorsports Park,

TOMMY L. FRANKLIN,

and

SAMUEL J. BANKS,

     Defendants.

Serve:

Samuel J. Banks
6729 Lewis B. Puller Memorial Highway
Mattaponi, VA  23110
(King and Queen County)

Serve pursuant to Virginia Code Section 38.2-2206:
State Farm Mutual Automobile Insurance Company
c/o Corporation Service Company, Registered Agent
100 Shockoe Slip, Fl. 2
Richmond, VA  23219


EXHIBIT 1

1

## THIRD AMENDED COMPLAINT

### The Incident

1.      This Third Amended Complaint arises from an incident on Saturday April 1, 2023, in the early afternoon, in which Plaintiff, Gilery W. Entzminger ("Entzminger") was seriously injured when a motor vehicle (the "Vehicle") driven by defendant Ricky Arnold McNelly ("McNelly") struck Entzminger, a pedestrian (the "Incident") during an autocross event[1] (the "Event") held, organized, and sponsored by the defendant Virginia Motor Sport Club.

2.      The Incident took place in a parking lot at the Virginia Motorsports Park, located at 8018 Boydton Plank Road, North Dinwiddie, Virginia, 23803 (the "Parking Lot").

3.      At all relevant times, the Parking Lot was owned by the defendant Virginia Motorsports Park, L.C. and leased by defendant Virginia Motorsports Park, L.C. to Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park.

4.      At all relevant times, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park did business as Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park.

5.      At all relevant times Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park did business as Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park.

6.      At all relevant times, the Parking Lot was operated by the defendant Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park and by Franklin Companies, L.L.C d/b/a Virginia Motorsports Park (collectively, "Virginia Motorsports Park").

7.      Virginia Motorsports Park permitted Virginia Motor Sport Club to hold the Event in the Parking Lot.

---

[1]  An "autocross event" is a timed competition in which drivers navigate through a defined course.

8.    When the Incident took place, McNelly was driving a motor vehicle (the "Vehicle") as a participant in the Event and Entzminger was serving as a volunteer station worker.

9.    At all relevant times, Alan J. Chenery, III ("Mr. Chenery") was the President of Virginia Motor Sport Club.

10.    As President of Virginia Motor Sport Club, Mr. Chenery was responsible for planning and directing the safe operation of autocross events, including the Event.

11.    At all relevant times, Audie Chenery ("Mrs. Chenery") was the Virginia Motor Sport Club Chief Instructor and Head of School for the Event.

12.    Mrs. Chenery was responsible for planning and directing the safe operation of autocross events, including the Event.

13.    Virginia Motor Sport Club advertises itself as a club that has been hosting safe autocross events for members and guests since 1950.

14.    At the time of the Incident, Entzminger was a member of Virginia Motor Sport Club and was participating in the Event in his capacity as a member of that Club.

15.    To be a member of the Virginia Motor Sport Club for 2023, Entzminger paid the Virginia Motor Sport Club $25 annual dues.

16.    To register for the Event, Entzminger paid the Virginia Motor Sport Club a $50 registration fee.

17.    At the time of the Incident, McNelly was a member and/or guest of Virginia Motor Sport Club and was participating in the Event in his capacity as a member and/or guest of that Club.

18.    Virginia Motor Sport Club and/or its employees or agents designed and

3

constructed the Event's autocross course, including placement of road cones marking the route of the course that McNelly was attempting to navigate at the time he struck Entzminger.

19.    At the direction of Virginia Motor Sport Club and/or one or more of its employees or agents, Entzminger served as a volunteer station worker and was instructed to stand in a particular location.

20.    The particular location where Entzminger was instructed to stand was near a slalom (the "Slalom").

21.    Just before he was struck by McNelly, Entzminger was standing where Virginia Motor Sport Club and/or one or more of its employees or agents had instructed him to stand.

22.    Prior to the Incident, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery were aware of rainy conditions forecasted for April 1, 2023.

23.    When the Incident occurred, the surface of the Parking Lot was wet due to rain, including pools of rainwater that had accumulated due to defects in the surface of the Parking Lot.

24.    Prior to the Incident, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery were responsible for inspecting the vehicles participating in the Event.

25.    The purpose of those inspections was to ensure participant safety, including the safety of the volunteer station workers such as Entzminger.

26.    Those inspections included inspection of participating vehicles' tires for appropriate tread depth.

27.    When the Incident took place, the tires of McNelly's motor vehicle had insufficient tread to allow McNelly to maintain control of his motor vehicle under the conditions then and there existing and McNelly knew or should have known this.

4

28.    When the Incident took place, the tires of McNelly's motor vehicle had insufficient tread to allow McNelly to maintain control of his motor vehicle under the conditions then and there existing and Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery knew or should have known this.

### The Parties

29.    Plaintiff Gilery W. Entzminger is a resident of the Commonwealth of Virginia, residing in Midlothian, Virginia.

30.    Defendant Ricky Arnold McNelly is a resident of the Commonwealth of Virginia, residing in Portsmouth, Virginia.

31.    Defendant Alan J. Chenery, III is a resident of the Commonwealth of Virginia, residing in Midlothian, Virginia.

32.    Defendant Audie Chenery is a resident of the Commonwealth of Virginia, residing in Midlothian, Virginia.

33.     Defendant Virginia Motor Sport Club is a nonstock corporation, registered with the Virginia State Corporation Commission, entity ID 00722272, with a principal office address located in Colonial Heights, Virginia.

34.    Defendant Va. Motorsports Park, L.L.C. is a limited liability company, registered with the Virginia State Corporation Commission, entity ID S7095104, with a principal office address located in Fredericksburg, Virginia.

35.    Defendant Virginia Motorsports Park, L.C. is a limited liability company, registered with the Virginia State Corporation Commission, entity ID S0020844, with a principal office address located in Ashland, Virginia.

36.    Defendant Franklin Companies, L.L.C. is a limited liability company, registered

5

with the Virginia State Corporation Commission, entity ID S1036781, with a principal office address located in Fredericksburg, VA.

37.    Defendant Tommy Franklin is a resident of the Commonwealth of Virginia, residing in Fredericksburg, Virginia.

The Parking Lot

38.    At all times relevant herein, Virginia Motorsports Park, L.C. owned the Parking Lot located in Dinwiddie, Virginia, large enough to be used as a track (the "Track") on which to conduct autocross events.

39.    At all times relevant herein, Virginia Motorsports Park had legal control over and operated the Parking Lot.

40.    By contract ("Contract") executed on or about January 18, 2023, Virginia Motorsports Park agreed to provide Virginia Motor Sport Club the exclusive right to use the Parking Lot on certain specified dates for autocross events, with rental payments due at the completion of each event. (Contract attached hereto as Exhibit 1).

41.    One of the dates included in the Contract was April 1, 2023, the date of the Incident.

42.    Pursuant to the Contract, Virginia Motorsports Park and/or Virginia Motor Sport Club assumed mutually defined duties and received mutually defined benefits.

43.    Pursuant to the terms of the Contract, in exchange for being paid a rental fee of $1,500.00, Virginia Motorsports Park agreed to provide:

      a.    A well-groomed and clean facility

      b.    A functional and well-maintained control tower

      c.    Adequate facility lighting

6

    d.  Clean and well-maintained restroom and/or port-a-johns with all necessary supplies and services

    e.  Clean and well-maintained pit and spectator parking areas

    f.  Water, electricity, adequate sewage and/or septic service.

44.    Pursuant to the terms of the Contract, in exchange for being allowed to use the Parking Lot on the agreed dates, Virginia Motor Sport Club agreed that "[a]ll racing activities shall be conducted in conformity with NHRA rules and regulations, and that it would "comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK."

45.    Additionally, Virginia Motorsports Park, L.C. was an organizer of the Event. (See Event announcement, attached hereto as Exhibit 2).

46.    Additionally, Virginia Motorsports Park was an organizer of the Event. (See Event announcement, attached hereto as Exhibit 2).

<u>Count 1: Negligence of McNelly</u>

47.    Entzminger incorporates all paragraphs above as if set forth fully in this Count.

48.    When the Incident took place, McNelly owed Entzminger various duties of ordinary care, including but not limited to the duty:

    a.  To operate a motor vehicle with reasonable care;

    b.  To keep a motor vehicle under control;

    c.  To operate a motor vehicle at a reasonable rate of speed under the conditions then and there existing;

    d.  To keep a proper lookout;

    e.  To use reasonable care to see that the vehicle had appropriate tires for the conditions then and there existing;

7

    f.   To inspect the Vehicle;

    g.   To maintain the Vehicle;

    h.   To repair the Vehicle;

    i.   To replace worn tires on the Vehicle;

    j.   To abide by the basic rules of the road.

49.    McNelly negligently breached each of these and other duties in numerous ways.

50.    As a direct and proximate result of this negligence, Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 2: Negligence of McNelly</u>

51.    Entzminger incorporates all paragraphs above as if set forth fully in this Count.

52.    When the Incident took place, McNelly owed Entzminger various duties of ordinary care, including but not limited to the duty to use reasonable care to equip the Vehicle with proper and/or properly maintained equipment, including using tires that were safe under the circumstances then and there existing.

53.    McNelly negligently breached these duties in numerous ways.

54.    As a direct and proximate result of this negligence, Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

**Count 3: Negligence of Virginia Motor Sport Club, Alan J. Chenery, III, and Audie Chenery**

55.    Entzminger incorporates all paragraphs above as if set forth fully in this Count.

56.    On the date of the Incident, Virginia Motor Sport Club planned, controlled, and was in charge of the Event.

57.    Despite significant rainfall that preceded the Event, and continued throughout the Event, Virginia Motor Sport Club, by and through its employees and/or agents, including President Mr. Chenery and Chief Instructor and Head of School Mrs. Chenery, decided to proceed with the Event, imposing no additional safeguards to account for the rain and the pools of rainwater that had accumulated in defects in the paved surface of the Parking Lot.

58.    Mrs. Chenery sent emails to Entzminger and others in the days leading up to the Event that "racing in the rain is a blast," and that "it is fun to run on wet pavement."

59.    Despite the increased danger posed by the wet pavement and continued rain during the Event, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery took no added precautions to make sure that the Parking Lot was safe for the Event's volunteer station workers like Entzminger.

60.    This lack of precautions posed dangers to volunteer station workers like Entzminger even if the Parking Lot had been dry, but under the wet conditions prevailing at the Parking Lot during the Event, the danger was multiplied.

61.    Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery, in conducting the Event, had duties to undertake safety precautions that it owed to the participants such as Entzminger.

62.    Further, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery were aware, or should have been aware, of the added dangers posed by holding the Event in rainy conditions,

9

on a paved surface on which water had pooled.

63.  Virginia Motor Sport Club, its President Mr. Chenery, and its Chief Instructor and Head of School Mrs. Chenery owed Entzminger various duties of ordinary care, including but not limited to:

a.  A duty to inspect the vehicles participating in the Event to make sure that tires on the vehicles are in good condition and with appropriate tread for the conditions then and there existing;

b.  When laying out the Event course, a duty to provide a minimum of 25 feet of clearance between objects (including Parking Lot workers) on straightaways and on the inside of turns;

c.  When laying out the Event course, a duty to provide a minimum of 75 feet of clearance between objects (including volunteer station workers such as Entzminger) on the outside of turns;

d.  When laying out the Event course, a duty to provide a minimum of 100 feet of clearance to any spectator area;

e.  A duty to pre-check the Event course to ensure it met all applicable standards.

f.  A duty to lay out the Event course in conformity with industry standards.

64.  Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery breached these duties in numerous ways, including but not limited to:

a.  Deciding to route the driving course for the Event through standing pools of rainwater, and then taking action to carry out that decision.

b.  Deciding to route the driving course for the Event in dangerous proximity to where station workers such as Entzminger were to stand, and then taking

10

action to carry out that decision.

c. Deciding to hold the Event in spite of the rain, and then taking action to carry out that decision.

d. Failing to place volunteer station workers such as Entzminger at a safe distance from the course, and instead placing them in a more dangerous location in violation of their duties and accepted industry standards, and only exacerbated by the wet conditions prevailing on the day of the Event;

e. Failing to properly inspect the tires of the Vehicle to ensure that they contained sufficient tread to hold their grip in the turns and slaloms, and instead allow drivers with insufficient tire tread like Defendant McNelly to drive on the course in violation of their duty to inspect, exacerbated by the wet conditions prevailing on the day of the Event;

f. Failing to place volunteer station workers such as Entzminger behind safety barriers which would provide protection from racing vehicles losing traction on the paved surface, and instead placing them in areas where they were exposed to danger of vehicle losing control, exacerbated by the wet conditions prevailing on the day of the Event;

g. Failing to place volunteer station workers such as Entzminger in safe locations, at a safe distance from the slaloms, and instead placing them too close to the slaloms, exacerbated by the wet conditions prevailing on the day of the Event;

h. Failing to provide adequate training for the station workers such as Entzminger—who were not paid professionals, but were volunteers—before

11

directing them where to stand, and instead allowing them onto areas of the course where they would be endangered from vehicles losing control;

i.  Failing to ensure that worker station coaches were in close enough proximity to the volunteer station workers such as Entzminger to provide direction and safety instruction, and instead placing them away from the volunteers;

j.  Failing to utilize a course design that placed slalom areas and turn areas at a safe distance from the standing pools of rainwater, thereby decreasing the risk of loss of vehicle control and collision with volunteer station workers such as Entzminger, and instead utilizing a course design where slalom areas and turn areas were not at a safe distance from the pools of standing water.

65.    As a direct and proximate result of this negligence, Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 4: Negligence of Virginia Motorsports Park, L.C.</u>

66.    Entzminger incorporates all paragraphs above as if set forth fully in this Count.

67.    The Parking Lot was poorly maintained. For example, it contained uneven portions of pavement that failed to properly drain in rainy weather conditions and constituted an unreasonably unsafe condition.

68.    On the day of the Incident, the poorly maintained and uneven portions of the Parking Lot pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer

Parking Lot workers such as Entzminger.

69.    The uneven portions of the Parking Lot's pavement caused water to pool within the slalom portion of the Parking Lot over which McNelly drove his vehicle just prior to losing control of the vehicle and striking Entzminger.

70.    As the owner of the Parking Lot, and particularly knowing that the Parking Lot was likely to be used for autocross events, including knowing that the Parking Lot had been rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia Motorsports Park, L.C. had a non-delegable duty to maintain the Parking Lot premises in a reasonably safe condition for its intended use.

71.    As the owner of the Parking Lot, and particularly knowing that the Parking Lot was likely to be used for autocross events, including knowing that the Parking Lot had been rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia Motorsports Park, L.C. had a non-delegable duty to remove pooling water from the Parking Lot surface when, as here, the pooling water created an unsafe condition.

72.    As the owner of the Parking Lot and particularly knowing that the Parking Lot was likely to be used for autocross events, including knowing that the Parking Lot had been rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia Motorsports Park, L.C. had a non-delegable duty to warn invitees like Entzminger of the unsafe conditions.

73.    Upon information and belief, the Parking Lot had been rented for autocross events, either by Va. Motorsports Park, L.C. or with Va. Motorsports Park, L.C's knowledge, in years prior to the Incident.

74.    As the owner of the Parking Lot, and particularly knowing that the Parking Lot

13

was likely to be used for autocross events, including knowing that the Parking Lot had been
rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia
Motorsports Park, L.C. was aware, or should have been aware, that for the safety of participants
in autocross events where vehicles would be proceeding on its paved facility at high rates of
speed through slaloms, the Parking Lot needed to be in a safe condition for its intended use. This
common law duty to participants in the Event was also reflected in its contractual agreement to
provide a "well-groomed" facility.

75.    Virginia Motorsports Park, L.C. knew or should have known of the defects in the
Parking Lot pavement and of the dangers that they posed to drivers and volunteer station workers
like Entzminger.

76.    Virginia Motorsports Park, L.C. knew or should have known that these defects
caused water to pool in certain areas of the Parking Lot pavement and knew or should have
known that these pools of rainwater posed dangers to drivers and volunteer station workers,
including Entzminger.

77.    Despite its awareness or constructive awareness of the defects in its premises and
the dangers that these defects posed when it rained and pools of rainwater formed, Virginia
Motorsports Park, L.C. failed to warn any of the participants or volunteer station workers,
including Entzminger, of this defect.

78.    Despite its awareness or constructive awareness of the defects in its premises,
Virginia Motorsports Park, L.C. failed to repair these defects prior to the Event.

79.    Although Virginia Motorsports Park, L.C. knew that the Parking Lot posed a
danger to autocross participants when wet, and particularly during heavy rains, it made no effort
to limit or prevent autocross events in heavy rain, or when pools of rainwater formed on the

14

Parking Lot.

80. Virginia Motorsports Park, L.C. owed Entzminger various duties of ordinary care, including but not limited to:

    a. A non-delegable duty properly to maintain the Parking Lot for the anticipated use as a surface for autocross events.

    b. A non-delegable duty to warn invitees like Entzminger of the unsafe condition of the Parking Lot when used in the rain for autocross purposes.

81. Virginia Motorsports Park, L.C. breached these duties in numerous ways.

82. As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of water created as a result of the Parking Lot's defects, and lost control of his vehicle causing it to strike Entzminger. Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

## Count 5: Negligence of Va. Motorsports Park, L.L.C.

83. Entzminger incorporates all paragraphs above as if set forth fully in this Count.

84. At all times relevant, Va. Motorsports Park, L.L.C. did business as Virginia Motorsports Park.

85. Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park was an organizer of the Event.

86. As an organizer of the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger the same duties as those owed by Virginia Motor Sport

15

Club, Alan J. Chenery, III, and Audie Chenery, which were enumerated in Count 3, and it is similarly negligent for its failure to adequately fulfill those duties.

87.    In addition to the duties and negligence enumerated in Count 3, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed duties and was negligent as follows.

88.    On the date of the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park operated the Parking Lot.

89.    Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park maintained the Parking Lot poorly.  For example, the Parking Lot contained uneven portions of pavement that failed to properly drain in rainy weather conditions and constituted an unreasonably unsafe condition.

90.    On the day of the Incident, the poorly maintained and uneven portions of Parking Lot pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Entminger.

91.    The uneven portions of Parking Lot pavement caused water to pool within the slalom portion of the Parking Lot, over which McNelly drove his vehicle just prior to losing control of the vehicle and striking Entzminger.

92.    As the operator of the Parking Lot, and particularly knowing that it had rented the Parking Lot to Virginia Motor Sport Club for autocross events, including the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park had a non-delegable duty to maintain the Parking Lot premises in a reasonably safe condition for its intended use.

93.    As the operator of the Parking Lot and particularly knowing that it had rented the Parking Lot to Virginia Motor Sport Club for autocross events, including the Event, Va.

16

Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park had a non-delegable duty to remove pooling water from the Parking Lot surface when it created an unsafe condition.

94.    As the operator of the Parking Lot and particularly knowing that it had rented the Parking Lot to Virginia Motor Sport Club for autocross events, including the Event, Va. Motorsports Park, L.L.C., d/b/a Virginia Motorsports Park had a non-delegable duty to warn invitees like Entzminger of the unsafe conditions.

95.    By contract, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park specifically agreed to rent the Parking Lot to Virginia Motor Sport Club for the intended use of holding autocross events.

96.    As operator of the Parking Lot, and particularly knowing that it had rented the Parking Lot  to Virginia Motor Sport Club for autocross events, including the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park was aware, or should have been aware, that for the safety of participants in autocross events where vehicles would be travelling on its paved facility at high rates of speed through slalom-like conditions, the Parking Lot needed to be in a safe condition for its intended use. This common law duty to participants in the Event was also reflected in its contractual agreement to provide a "well-groomed" facility.

97.    Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew or should have known of the defects in the Parking Lot pavement and of the dangers that they posed to drivers and volunteer station workers, including Entzminger.

98.    Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew or should have known that these defects caused water to pool in certain areas of the Parking Lot pavement and knew or should have known that these pools of rainwater posed dangers to drivers and volunteer station workers like Entzminger.

17

99.     Despite its awareness or constructive awareness of the defects in the premises, and the dangers that these defects posed when it rained and pools of rainwater formed, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to warn any of the participants or volunteer station workers, including Entzminger, of this defect.

100.    Despite its awareness, or constructive awareness of the defects in the premises, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to repair these defects prior to the Event.

101.    Although Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew that the Parking Lot posed a danger to autocross participants when wet, and particularly during heavy rains, it made no effort through its contractual arrangement with Virginia Motor Sport Club to limit or prevent autocross events in heavy rain, or when pools of rainwater formed on the Parking Lot.

102.    As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of water created as a result of this Parking Lot defect, and he lost control of his vehicle, causing it to strike Entzminger. As a direct and proximate result, Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

Count 6: Negligence of Virginia Motorsports Park, L.C.

103.    Entzminger incorporates all paragraphs above, as if set forth fully in this Count.

104.    As the owner of the Parking Lot, Virginia Motorsports Park, L.C. owed Entzminger a duty to have the premises in a reasonably safe condition for Entzminger's use,

specifically knowing that the Parking Lot was likely to be used for autocross events, including an autocross race on the date of the Incident.

105. As the owner of the Parking Lot, Virginia Motorsports Park, L.C. owed Entzminger a duty to use ordinary care to warn Entzminger of the unsafe condition of the Parking Lot.

106. As the owner of the Parking Lot, Virginia Motorsports Park, L.C. owed Entzminger a duty to use ordinary care to remove the pools of rainwater from the Parking Lot which it knew or should have known would create an unsafe condition for Entzminger's use.

107. As the owner of the Parking Lot, Virginia Motorsports Park, L.C. owed Entzminger a duty to use ordinary care in the activities on the Parking Lot to avoid injury to Entzminger.

108. On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Entzminger.

109. Virginia Motorsports Park, L.C. knew or should have known of the defects in the pavement and of the dangers that they posed to drivers and to volunteer station workers such as Entzminger.

110. Despite its awareness or constructive awareness of the defects in its premises, Virginia Motorsports Park, L.C. failed to warn any of the participants or volunteer station workers, including Entzminger, of these defects.

111. Despite its awareness or constructive awareness of the defects in its premises, Virginia Motorsports Park, L.C. failed to eliminate these defects prior to the Event and failed to

19

remove the pools of rainwater from the Parking Lot.

112.    As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of rainwater created as a result of these Parking Lot defects, and he lost control of his vehicle causing it to strike Entzminger. As a direct and proximate result, Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 7:  Negligence of Va. Motorsports Park, L.L.C.</u>

113.    Entzminger incorporates all paragraphs above as if set forth fully in this Count.

114.    As the operator of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park was a legal occupant of the Parking Lot.

115.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to have the premises in a reasonably safe condition for Entzminger's use, specifically knowing that the Parking Lot would be used to hold an autocross event on the date of the Incident.

116.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to use ordinary care to warn Entzminger of the unsafe conditions prevailing on the Parking Lot.

117.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to use ordinary care to remove the pools of rainwater from the Parking Lot, which it knew or should have known would create an unsafe condition for Entzminger's use.

118.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to use ordinary care in the activities on the Parking Lot to avoid injury to Entzminger.

119.    On the day of the Incident, the poorly maintained and uneven portions of the Parking Lot's pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Entzminger.

120.    Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew or should have known of the defects in the Parking Lot's pavement and of the dangers that they posed to drivers and to volunteer station workers such as Entzminger.

121.    Despite its awareness, or constructive awareness of the defects in its premises, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to warn any of the participants or volunteer station workers, including Entzminger, of these defects.

122.    Despite its awareness or constructive awareness of the defects in its premises, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to repair these defects prior to the Event and failed to remove the pools or rainwater from the Parking Lot.

123.    As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of rainwater created as a result of these Parking Lot defects, and lost control of his vehicle causing it to strike Entzminger. As a direct and proximate result Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

21

## Count 8: Negligence of Franklin Companies, L.L.C.

124.    Entzminger incorporates all paragraphs above, as if set forth fully in this Count.

125.    On the date of the Event, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park was a tenant of and operated the Parking Lot where the Event was held.

126.    Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park owed everyone using the Parking Lot for the Event, including Entzminger, a duty to maintain the Parking Lot appropriately for that use, including those duties enumerated below.

127.    The Parking Lot was poorly maintained.  For example, it contained uneven portions of pavement that failed to properly drain in rainy weather conditions and constituted an unreasonably unsafe condition.

128.    On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating puddles of water on the Track, and creating dangerous conditions for the drivers at the Event as well as for the volunteer Track workers.

129.    The uneven portions of pavement caused water to pool within the slalom portion of the track, over which McNelly drove his vehicle, just prior to losing control of the vehicle and striking Entzminger.

130.    As the tenant and operator of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park had a duty to maintain the Parking Lot in a reasonably safe condition for its intended use.

131.    As tenant and operator of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin

22

Companies, L.L.C. d/b/a Virginia Motorsports Park had a duty to remove pooling water from the Track surface when it created an unsafe condition.

132.    As tenant and operator of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park had a duty to warn invitees, like Entzminger, of the unsafe conditions.

133.    As tenant and operator of the Track, and particularly knowing that the track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park was aware, or should have been aware, that for the safety of participants in autocross events where vehicles would be proceeding on its paved facility at high rates of speed, through slalom-like conditions, the Track needed to be in a safe condition for its intended use.

134.    Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park knew or should have known, of the defects in the pavement and of the dangers that they posed to drivers and Track workers at the Event.

135.    As tenant and operator of the Parking Lot, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to have the premises in a reasonably safe condition for Entzminger's use, specifically knowing that the Parking Lot would be used to hold an autocross race on the date of the Incident.

136.    As tenant and operator of the Parking Lot, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to use ordinary care to warn Entzminger of the unsafe condition of the Parking Lot.

23

137.    As tenant and operator of the Parking Lot, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to use ordinary care to remove the pools of rainwater from the Parking Lot which it knew or should have known would create an unsafe condition for Entzminger's use.

138.    As tenant and operator of the Parking Lot, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park owed Entzminger a duty to use ordinary care in the activities on the Parking Lot to avoid injury to Entzminger.

139.    On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Entzminger.

140.    Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park knew or should have known of the defects in the pavement and of the dangers that they posed to drivers and to volunteer station workers such as Entzminger.

141.    Despite its awareness, or constructive awareness of the defects in its premises, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park failed to warn any of the participants or volunteer Track workers, including Entzminger, of this defect.

142.    Despite its awareness or constructive awareness of the defects in its premises, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park failed to eliminate these defects prior to the Event and failed to remove the pools of rainwater from the Parking Lot.

143.    As a direct and proximate result of this negligence, as McNelly drove through the slalom, his vehicle crossed one such puddle created as a result of Track defect, and lost control of his vehicle causing it to strike Entzminger. Entzminger suffered serious and permanent

24

injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 9: Negligence of Tommy Franklin</u>

144.    Entzminger incorporates all paragraphs above, as if set forth fully in this Count.

145.    Tommy Franklin is the owner and/or organizer of Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park and Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports (previously identified, collectively as "Virginia Motorsports Park").

146.    On the date of the Event, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park was a tenant of the Track and operated the Parking Lot.

147.    By contract, Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park specifically agreed to maintain the Parking Lot.

148.    By contract, Tommy Franklin was a personal guarantor of Franklin Companies, L.L.C. and/or Virginia Motorsports Park and as such personally guaranteed timely performance by Franklin Companies, L.L.C. and/or Virginia Motorsports Park of all covenants and obligations of the Lease, including the obligation to maintain the premises of the Track, including the Parking Lot. Without regard to his contractual duties, Tommy Franklin owed everyone using the parking lot for the Event a duty to maintain the Parking Lot appropriately for that use, including those duties enumerated below. By agreeing to act as a guarantor for Franklin Companies, L.L.C. and/or Virginia Motorsports Park, Tommy Franklin assumed all of the duties that Franklin Companies, L.L.C. and/or Virginia Motorsports Park owed, including those enumerated below.

149.    The Parking Lot was poorly maintained.  For example, it contained uneven portions of pavement that failed to properly drain in rainy weather conditions and constituted an unreasonably unsafe condition.

150.    On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating puddles of water on the Track, and creating dangerous conditions for the drivers at the Event as well as for the volunteer Track workers.

151.    The uneven portions of pavement caused water to pool within the slalom portion of the track, over which McNelly drove his vehicle, just prior to losing control of the vehicle and striking Entzminger.

152.    As personal guarantor of Franklin Companies, L.L.C. and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Tommy Franklin had a duty to maintain the Parking Lot in a reasonably safe condition for its intended use.

153.    As personal guarantor of Franklin Companies, L.L.C. and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Tommy Franklin had a duty to remove pooling water from the Track surface when it created an unsafe condition.

154.    As personal guarantor of Franklin Companies, L.L.C. and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Tommy Franklin had a duty to warn invitees, like Entzminger, of the unsafe conditions.

155.    As personal guarantor of Franklin Companies, L.L.C. and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Tommy Franklin was aware, or should have been aware, that for the safety of participants in autocross events where vehicles would be proceeding on its paved facility at high rates of speed, through slalom-like conditions, the Track needed to be in a safe condition for its intended use.

156.    As personal guarantor of Franklin Companies, L.L.C. and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, Tommy Franklin knew or should have known of the defects in the pavement and of the dangers that they posed to drivers and Track workers at the Event.

157.    Despite Tommy Franklin's awareness, or constructive awareness of the defects in the premises, Tommy Franklin failed to warn any of the participants or volunteer Track workers, including Entzminger, of this defect.

158.    Despite its awareness or constructive awareness of the defects in its premises, Franklin Companies, L.L.C. and/or Virginia Motorsports Park failed to eliminate these defects prior to the Event and failed to remove the pools of rainwater from the Parking Lot.

159.    As a direct and proximate result of this negligence, as McNelly drove through the slalom, his vehicle crossed one such puddle created as a result of Track defect, and lost control of his vehicle causing it to strike Entzminger. Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and

27

earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

Count 10: Negligence of Samuel J. Banks

160.    Entzminger incorporates all paragraphs above, as if set forth fully in this Count.

161.    The defendant Samuel J. Banks ("Mr. Banks") designed the driving course for the Event and put in place the orange cones that marked the route of the Event's driving course.

162.    When the Event took place, Mr. Banks owed Entzminger various duties of ordinary care, including but not limited to the duty to use ordinary care in designing the driving course, marking the driving course, and preparing for, staging, setting up, conducting, and otherwise assisting with the Event.

163.    Mr. Banks breached these duties in numerous ways, including but not limited to:

    a.    Deciding to route the driving course for the Event through standing pools of rainwater and then taking action to carry out that decision.

    b.    Deciding to route the driving course for the Event in dangerous proximity to where station workers such as Entzminger were to stand and then taking action to carry out that decision.

    c.    Deciding to hold the Event in spite of the rain and then taking action to carry out that decision.

164.    As a direct and proximate result of this negligence, Entzminger suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

28

**WHEREFORE** the plaintiff, Gilery W. Entzminger, demands judgment against the defendants Ricky Arnold McNelly, Alan J. Chenery, III, Audie Chenery, Virginia Motor Sport Club, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park, Virginia Motorsports Park, L.C., Franklin Companies, L.L.C. d/b/a Virginia Motorsports Park, Tommy Franklin, and Samuel J. Banks, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000), in compensatory damages, plus interest from April 1, 2023, and costs.

Trial by jury is demanded.

GILERY W. ENTZMINGER

By: _____
                    Counsel

Charles H. Cuthbert, Jr. (VSB # 14519)
Richard M. Cuthbert (VSB # 82025)
Cuthbert Law Offices
220 N. Sycamore Street
Petersburg, VA 23803
Phone: 804-733-3100
Fax: 804-732-4658
ccuthbert@cuthbertlaw.com
rcuthbert@cuthbertlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Third Amended Complaint was sent by email this _6th_ day of March, 2025 to:

Christopher R. Hedrick, Esquire
Mason, Mason, Walker, & Hedrick, P.C.
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
Phone: 757-873-3909
Fax:    757-873-1781
chedrick@masonwalker.com
*Counsel for Defendant Ricky Arnold McNelly*

Mark C. Nanavati, Esquire
G. Christopher Jones, Jr., Esquire
Sinnott, Nuchols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114
Phone: 804-893-3866 (Nanavati)
Phone: 804-893-3864 (Jones)
Fax:    804-378-2610
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Defendant Virginia Motorsports Park, L.C.*


James R. Jebo, Esquire
Julian Viscidi, Esquire
Harman, Claytor, Corrigan & Wellman
PO Box 70280
Richmond, VA 23255
Phone: 804-747-5200
Fax:    804-747-6085
jjebo@hccw.com
jviscidi@hccw.com
*Counsel for Defendants Audie Chenery, Alan Chenery and Virginia Motor Sport Club*


Matthew D. Green, Esquire
Sands Anderson PC
919 East Main Street, Suite 2300 (23219)
PO Box 1998
Richmond, VA 23218-1998
Phone: 804-648-1636
Fax:    804-783-7291
mgreen@sandsanderson.com
*Counsel for Defendant Virginia Motorsports Park, LLC*


Charles H. Cuthbert, Jr.

30

# VIRGINIA MOTORSPORTS PARK
# TRACK RENTAL AGREEMENT
2023 MOTORSPORTS SEASON

This document shall constitute an Agreement between Virginia Motor Sport Club (referred to herein as COMPANY), a Virginia established with Virginia Motorsports Park, a Virginia established entity (referred to herein as TRACK). The purpose of this Agreement is for producing multiple autocross events (referred to herein as EVENT) at the Virginia Motorsports Park facility on the days of April 1, April 9, June 17, August 5, September 16, November 4, and December 2, 2023.

The TRACK is the operator of the racetrack known as Virginia Motorsports Park, located in Dinwiddie, Virginia.

## TERM

The term of this Agreement shall be one year in length and be from January 1, 2023, through December 31, 2023. This agreement may be terminated by either party by providing a written request for termination within ninety (90) days following each event, each year. If no termination request is submitted by either party within the ninety (90) day period, then the Agreement will have the first right of refusal for the following calendar year.

## GRANT

During the term of this agreement, the TRACK hereby grants an exclusive track rental to EVENT for an autocross event, with one day of events, setup, and teardown in the same day. The EVENT is to pay a rental payment to TRACK for the completion of each event day. The TRACK reserves the right to conduct normal track business during the set-up and tear-down hours, not to unreasonably interfere with the operations of the Event.

## RENTAL PAYMENT

The TRACK shall rent its facilities to EVENT for a total of one thousand, five hundred dollars ($1500.00). In addition to the rental consideration, EVENT shall pay to TRACK specific approved expense ("Estimated Budget") paid by the TRACK for services rendered during the Event as outlined in "Exhibit A" attached hereto.

For this rental payment, the TRACK will be required to provide the following:

- A well-groomed and clean facility
- A functional and well-maintained control tower
- Adequate facility lighting
- Clean and well-maintained restroom and/or port-a-johns with all necessary supplies and services
- Clean and well-maintained pit and spectator parking areas
- Water, electricity, adequate sewage and/or septic service.



PLAINTIFF'S EXHIBIT

## POSTPONEMENT & CANCELLATIONS

If the occurrence of rain, snow, fog, windstorm, inclement weather, Act of God, global pandemic or natural disaster causes the scheduled Event to be postponed or cancelled, the TRACK will work with EVENT to mitigate the situation. The Track will provide EVENT with a "rain date" if requested by EVENT. If a mutually acceptable date cannot, despite the good faith efforts of each party, be agreed upon, said Event shall be cancelled. The TRACK and EVENT agree to honor select ticket types for a future EVENT produced Event. In the event of a cancellation the base track rent payment will be prorated to reflect the number of days the facility is actually utilized for promotion and revenue generation.

If the Event is postponed or cancelled due to the actions or decisions of the management of the TRACK (examples – facility renovation, track resurface), then the TRACK agrees to reimburse EVENT for the actual "receipted expenses" incurred in the promotion and production of the Event. The term "receipted expenses" shall include only those expenses which had already been purchased or contractually obligated prior to the postponement or cancellation. These items may include, but not limited to, the cost of advertising, tickets, non-refundable travel expenses, awards and any other event-related expenses, fees or costs.

EVENT retains the right to cancel said event due to Act of God, Natural Disaster, Global Pandemic, Act of Terrorism, or any other catastrophic event without any financial responsibility if notice is received at least sixty (60) days prior to the Event.

## SETTLEMENT

Settlement payment for this Event shall be calculated within ten (10) days immediately following the close of the Event. All track operating expenses or any other expenses related to this Event are to be receipted and these receipts shall become part and parcel of the Event settlement; any approved expenses for which documentation cannot be provided for inspection on settlement day will be reimbursed by EVENT to the TRACK upon receipt by EVENT of the appropriate expense documentation, to be received no later than ten (10) days after settlement day. The TRACK agrees to fully cooperate with EVENT in order that EVENT will receive as quickly as possible all revenues and any requested expense documentation related to the event. The TRACK further agrees to fully cooperate with all accounting and audits of revenue and expenses related to the event as requested or needed. If EVENT requests on-location settlement at the conclusion of Event, EVENT must have all documented expenses in hand during the settlement process as TRACK expenses will be configured during the event. Such request for on-location settlement must be made within seven (7) days of the event date.

## PUBLICITY RIGHTS

The TRACK agrees that all television, film, print, audio and video rights from the Event are the sole possession of the EVENT. The TRACK requests that any official photographer provide a disc/jump drive for future promotional abilities.

## EVENT HOURS

Event hours will be determined by EVENT and shall be published in EVENT advertising and brochures, including gate opening and closing times. The schedule for the Event shall be at the sole discretion of EVENT with agreement and consultation from the TRACK. The hours are subject to change and rescheduling by EVENT in the event of rain, fog, windstorm or any other inclement weather, or Act of God, global pandemic or any other natural disaster that

2

disrupts the scheduled Event. Under any circumstance, Event hours shall comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK.

## FACILITIES

During the period of the Event, EVENT shall have full control of the operation of the track except as specifically provided in this Agreement. All racing activities shall be conducted in conformity with NHRA rules and regulations; EVENT's control shall extend over the participant parking areas, grandstands, infield, etc. During the weekend of the Event, there shall be no other activities taking place at the track except as specifically allowed in this Agreement. Under any circumstance, all racetrack activities shall comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK.

## CONFIDENTIALITY

During the term of this Agreement and for two (2) years thereafter, the TRACK agrees that it shall both protect, maintain and keep in strict confidence and not disclose or use directly or indirectly any financial information, business information or trade secrets concerning EVENT or the Event. This confidentiality provision shall not apply to information obtained subsequently through non-confidential sources. However, the TRACK will not use information obtained confidentially from EVENT to act upon, confirm or deny information obtained subsequently through non-confidential sources.

## INDEMNITY

The TRACK and EVENT hereby agree to indemnify, hold the other harmless and agree to defend the other party, its respective sponsors, successors, licensees, assigns, officers, directors, employees, representatives and those acting on its behalf from and against any and all suits, claims, actions, damages, liability, loss and expense, including attorney's fees reasonably incurred in connection with or arising out of any claim, action, suit, proceeding or appeal therein (such expense to include the cost of reasonable settlements made with a view to curtailment of costs of litigation, which is consented to by the Indemnitor), including but not limited to loss of life, bodily injury, damage to business, damage to property, and/or any other liability, including but not limited to damages resulting from any breach or alleged breach of any of the warranties, representations or arrangements contained in this Agreement, occasioned wholly or in part by any act or omission of the Indemnitor, its officers, directors, agents, servants, contractors, invitees, licensees, employees or others under the control of the Indemnitor. In the event that any person shall make any claim which would be subject to this indemnification provision, the Indemnitee shall give prompt written notice of same and the Indemnitor shall undertake at its own cost and expense for the defense thereof and shall supply competent and experienced counsel to defend any such claim, suit, action, proceeding or appeal therein. The Indemnitees shall not settle or compromise any such claim, suit, action, proceeding, or appeal therein without prior written approval of the Indemnitor, which approval shall not be unreasonably withheld. This indemnification shall survive the expiration or termination of this Agreement.

## MODIFICATION OR AMENDMENTS

No amendment, change or modification of this Agreement shall be valid unless in writing and signed by all parties hereto.

3

## SUCCESSORS AND ASSIGNS

The TRACK shall not assign or sublease its rights or obligations under this Agreement without the prior written consent of EVENT, which such consent shall not be unreasonably withheld, EVENT shall not assign its rights or obligations hereunder without the prior written consent of TRACK, which such consent shall not be unreasonably withheld.

## NUMBER AND GENDER

In this Agreement, masculine, feminine, or neuter gender and the singular or plural number shall each be deemed to include the others whenever the context so requires.

## EXHIBITS

All exhibits attached hereto and referred to herein are hereby incorporated herein as though set forth at length.

## SEPARATE COUNTERPARTS

This document may be executed in one or more separate counterparts, each of which, when so executed, shall be deemed to be an original. Such counterparts shall together constitute and be one and the same instrument.

## ENTIRE AGREEMENT

This document constitutes the entire understanding and agreement of the parties, and any and all prior agreements, understandings or representations are hereby terminated and canceled in their entirety and are of no force or effect.

## HEADINGS

The headings appearing at the commencement of the paragraphs hereof are descriptive only and for convenience in reference. Should there be any conflict between any such heading and the paragraph, then the paragraph and not such heading shall control and govern in the construction of the document.

4

## GOVERNING LAW, SEVERABILITY, VENUE

This Agreement is entered into in the State of Virginia. In the event that any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, void or voidable, the remaining portions of this Agreement shall remain in full force and effect. In any legal proceedings arising out of or relating to this Agreement, the Agreement shall be governed and construed in accordance with the laws of the State of Virginia. Each party hereto consents to the exclusive jurisdiction of the Federal and State courts of Virginia located in Dinwiddie County, Virginia.

By signing below, both parties, EVENT and the TRACK, have agreed to the terms and the conditions of this Agreement.


FOR:   EVENT                              FOR:   TRACK


By: _____            By: _____

Print:  Representative                   Print:  Tyler Crossnoe

Title:  Virginia Motor Sport Club        Title:  Vice President, Virginia Motorsports Park


Date:  1-18-2023                         Date:  January 18, 2023


5

# VIRGINIA MOTOR SPORT CLUB

# VIRGINIA MOTOR SPORT CLUB

*November 17*





## 🗏 DETAILS

Date: November 17 (2024-11-17)

Event Category: Drift & Autocross

## 👤 ORGANIZER

Virginia Motorsports Park

Phone (804) 862-3174

View Organizer Website

6/17/24, 8:36 PM                                     Virginia Motor Sport Club - Virginia Motorsports Park



♀  **VENUE**

Virginia Motorsports Park 8018 Boydton Plank Road

N. Dinwiddie, VA (Virginia) 23803 United States + Google Map

Phone (804) 862-3174

View Venue Website



*/MAILTO:?SUBJECT=VIRGINIA MOTOR SPORT CLUB&BODY=HTTPS%.*



https://racevmp.com/event/virginia-motor-sport-club-14/                                    3/10



# SEARCH SITE

 SEARCH                                                                    🔍



8/17/24, 6:36 PM                    Virginia Motor Sport Club - Virginia Motorsports Park

# DOWNLOAD & PRINT 2024 SCHEDULE



## THANK YOU TO OUR GREAT SPONSORS!



## LATEST VMP NEWS

- XDA Cancels MTC Engineering Summer Nationals at VMP on May 17-19
- Buckle Up: XDA Drag Racing Titans Set to Take Over VMP
- XDA Headed to Virginia on May 17-19 for the MTC Engineering Summer Nationals
- Halsey, Hyde, Pluchino, Nicholl, Essick and Mota Race to Victory at PDRA Mid-Atlantic Showdown
- Record Setters and Race Winners Head to Virginia for PDRA Mid-Atlantic Showdown





*LIKE*

6/17/24, 5:36 PM                    Virginia Motor Sport Club - Virginia Motorsports Park





 **Virginia Motorsports Park**
3 days ago

We are just a few weeks away from the Inaugural Johnny Davis Memorial Race, Super Pro and Jr. Dragsters are sold out and there are just a few Footbrake entries left! Get yours today at RaceVMP.com and don't miss out!

🖼 Photo

View on Facebook · Share

## FOLLOW

 racevmp



Load More...

6/17/24, 5:36 PM    Virginia Motor Sport Club - Virginia Motorsports Park

# CONTACT

**Address:**
Virginia Motorsports Park (VMP)
8018 Boydton Plank Road
North Dinwiddie, VA 23803

**Phone:**
(804) 862-3174 (tel:+18048623174)

**Email:**
Click Here to Contact VMP

# UPCOMING EVENTS

JUN
21
*June 21 - June 23*
**VIRGINIA NHRA NATIONALS**

JUN
28
*June 28 - June 30*
**INAUGURAL JOHNNY DAVIS MEMORIAL RACE**

JUL
5
All day
**TAKE IT OFF THE STREETS**

**VIEW CALENDAR**





6/17/24, 5:36 PM                                        Virginia Motor Sport Club - Virginia Motorsports Park

© Virginia Motorsports Park 2024 | Privacy Policy | Website developed by P.TEN Marketing



# EXHIBIT 2

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF DINWIDDIE

TIMOTHY KLABUNDE,

      Plaintiff,

v.                        Case No.: CL25000168

RICKY ARNOLD MCNELLY,

ALAN J. CHENERY, III,

AUDIE CHENERY,

VIRGINIA MOTOR SPORT CLUB,

VA. MOTORSPORTS PARK, LLC.,

VIRGINIA MOTORSPORTS PARK, L.C.,

FRANKLIN COMPANIES, L.L.C d/b/a Virginia Motorsports Park

TOMMY L. FRANKLIN

and

SAMUEL J. BANKS

      Defendants.

Serve:

Samuel J. Banks
6729 Lewis B. Puller Memorial Highway
Mattaponi, VA  23110
(King and Queen County)

## THIRD AMENDED COMPLAINT

### The Incident

1.      This Third Amended Complaint arises from an incident on Saturday April 1,

2023, in the early afternoon, in which Plaintiff, Timothy Klabunde ("Klabunde") was seriously

EXHIBIT 2

injured when defendant Ricky Arnold McNelly ("McNelly") struck Klabunde, a pedestrian (the "Incident") during an autocross event[1] (the "Event") held, organized, and sponsored by the defendant Virginia Motor Sport Club.

2.    The Incident took place in a parking lot at the Virginia Motorsports Park, located at 8018 Boydton Plank Road, North Dinwiddie, Virginia, 23803 (the "Parking Lot").

3.    At all relevant times, the Parking Lot was owned by the defendant Virginia Motorsports Park, L.C. and leased by defendant Virginia Motorsports Park, L.C. to Franklin Companies, LLC d/b/a Virginia Motorsports Park.

4.    At all relevant times, Franklin Companies, LLC d/b/a Virginia Motorsports Park did business as Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park.

5.    At all relevant times Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park did business as Franklin Companies, LLC d/b/a Virginia Motorsports Park.

6.    At all relevant times, the Parking Lot was operated by the defendant Va. Motorsports Park, LLC d/b/a Virginia Motorsports Park and by Franklin Companies, L.L.C d/b/a Virginia Motorsports Park (collectively, "Virginia Motorsports Park").

7.    Virginia Motorsports Park permitted Virginia Motor Sport Club to hold the Event in the Parking Lot.

8.    When the Incident took place, McNelly was driving a motor vehicle (the "Vehicle") as a participant in the Event and Klabunde was serving as a volunteer station worker.

9.    At all relevant times, Alan J. Chenery, III ("Mr. Chenery") was the President of Virginia Motor Sport Club.

---

[1]    An "autocross event" is a timed competition in which drivers navigate through a defined course.

10.     As President of Virginia Motor Sport Club, Mr. Chenery was responsible for planning and directing the safe operation of autocross events, including the Event.

11.     At all relevant times, Audie Chenery ("Mrs. Chenery") was the Virginia Motor Sport Club Chief Instructor and Head of School for the Event.

12.     Mrs. Chenery was responsible for planning and directing the safe operation of autocross events, including the Event.

13.     Virginia Motor Sport Club advertises itself as a club that has been hosting safe autocross events for members and guests since 1950.

14.     At the time of the Incident, Klabunde was a member of Virginia Motor Sport Club and was participating in the Event in his capacity as a member of that Club.

15.     To be a member of the Virginia Motor Sport Club for 2023, Klabunde paid the Virginia Motor Sport Club $25 annual dues.

16.     To register for the Event, Klabunde paid the Virginia Motor Sport Club a $50 registration fee.

17.     At the time of the Incident, McNelly was a member and/or guest of Virginia Motor Sport Club and was participating in the Event in his capacity as a member and/or guest of that Club.

18.     Virginia Motor Sport Club and/or its employees or agents designed and constructed the Event's autocross course, including placement of road cones marking the route of the course that McNelly was attempting to navigate at the time he struck Klabunde.

19.     At the direction of Virginia Motor Sport Club and/or one or more of its employees or agents, Klabunde served as a volunteer station worker and was instructed to stand in a particular location.

3

20.     The particular location where Klabunde was instructed to stand was near a slalom (the "Slalom").

21.     Just before he was struck by McNelly, Klabunde was standing where Virginia Motor Sport Club and/or one or more of its employees or agents had instructed him to stand.

22.     Prior to the Incident, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery were aware of rainy conditions forecasted for April 1, 2023.

23.     When the Incident occurred, the surface of the Parking Lot was wet due to rain, including pools of rainwater that had accumulated due to defects in the surface of the Parking Lot.

24.     Prior to the Incident, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery were responsible for inspecting the vehicles participating in the Event.

25.     The purpose of those inspections was to ensure participant safety, including the safety of the volunteer station workers such as Klabunde.

26.     Those inspections included inspection of participating vehicles' tires for appropriate tread depth.

27.     When the Incident took place, the tires of McNelly's motor vehicle had insufficient tread to allow McNelly to maintain control of his motor vehicle under the conditions then and there existing and McNelly knew or should have known this.

28.     When the Incident took place, the tires of McNelly's motor vehicle had insufficient tread to allow McNelly to maintain control of his motor vehicle under the conditions then and there existing and Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery knew or should have known this.

<u>The Parties</u>

4

29.     Plaintiff Timothy Klabunde is a resident of the Commonwealth of Virginia, residing in Midlothian, Virginia.

30.     Defendant Ricky Arnold McNelly is a resident of the Commonwealth of Virginia, residing in Portsmouth, Virginia.

31.     Defendant Alan J. Chenery, III is a resident of the Commonwealth of Virginia, residing in Midlothian, Virginia.

32.     Defendant Audie Chenery is a resident of the Commonwealth of Virginia, residing in Midlothian, Virginia.

33.     Defendant Virginia Motor Sport Club is a nonstock corporation, registered with the Virginia State Corporation Commission, entity ID 00722272, with a principal office address located in Colonial Heights, Virginia.

34.     Defendant Va. Motorsports Park, L.L.C. is a limited liability company, registered with the Virginia State Corporation Commission, entity ID S7095104, with a principal office address located in Fredericksburg, Virginia.

35.     Defendant Virginia Motorsports Park, L.C. is a limited liability company, registered with the Virginia State Corporation Commission, entity ID S0020844, with a principal office address located in Ashland, Virginia.

36.     Defendant Franklin Companies, LLC is a limited liability company, registered with the Virginia State Corporation Commission, entity ID S1036781, with a principal office address located in Fredericksburg, VA.

37.     Defendant Tommy Franklin is a resident of the Commonwealth of Virginia, residing in Fredericksburg, Virginia.

<u>The Parking Lot</u>

5

38.    At all times relevant herein, Virginia Motorsports Park, L.C. owned a paved lot ("Parking Lot") located in Dinwiddie, Virginia, large enough to be used as a track on which to conduct autocross events.

39.    At all times relevant herein, Virginia Motorsports Park had legal control over and operated the Parking Lot.

40.    By contract ("Contract") executed on or about January 18, 2023, Virginia Motorsports Park agreed to provide Virginia Motor Sport Club the exclusive right to use the Parking Lot on certain specified dates for autocross events, with rental payments due at the completion of each event. (Contract attached hereto as Exhibit 1).

41.    One of the dates included in the Contract was April 1, 2023, the date of the Incident.

42.    Pursuant to the Contract, Virginia Motorsports Park and/or Virginia Motor Sport Club assumed mutually defined duties and received mutually defined benefits.

43.    Pursuant to the terms of the Contract, in exchange for being paid a rental fee of $1,500.00, Virginia Motorsports Park agreed to provide:

     a.  A well-groomed and clean facility

     b.  A functional and well-maintained control tower

     c.  Adequate facility lighting

     d.  Clean and well-maintained restroom and/or port-a-johns with all necessary supplies and services

     e.  Clean and well-maintained pit and spectator parking areas

     f.  Water, electricity, adequate sewage and/or septic service.

44.    Pursuant to the terms of the Contract, in exchange for being allowed to use  the

6

Parking Lot on the agreed dates, Virginia Motor Sport Club agreed that "[a]ll racing activities shall be conducted in conformity with NHRA rules and regulations, and that it would "comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK."

45.    Additionally, Virginia Motorsports Park, L.C. was an organizer of the Event. (See Event announcement, attached hereto as Exhibit 2).

46.    Additionally, Virginia Motorsports Park was an organizer of the Event. (See Event announcement, attached hereto as Exhibit 2).

<u>Count 1: Negligence of McNelly</u>

47.    Klabunde incorporates all paragraphs above as if set forth fully in this Count.

48.    When the Incident took place, McNelly owed Klabunde various duties of ordinary care, including but not limited to the duty:

    a.    To operate a motor vehicle with reasonable care;

    b.    To keep a motor vehicle under control;

    c.    To operate a motor vehicle at a reasonable rate of speed under the conditions then and there existing;

    d.    To keep a proper lookout;

    e.    To use reasonable care to see that the vehicle had appropriate tires for the conditions then and there existing;

    f.    To inspect the Vehicle;

    g.    To maintain the Vehicle;

    h.    To repair the Vehicle;

    i.    To replace worn tires on the Vehicle;

    j.    To abide by the basic rules of the road.

7

49.     McNelly negligently breached each of these and other duties in numerous ways.

50.     As a direct and proximate result of this negligence, Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

Count 2: Negligence of McNelly

51.     Klabunde incorporates all paragraphs above as if set forth fully in this Count.

52.     When the Incident took place, McNelly owed Klabunde various duties of ordinary care, including but not limited to the duty to use reasonable care to equip the Vehicle with proper and/or properly maintained equipment, including using tires that were safe under the circumstances then and there existing.

53.     McNelly negligently breached these duties in numerous ways.

54.     As a direct and proximate result of this negligence, Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

Count 3: Negligence of Virginia Motor Sport Club, Alan J. Chenery, III, and Audie Chenery

55.     Klabunde incorporates all paragraphs above as if set forth fully in this Count.

56.     On the date of the Incident, Virginia Motor Sport Club planned, controlled, and was in charge of the Event.

57.     Despite significant rainfall that preceded the Event, and continued throughout the

8

Event, Virginia Motor Sport Club, by and through its employees and/or agents, including President Mr. Chenery and Chief Instructor and Head of School Mrs. Chenery, decided to proceed with the Event, imposing no additional safeguards to account for the rain and the pools of rainwater that had accumulated in defects in the paved surface of the Parking Lot

58.    Mrs. Chenery sent emails to Klabunde and others in the days leading up to the Event that "racing in the rain is a blast," and that "it is fun to run on wet pavement."

59.    Despite the increased danger posed by the wet pavement and continued rain during the Event, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery took no added precautions to make sure that the Parking Lot was safe for the Event's volunteer station workers like Klabunde.

60.    This lack of precautions posed dangers to volunteer station workers like Klabunde even if the Parking Lot had been dry, but under the wet conditions prevailing at the Parking Lot during the Event, the danger was multiplied.

61.    Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery, in conducting the Event, had duties to undertake safety precautions that it owed to the participants such as Klabunde.

62.    Further, Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery were aware, or should have been aware, of the added dangers posed by holding the Event in rainy conditions, on a paved surface on which water had pooled.

63.    Virginia Motor Sport Club, its President Mr. Chenery, and its Chief Instructor and Head of School Mrs. Chenery owed Klabunde various duties of ordinary care, including but not limited to:

        a.    A duty to inspect the vehicles participating in the Event to make sure that tires

9

on the vehicles are in good condition and with appropriate tread for the conditions then and there existing;

b. When laying out the Event course, a duty to provide a minimum of 25 feet of clearance between objects (including Parking Lot workers) on straightaways and on the inside of turns;

c. When laying out the Event course, a duty to provide a minimum of 75 feet of clearance between objects (including volunteer station workers such as Klabunde) on the outside of turns;

d. When laying out the Event course, a duty to provide a minimum of 100 feet of clearance to any spectator area;

e. A duty to pre-check the Event course to ensure it met all applicable standards.

f. A duty to lay out the Event course in conformity with industry standards.

64.     Virginia Motor Sport Club, Mr. Chenery, and Mrs. Chenery breached these duties in numerous ways, including but not limited to:

a. Deciding to route the driving course for the Event through standing pools of rainwater, and then taking action to carry out that decision.

b.  Deciding to route the driving course for the Event in dangerous proximity to where station workers such as Klabunde were to stand, and then taking action to carry out that decision.

c. Deciding to hold the Event in spite of the rain, and then taking action to carry out that decision.

d. Failing to place volunteer station workers such as Klabunde at a safe distance from the course, and instead placing them in a more dangerous location in

10

violation of their duties and accepted industry standards, and only exacerbated by the wet conditions prevailing on the day of the Event;

e.  Failing to properly inspect the tires of the Vehicle to ensure that they contained sufficient tread to hold their grip in the turns and slaloms, and instead allow drivers with insufficient tire tread like Defendant McNelly to drive on the course in violation of their duty to inspect, exacerbated by the wet conditions prevailing on the day of the Event;

f.  Failing to place volunteer station workers such as Klabunde behind safety barriers which would provide protection from racing vehicles losing traction on the paved surface, and instead placing them in areas where they were exposed to danger of vehicle losing control, exacerbated by the wet conditions prevailing on the day of the Event;

g.  Failing to place volunteer station workers such as Klabunde in safe locations, at a safe distance from the slaloms, and instead placing them too close to the slaloms, exacerbated by the wet conditions prevailing on the day of the Event;

h.  Failing to provide adequate training for the station workers such as Klabunde—who were not paid professionals, but were volunteers—before directing them where to stand, and instead allowing them onto areas of the course where they would be endangered from vehicles losing control;

i.  Failing to ensure that worker station coaches were in close enough proximity to the volunteer station workers such as Klabunde to provide direction and safety instruction, and instead placing them away from the volunteers;

j.  Failing to utilize a course design that placed slalom areas and turn areas at a

11

safe distance from the standing pools of rainwater, thereby decreasing the risk of loss of vehicle control and collision with volunteer station workers such as Klabunde, and instead utilizing a course design where slalom areas and turn areas were not at a safe distance from the pools of standing water.

65.     As a direct and proximate result of this negligence, Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 4: Negligence of Virginia Motorsports Park, L.C.</u>

66.     Klabunde incorporates all paragraphs above as if set forth fully in this Count.

67.     The Parking Lot was poorly maintained.  For example, it contained uneven portions of pavement that failed to properly drain in rainy weather conditions and constituted an unreasonably unsafe condition.

68.     On the day of the Incident, the poorly maintained and uneven portions of the Parking Lot pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer Parking Lot workers such as Klabunde.

69.     The uneven portions of the Parking Lot's pavement caused water to pool within the slalom portion of the Parking Lot over which McNelly drove his vehicle just prior to losing control of the vehicle and striking Klabunde.

70.     As the owner of the Parking Lot, and particularly knowing that the Parking Lot was likely to be used for autocross events, including knowing that the Parking Lot had been

rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia Motorsports Park, L.C. had a non-delegable duty to maintain the Parking Lot premises in a reasonably safe condition for its intended use.

71.     As the owner of the Parking Lot, and particularly knowing that the Parking Lot was likely to be used for autocross events, including knowing that the Parking Lot had been rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia Motorsports Park, L.C. had a non-delegable duty to remove pooling water from the Parking Lot surface when, as here, the pooling water created an unsafe condition.

72.     As the owner of the Parking Lot and particularly knowing that the Parking Lot was likely to be used for autocross events, including knowing that the Parking Lot had been rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia Motorsports Park, L.C. had a non-delegable duty to warn invitees like Klabunde of the unsafe conditions.

73.     Upon information and belief, the Parking Lot had been rented for autocross events, either by Va. Motorsports Park, L.C. or with Va. Motorsports Park, L.C's knowledge, in years prior to the Incident.

74.     As the owner of the Parking Lot, and particularly knowing that the Parking Lot was likely to be used for autocross events, including knowing that the Parking Lot had been rented to Virginia Motor Sport Club for autocross events, including the Event, Virginia Motorsports Park, L.C. was aware, or should have been aware, that for the safety of participants in autocross events where vehicles would be proceeding on its paved facility at high rates of speed through slaloms, the Parking Lot needed to be in a safe condition for its intended use. This common law duty to participants in the Event was also reflected in its contractual agreement to

13

provide a "well-groomed" facility.

75.    Virginia Motorsports Park, L.C. knew or should have known of the defects in the Parking Lot pavement and of the dangers that they posed to drivers and volunteer station workers like Klabunde.

76.    Virginia Motorsports Park, L.C. knew or should have known that these defects caused water to pool in certain areas of the Parking Lot pavement and knew or should have known that these pools of rainwater posed dangers to drivers and volunteer station workers, including Klabunde.

77.    Despite its awareness or constructive awareness of the defects in its premises and the dangers that these defects posed when it rained and pools of rainwater formed, Virginia Motorsports Park, L.C. failed to warn any of the participants or volunteer station workers, including Klabunde, of this defect.

78.    Despite its awareness or constructive awareness of the defects in its premises, Virginia Motorsports Park, L.C. failed to repair these defects prior to the Event.

79.    Although Virginia Motorsports Park, L.C. knew that the Parking Lot posed a danger to autocross participants when wet, and particularly during heavy rains, it made no effort to limit or prevent autocross events in heavy rain, or when pools of rainwater formed on the Parking Lot.

80.    Virginia Motorsports Park, L.C. owed Klabunde various duties of ordinary care, including but not limited to:

      a.    A non-delegable duty properly to maintain the Parking Lot for the anticipated use as a surface for autocross events.

      b.    A non-delegable duty to warn invitees like Klabunde of the unsafe condition

14

of the Parking Lot when used in the rain for autocross purposes.

81.     Virginia Motorsports Park, L.C. breached these duties in numerous ways.

82.     As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of water created as a result of Parking Lot defect, and lost control of his vehicle causing it to strike Klabunde. Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 5: Negligence of Va. Motorsports Park, L.L.C.</u>

83.     Klabunde incorporates all paragraphs above as if set forth fully in this Count.

84.     At all times relevant. Va. Motorsports Park, L.L.C. did business as Virginia Motorsports Park.

85.     Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park was an organizer of the Event.

86.     As an organizer of the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Klabunde the same duties as those owed by Virginia Motor Sport Club, Alan J. Chenery, III, and Audie Chenery, which were enumerated in Count 3, and it is similarly negligent for its failure to adequately fulfill those duties.

87.     In addition to the duties and negligence enumerated in Count 3, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed duties and was negligent as follows.

88.     On the date of the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park operated the Parking Lot.

15

89.     It maintained the Parking Lot poorly. For example, the Parking Lot contained uneven portions of pavement that failed to properly drain in rainy weather conditions and constituted an unreasonably unsafe condition.

90.     On the day of the Incident, the poorly maintained and uneven portions of Parking Lot pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Klabunde.

91.     The uneven portions of Parking Lot pavement caused water to pool within the slalom portion of the Parking Lot, over which McNelly drove his vehicle just prior to losing control of the vehicle and striking Klabunde.

92.     As the operator of the Parking Lot, and particularly knowing that it had rented the Parking Lot to Virginia Motor Sport Club for autocross events, including the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park had a non-delegable duty to maintain the Parking Lot premises in a reasonably safe condition for its intended use.

93.     As the operator of the Parking Lot and particularly knowing that it had rented the Parking Lot to Virginia Motor Sport Club for autocross events, including the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park had a non-delegable duty to remove pooling water from the Parking Lot surface when it created an unsafe condition.

94.     As the operator of the Parking Lot and particularly knowing that it had rented the Parking Lot to Virginia Motor Sport Club for autocross events, including the Event, Va. Motorsports Park, L.L.C., d/b/a Virginia Motorsports Park had a non-delegable duty to warn invitees like Klabunde of the unsafe conditions.

95.     By contract, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park

16

specifically agreed to rent the Parking Lot to Virginia Motor Sport Club for the intended use of holding autocross events.

96.     As operator of the Parking Lot, and particularly knowing that it had rented the Parking Lot to Virginia Motor Sport Club for autocross events, including the Event, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park was aware, or should have been aware, that for the safety of participants in autocross events where vehicles would be travelling on its paved facility at high rates of speed through slalom-like conditions, the Parking Lot needed to be in a safe condition for its intended use. This common law duty to participants in the Event was also reflected in its contractual agreement to provide a "well-groomed" facility.

97.     Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew or should have known of the defects in the Parking Lot pavement and of the dangers that they posed to drivers and volunteer station workers, including Klabunde.

98.     Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew or should have known that these defects caused water to pool in certain areas of the Parking Lot pavement and knew or should have known that these pools of rainwater posed dangers to drivers and volunteer station workers like Klabunde.

99.     Despite its awareness or constructive awareness of the defects in the premises, and the dangers that these defects posed when it rained and pools of rainwater formed, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to warn any of the participants or volunteer station workers, including Klabunde, of this defect.

100.    Despite its awareness, or constructive awareness of the defects in the premises, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to repair these defects prior to the Event.

101.    Although Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew that the Parking Lot posed a danger to autocross participants when wet, and particularly during heavy rains, it made no effort through its contractual arrangement with Virginia Motor Sport Club to limit or prevent autocross events in heavy rain, or when pools of rainwater formed on the Parking Lot.

102.    As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of water created as a result of this Parking Lot defect, and he lost control of his vehicle, causing it to strike Klabunde.  As a direct and proximate result, Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 6:  Negligence of Virginia Motorsports Park, L.C.</u>

103.    Klabunde incorporates all paragraphs above, as if set forth fully in this Count.

104.    As the owner of the Parking Lot, Virginia Motorsports Park, L.C.  owed Klabunde a duty to have the premises in a reasonably safe condition for Klabunde's use, specifically knowing that the Parking Lot was likely to be used for autocross events, including an autocross race on the date of the Incident.

105.    As the owner of the Parking Lot, Virginia Motorsports Park, L.C. owed Klabunde a duty to use ordinary care to warn Klabunde of the unsafe condition of the Parking Lot.

106.    As the owner of the Parking Lot, Virginia Motorsports Park, L.C. owed Klabunde a duty to use ordinary care to remove the pools of rainwater from the Parking Lot which it knew or should have known would create an unsafe condition for Klabunde's use.

18

107.    As the owner of the Parking Lot, Virginia Motorsports Park, L.C. owed Klabunde a duty to use ordinary care in the activities on the Parking Lot to avoid injury to Klabunde.

108.    On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Klabunde.

109.    Virginia Motorsports Park, L.C. knew or should have known of the defects in the pavement and of the dangers that they posed to drivers and to volunteer station workers such as Klabunde.

110.    Despite its awareness or constructive awareness of the defects in its premises, Virginia Motorsports Park, L.C. failed to warn any of the participants or volunteer station workers, including Klabunde, of these defects.

111.    Despite its awareness or constructive awareness of the defects in its premises, Virginia Motorsports Park, L.C. failed to eliminate these defects prior to the Event and failed to remove the pools of rainwater from the Parking Lot.

112.    As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of rainwater created as a result of these Parking Lot defects, and he lost control of his vehicle causing it to strike Klabunde. As a direct and proximate result, Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 7: Negligence of Va. Motorsports Park, L.L.C.</u>

19

113.    Klabunde incorporates all paragraphs above as if set forth fully in this Count.

114.    As the operator of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park was a legal occupant of the Parking Lot.

115.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Klabunde a duty to have the premises in a reasonably safe condition for Klabunde's use, specifically knowing that the Parking Lot would be used to hold an autocross event on the date of the Incident.

116.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Klabunde a duty to use ordinary care to warn Klabunde of the unsafe conditions prevailing on the Parking Lot.

117.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Klabunde a duty to use ordinary care to remove the pools of rainwater from the Parking Lot, which it knew or should have known would create an unsafe condition for Klabunde's use.

118.    As the occupant of the Parking Lot, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park owed Klabunde a duty to use ordinary care in the activities on the Parking Lot to avoid injury to Klabunde.

119.    On the day of the Incident, the poorly maintained and uneven portions of the Parking Lot's pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Klabunde.

120.    Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park knew or should have known of the defects in the Parking Lot's pavement and of the dangers that they posed to

drivers and to volunteer station workers such as Klabunde.

121.    Despite its awareness, or constructive awareness of the defects in its premises, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to warn any of the participants or volunteer station workers, including Klabunde, of these defects.

122.    Despite its awareness or constructive awareness of the defects in its premises, Va. Motorsports Park, L.L.C. d/b/a Virginia Motorsports Park failed to repair these defects prior to the Event and failed to remove the pools or rainwater from the Parking Lot.

123.    As a direct and proximate result of this negligence, as McNelly drove through the Slalom, his vehicle crossed one such pool of rainwater created as a result of these Parking Lot defects, and lost control of his vehicle causing it to strike Klabunde. As a direct and proximate result Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

### Count 8: Negligence of Franklin Companies, LLC

124.    Klabunde incorporates all paragraphs above, as if set forth fully in this Count.

125.    On the date of the Event, Franklin Companies, LLC d/b/a Virginia Motorsports Park was a tenant of the Track and operated the parking lot where the Event was held.

126.    Franklin Companies, LLC d/b/a Virginia Motorsports Park owed everyone using the parking lot for the Event a duty to maintain the parking lot appropriately for that use, including those duties enumerated below.

127.    The parking lot where the autocross event was held was poorly maintained. For example, it contained uneven portions of pavement that failed to properly drain in rainy weather

conditions and constituted an unreasonably unsafe condition.

128.    On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating puddles of water on the Track, and creating dangerous conditions for the drivers at the Event as well as for the volunteer Track workers.

129.    The uneven portions of pavement caused water to pool within the slalom portion of the track, over which McNelly drove his vehicle, just prior to losing control of the vehicle and striking Klabunde.

130.    As the tenant and operator of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin Companies, LLC d/b/a Virginia Motorsports Park had a duty to maintain the Parking Lot in a reasonably safe condition for its intended use.

131.    As tenant and operator of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin Companies, LLC d/b/a Virginia Motorsports Park had a duty to remove pooling water from the Track surface when it created an unsafe condition.

132.    As tenant and operator of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin Companies, LLC d/b/a Virginia Motorsports Park had a duty to warn invitees, like Klabunde, of the unsafe conditions.

133.    As tenant and operator of the Track, and particularly knowing that the track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Franklin Companies, LLC d/b/a Virginia Motorsports Park was aware, or should have been aware, that for the safety of participants in autocross events where vehicles would be proceeding on its paved

22

facility at high rates of speed, through slalom-like conditions, the Track needed to be in a safe condition for its intended use.

134.    Franklin Companies, LLC d/b/a Virginia Motorsports Park knew or should have known, of the defects in the pavement and of the dangers that they posed to drivers and Track workers at the Event.

135.    As tenant and operator of the Parking Lot, Franklin Companies, LLC d/b/a Virginia Motorsports Park owed Klabunde a duty to have the premises in a reasonably safe condition for Klabunde's use, specifically knowing that the Parking Lot would be used to hold an autocross race on the date of the Incident.

136.    As tenant and operator of the Parking Lot, Franklin Companies, LLC d/b/a Virginia Motorsports Park owed Klabunde a duty to use ordinary care to warn Klabunde of the unsafe condition of the Parking Lot.

137.    As tenant and operator of the Parking Lot, Franklin Companies, LLC d/b/a Virginia Motorsports Park owed Klabunde a duty to use ordinary care to remove the pools of rainwater from the Parking Lot which it knew or should have known would create an unsafe condition for Klabunde's use.

138.    As tenant and operator of the Parking Lot, Franklin Companies, LLC d/b/a Virginia Motorsports Park owed Klabunde a duty to use ordinary care in the activities on the Parking Lot to avoid injury to Klabunde.

139.    On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating pools of rainwater on the Parking Lot, and creating dangerous conditions for the drivers at the Event as well as for the volunteer station workers such as Klabunde.

140. Franklin Companies, LLC d/b/a Virginia Motorsports Park knew or should have known of the defects in the pavement and of the dangers that they posed to drivers and to volunteer station workers such as Klabunde.

141. Despite its awareness, or constructive awareness of the defects in its premises, Franklin Companies, LLC d/b/a Virginia Motorsports Park failed to warn any of the participants or volunteer Track workers, including Klabunde, of this defect.

142. Despite its awareness or constructive awareness of the defects in its premises, Franklin Companies, LLC d/b/a Virginia Motorsports Park failed to eliminate these defects prior to the Event and failed to remove the pools of rainwater from the Parking Lot.

143. As a direct and proximate result of this negligence, as McNelly drove through the slalom, his vehicle crossed one such puddle created as a result of Track defect, and lost control of his vehicle causing it to strike Klabunde. Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

### Count 9: Negligence of Tommy Franklin

144. Klabunde incorporates all paragraphs above, as if set forth fully in this Count.

145. Tommy Franklin is the owner and/or organizer of Franklin Companies, LLC d/b/a Virginia Motorsports Park and Va. Motorsports Park, LLC d/b/a Virginia Motorsports (previously identified, collectively as "Virginia Motorsports Park").

146. On the date of the Event, Franklin Companies, LLC d/b/a Virginia Motorsports Park was a tenant of the Track and operated the Parking Lot.

24

147. By contract, Franklin Companies, LLC d/b/a Virginia Motorsports Park specifically agreed to maintain the Parking Lot.

148. By contract, Tommy Franklin was a personal guarantor of Franklin Companies, LLC and/or Virginia Motorsports Park and as such personally guaranteed timely performance by Franklin Companies, LLC and/or Virginia Motorsports Park of all covenants and obligations of the Lease, including the obligation to maintain the premises of the Track, including the Parking Lot. Without regard to his contractual duties, Tommy Franklin owed everyone using the parking lot for the Event a duty to maintain the Parking Lot appropriately for that use, including those duties enumerated below. By agreeing to act as a guarantor for Franklin Companies, LLC and/or Virginia Motorsports Park, Tommy Franklin assumed all of the duties that Franklin Companies, LLC and/or Virginia Motorsports Park owed, including those enumerated below.

149. The Parking Lot was poorly maintained. For example, it contained uneven portions of pavement that failed to properly drain in rainy weather conditions and constituted an unreasonably unsafe condition.

150. On the day of the Incident, the poorly maintained and uneven portions of pavement permitted water to pool, creating puddles of water on the Track, and creating dangerous conditions for the drivers at the Event as well as for the volunteer Track workers.

151. The uneven portions of pavement caused water to pool within the slalom portion of the track, over which McNelly drove his vehicle, just prior to losing control of the vehicle and striking Klabunde.

152. As personal guarantor of Franklin Companies, LLC and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the

Event, Tommy Franklin had a duty to maintain the Parking Lot in a reasonably safe condition for its intended use.

153.    As personal guarantor of Franklin Companies, LLC and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Tommy Franklin had a duty to remove pooling water from the Track surface when it created an unsafe condition.

154.    As personal guarantor of Franklin Companies, LLC and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the Track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Tommy Franklin had a duty to warn invitees, like Klabunde, of the unsafe conditions.

155.    As personal guarantor of Franklin Companies, LLC and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, and particularly knowing that the track had been rented out to Virginia Motor Sport Club for autocross events, including the Event, Tommy Franklin was aware, or should have been aware, that for the safety of participants in autocross events where vehicles would be proceeding on its paved facility at high rates of speed, through slalom-like conditions, the Track needed to be in a safe condition for its intended use.

156.    As personal guarantor of Franklin Companies, LLC and/or Virginia Motorsports Park obligations, including to maintain the premises of the Track, Tommy Franklin knew or should have known of the defects in the pavement and of the dangers that they posed to drivers and Track workers at the Event.

157.    Despite Tommy Franklin's awareness, or constructive awareness of the defects in

26

the premises, Tommy Franklin failed to warn any of the participants or volunteer Track workers, including Klabunde, of this defect.

158.    Despite its awareness or constructive awareness of the defects in its premises, Franklin Companies, LLC and/or Virginia Motorsports Park failed to eliminate these defects prior to the Event and failed to remove the pools of rainwater from the Parking Lot.

159.    As a direct and proximate result of this negligence, as McNelly drove through the slalom, his vehicle crossed one such puddle created as a result of Track defect, and lost control of his vehicle causing it to strike Klabunde. Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

<u>Count 10: Negligence of Samuel J. Banks</u>

160.    Klabunde incorporates all paragraphs above, as if set forth fully in this Count.

161.    The defendant Samuel J. Banks ("Mr. Banks") designed the driving course for the Event and put in place the orange cones that marked the route of the Event's driving course.

162.    When the Event took place, Mr. Banks owed Klabunde various duties of ordinary care, including but not limited to the duty to use ordinary care in designing the driving course, marking the driving course, and preparing for, staging, setting up, conducting, and otherwise assisting with the Event.

163.    Mr. Banks breached these duties in numerous ways, including but not limited to:

    a.  Deciding to route the driving course for the Event through standing pools of

27

rainwater.

    b.   Deciding to route the driving course for the Event in dangerous proximity to where station workers such as Klabunde were to stand.

    c.   Deciding to hold the Event in spite of the rain.

164.    As a direct and proximate result of this negligence, Klabunde suffered serious and permanent injuries; has suffered and will suffer in the future medical and related expenses; has suffered and will suffer in the future pain of body and mind; has incurred and will incur loss of earnings and earning capacity; and has incurred other damages for which he seeks compensation as allowed by law.

**WHEREFORE** the plaintiff, Timothy Klabunde, demands judgment against the defendants Ricky Arnold McNelly, Alan J. Chenery, III, Audie Chenery, Virginia Motor Sport Club, Va. Motorsports Park, L.L.C., and Virginia Motorsports Park, L.C., and Samuel J. Banks in the amount of TEN MILLION DOLLARS ($10,000,000), in compensatory damages, plus interest from April 1, 2023, and costs.

    Trial by jury is demanded.

                         TIMOTHY KLABUNDE

                         By: _____
                                   Counsel

Richard C. Armstrong (VSB # 46053)
Kari J. La Fratta (VSB # 87658)
Allen, Allen, Allen, and Allen
946 Grady Ave., Suite 201
Charlottesville, VA 22903
Telephone / E-Fax: 434-284-4291
richard.armstrong@allenandallen.com
kari.lafratta@allenandallen.com

28

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Second Amended Complaint

was sent by email this 5th day of March, 2025 to:


Christopher R. Hedrick, Esquire
Mason, Mason, Walker, & Hedrick, P.C.
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
Phone: 757-873-3909
Fax:   757-873-1781
chedrick@masonwalker.com
*Counsel for Defendant Ricky Arnold McNelly*

Mark C. Nanavati, Esquire
G. Christopher Jones, Jr., Esquire
Sinnott, Nuchols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114
Phone: 804-893-3866 (Nanavati)
Phone: 804-893-3864 (Jones)
Fax:   804-378-2610
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Defendant Virginia Motorsports Park, L.C.*

James R. Jebo, Esquire
Julian Viscidi, Esquire
Harman, Claytor, Corrigan & Wellman
PO Box 70280
Richmond, VA 23255
Phone: 804-747-5200
Fax:   804-747-6085
jjebo@hccw.com
jviscidi@hccw.com
*Counsel for Defendants Audie Chenery, Alan Chenery and Virginia Motor Sport Club*

29

Matthew D. Green, Esquire
Sands Anderson PC
919 East Main Street, Suite 2300 (23219)
PO Box 1998
Richmond, VA 23218-1998
Phone: 804-648-1636
Fax:    804-783-7291
mgreen@sandsanderson.com
*Counsel for Defendant Virginia Motorsports Park, LLC*

C. Stephen Setliff, Esquire
Sean Barrick, Esquire
Setliff Law, P.C.
4940 Dominion Blvd
Glen Allen, VA 23060
Counsel for Acuity, A Mutual Insurance Company
ssetliff@setlifflaw.com
sbarrick@setlifflaw.com
Counsel for ACUITY, A MUTUAL INSURANCE COMPANY

Kari J. LaFratta

# VIRGINIA MOTORSPORTS PARK
# TRACK RENTAL AGREEMENT
### 2023 MOTORSPORTS SEASON

This document shall constitute an Agreement between Virginia Auto Sport Club (referred to herein as BONRANOW), a Virginia established entity, and Virginia Motorsports Park, a Virginia established entity (referred to herein as TRACK). The purpose of this Agreement is for producing multiple autocross events (referred to herein as EVENT) at the Virginia Motorsports Park location on the dates of April 1, 2023, June 17, August 5, September 13, November 4, and December 2, 2023.

The TRACK is the operator of the racetrack known as Virginia Motorsports Park, located in Dinwiddie, Virginia.

## TERM

The term of this Agreement shall be one year in length and be from January 1, 2023, through December 31, 2023. This agreement may be terminated by either party by providing a written request for termination within ninety (90) days following each event, each year. If no termination request is submitted by either party within the ninety (90) day period, then the Agreement will have the first right of refusal for the following calendar year.

## GRANT

During the term of this agreement, the TRACK hereby grants an exclusive track rental to EVENT for an autocross event, with one day of events, setup, and teardown in the same day. The EVENT is to pay a rental payment to TRACK for the completion of each event day. The TRACK reserves the right to conduct normal track business during the set-up and tear-down hours, not to unreasonably interfere with the operations of the Event.

## RENTAL PAYMENT

The TRACK shall rent its facilities to EVENT for a total of one thousand, five hundred dollars ($1500.00). In addition to the rental consideration, EVENT shall pay to TRACK specific approved expense ("Estimated Budget") paid by the TRACK for services rendered during the Event as outlined in "Exhibit A" attached hereto.

For this rental payment, the TRACK will be required to provide the following:

- A well-groomed and clean facility
- A functional and well-maintained control tower
- Adequate facility lighting
- Clean and well-maintained restroom and/or port-a-johns with all necessary supplies and services
- Clean and well-maintained pit and spectator parking areas
- Water, electricity, adequate sewage and/or septic service.



1

## POSTPONEMENT & CANCELLATIONS

If the occurrence of rain, snow, fog, windstorm, inclement weather, Act of God, global pandemic or natural disaster causes the scheduled Event to be postponed or cancelled, the TRACK will work with EVENT to mitigate the situation. The Track will provide EVENT with a "rain date" if requested by EVENT. If a mutually acceptable date cannot, despite the good faith efforts of each party, be agreed upon, said Event shall be cancelled. The TRACK and EVENT agree to honor select ticket types for a future EVENT produced Event. In the event of a cancellation the base track rent payment will be prorated to reflect the number of days the facility is actually utilized for promotion and revenue generation.

If the Event is postponed or cancelled due to the actions or decisions of the management of the TRACK (examples – facility renovation, track resurface), then the TRACK agrees to reimburse EVENT for the actual "receipted expenses" incurred in the promotion and production of the Event. The term "receipted expenses" shall include only those expenses which had already been purchased or contractually obligated prior to the postponement or cancellation. These items may include, but not limited to, the cost of advertising, tickets, non-refundable travel expenses, awards and any other event-related expenses, fees or costs.

EVENT retains the right to cancel said event due to Act of God, Natural Disaster, Global Pandemic, Act of Terrorism, or any other catastrophic event without any financial responsibility if notice is received at least sixty (60) days prior to the Event.

## SETTLEMENT

Settlement payment for this Event shall be calculated within ten (10) days immediately following the close of the Event. All track operating expenses or any other expenses related to this Event are to be receipted and these receipts shall become part and parcel of the Event settlement; any approved expenses for which documentation cannot be provided for inspection on settlement day will be reimbursed by EVENT to the TRACK upon receipt by EVENT of the appropriate expense documentation, to be received no later than ten (10) days after settlement day. The TRACK agrees to fully cooperate with EVENT in order that EVENT will receive as quickly as possible all revenues and any requested expense documentation related to the event. The TRACK further agrees to fully cooperate with all accounting and audits of revenue and expenses related to the event as requested or needed. If EVENT requests on-location settlement at the conclusion of Event, EVENT must have all documented expenses in hand during the settlement process as TRACK expenses will be configured during the event. Such request for on-location settlement must be made within seven (7) days of the event date.

## PUBLICITY RIGHTS

The TRACK agrees that all television, film, print, audio and video rights from the Event are the sole possession of the EVENT. The TRACK requests that any official photographer provide a disc/jump drive for future promotional abilities.

## EVENT HOURS

Event hours will be determined by EVENT and shall be published in EVENT advertising and brochures, including gate opening and closing times. The schedule for the Event shall be at the sole discretion of EVENT with agreement and consultation from the TRACK. The hours are subject to change and rescheduling by EVENT in the event of rain, fog, windstorm or any other inclement weather, or Act of God, global pandemic or any other natural disaster that

2

disrupts the scheduled Event. Under any circumstance, Event hours shall comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK.

## FACILITIES

During the period of the Event, EVENT shall have full control of the operation of the track except as specifically provided in this Agreement. All racing activities shall be conducted in conformity with NHRA rules and regulations. EVENT's control shall extend over the participant parking areas, grandstands, infield, etc. During the weekend of the Event, there shall be no other activities taking place at the track except as specifically allowed in this Agreement. Under any circumstance, all racetrack activities shall comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK.

## CONFIDENTIALITY

During the term of this Agreement and for two (2) years thereafter, the TRACK agrees that it shall both protect, maintain and keep in strict confidence and not disclose or use directly or indirectly any financial information, business information or trade secrets concerning EVENT or the Event. This confidentiality provision shall not apply to information obtained subsequently through non-confidential sources. However, the TRACK will not use information obtained confidentially from EVENT to act upon, confirm or deny information obtained subsequently through non-confidential sources.

## INDEMNITY

The TRACK and EVENT hereby agree to indemnify, hold the other harmless and agree to defend the other party, its respective sponsors, successors, licensees, assigns, officers, directors, employees, representatives and those acting on its behalf from and against any and all suits, claims, actions, damages, liability, loss and expense, including attorney's fees reasonably incurred in connection with or arising out of any claim, action, suit, proceeding or appeal therein (such expense to include the cost of reasonable settlements made with a view to curtailment of costs of litigation, which is consented to by the indemnitor), including but not limited to loss of life, bodily injury, damage to business, damage to property, and/or any other liability, including but not limited to damages resulting from any breach or alleged breach of any of the warranties, representations or arrangements contained in this Agreement, occasioned wholly or in part by any act or omission of the indemnitor, its officers, directors, agents, servants, contractors, invitees, licensees, employees or others under the control of the indemnitor. In the event that any person shall make any claim which would be subject to this indemnification provision, the indemnitee shall give prompt written notice of same and the indemnitor shall undertake at its own cost and expense for the defense thereof and shall supply competent and experienced counsel to defend any such claim, suit, action, proceeding or appeal therein. The indemnitees shall not settle or compromise any such claim, suit, action, proceeding, or appeal therein without prior written approval of the indemnitor, which approval shall not be unreasonably withheld. This indemnification shall survive the expiration or termination of this Agreement.

## MODIFICATION OR AMENDMENTS

No amendment, change or modification of this Agreement shall be valid unless in writing and signed by all parties hereto.

5

## SUCCESSORS AND ASSIGNS

The TRACK shall not assign or sublease its rights or obligations under this Agreement without the prior written consent of EVENT, which such consent shall not be unreasonably withheld. EVENT shall not assign its rights or obligations hereunder without the prior written consent of TRACK, which such consent shall not be unreasonably withheld.

## NUMBER AND GENDER

In this Agreement, masculine, feminine, or neuter gender and the singular or plural number shall each be deemed to include the others whenever the context so requires.

## EXHIBITS

All exhibits attached hereto and referred to herein are hereby incorporated herein as though set forth at length.

## SEPARATE COUNTERPARTS

This document may be executed in one or more separate counterparts, each of which, when so executed, shall be deemed to be an original. Such counterparts shall together constitute and be one and the same instrument.

## ENTIRE AGREEMENT

This document constitutes the entire understanding and agreement of the parties, and any and all prior agreements, understandings or representations are hereby terminated and canceled in their entirety and are of no force or effect.

## HEADINGS

The headings appearing at the commencement of the paragraphs hereof are descriptive only and for convenience in reference. Should there be any conflict between any such heading and the paragraph, then the paragraph and not such heading shall control and govern in the construction of the document.

4

## GOVERNING LAW, SEVERABILITY, VENUE

This Agreement is entered into in the State of Virginia. In the event that any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, void or voidable, the remaining portions of this Agreement shall remain in full force and effect. In any legal proceedings arising out of or relating to this Agreement, the Agreement shall be governed and construed in accordance with the laws of the State of Virginia. Each party hereto consents to the exclusive jurisdiction of the Federal and State courts of Virginia located in Dinwiddie County, Virginia.

By signing below, both parties, EVENT and the TRACK, have agreed to the terms and the conditions of this Agreement.

FOR:   EVENT

FOR:   TRACK

By:   _____

By:   _____

Print:   Representative

Print:   Tyler Crossnoe

Title:   Virginia Motor Sport Club

Title:   Vice President, Virginia Motorsports Park

Date:   1 - 18 - 2023

Date:   January 18, 2023

5

6/17/24, 5:36 PM                                    Virginia Motor Sport Club - Virginia Motorsports Park

# VIRGINIA MOTOR SPORT CLUB

# VIRGINIA MOTOR SPORT CLUB
**November 17**



Privacy - Terms

6/17/24, 5:36 PM                    Virginia Motor Sport Club - Virginia Motorsports Park





### ☰ *DETAILS*

Date: November 17 (2024-11-17)

Event Category: Drift & Autocross

### ♟ *ORGANIZER*

Virginia Motorsports Park

Phone (804) 862-3174

View Organizer Website

6/17/24, 5:36 PM                    Virginia Motor Sport Club - Virginia Motorsports Park



**♀ VENUE**

Virginia Motorsports Park 8018 Boydton Plank Road

N. Dinwiddie, VA (Virginia) 23803 United States + Google Map

Phone (804) 862-3174

View Venue Website





https://racevmp.com/event/virginia-motor-sport-club-14/                              3/10

8/17/24, 5:36 PM                                    Virginia Motor Sport Club - Virginia Motorsports Park



## SEARCH SITE

SEARCH



6/17/24, 5:36 PM    Virginia Motor Sport Club - Virginia Motorsports Park

## DOWNLOAD & PRINT 2024 SCHEDULE



6/17/24, 5:38 PM                              Virginia Motor Sport Club - Virginia Motorsports Park

## THANK YOU TO OUR GREAT SPONSORS!



## LATEST VMP NEWS

- XDA Cancels MTC Engineering Summer Nationals at VMP on May 17-19
- Buckle Up: XDA Drag Racing Titans Set to Take Over VMP
- XDA Headed to Virginia on May 17-19 for the MTC Engineering Summer Nationals
- Halsey, Hyde, Pluchino, Nicholl, Essick and Mota Race to Victory at PDRA Mid-Atlantic Showdown
- Record Setters and Race Winners Head to Virginia for PDRA Mid-Atlantic Showdown

6/17/24, 6:36 PM                          Virginia Motor Sport Club - Virginia Motorsports Park





*LIKE*

6/17/24, 5:36 PM                                Virginia Motor Sport Club - Virginia Motorsports Park





 **Virginia Motorsports Park**
3 days ago

We are just a few weeks away from the inaugural Johnny Davis Memorial Race, Super Pro and Jr. Dragsters are sold out and there are just a few Footbrake entries left! Get yours today at RaceVMP.com and don't miss out!

 Photo

View on Facebook   ·   Share

## FOLLOW

 racevmp



Load More...

6/17/24, 5:36 PM                                    Virginia Motor Sport Club - Virginia Motorsports Park

## CONTACT

**Address:**
Virginia Motorsports Park (VMP)
8018 Boydton Plank Road
North Dinwiddie, VA 23803

**Phone:**
(804) 862-3174 (tel:+18048623174)

**Email:**
Click Here to Contact VMP

## UPCOMING EVENTS

JUN
**21**     *June 21- June 23*
**VIRGINIA NHRA NATIONALS**

JUN
**28**     *June 28 - June 30*
**INAUGURAL JOHNNY DAVIS MEMORIAL RACE**

JUL
**5**     *All day*
**TAKE IT OFF THE STREETS**

**VIEW CALENDAR**





6/17/24, 5:36 PM                              Virginia Motor Sport Club - Virginia Motorsports Park

© Virginia Motorsports Park 2024 | Privacy Policy | Website developed by P.TEN Marketing



# EXHIBIT 3

VIRGINIA FORM SLB-9

DATE 03/01/2023

Applicant/Insured    Va Motorsports Park, LLC dba Virginia Motorsports Park

Name of Eligible Non-Admitted Insurer  LEXINGTON INSURANCE COMPANY
(If available)

Policy No.  41-LX-061736200-0-NH-107

### NOTICE TO INSURED

THE INSURANCE POLICY THAT YOU HAVE APPLIED FOR HAS BEEN PLACED WITH OR IS BEING OBTAINED FROM AN ELIGIBLE NONADMITTED INSURER APPROVED BY THE STATE CORPORATION COMMISSION FOR ISSUANCE OF SURPLUS LINES INSURANCE IN THE COMMONWEALTH. THEREFORE, YOU, THE POLICYHOLDER, AND PERSONS FILING A CLAIM AGAINST YOU ARE NOT PROTECTED UNDER THE VIRGINIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION ACT (§§ 38.2-1600 et seq.) OF THE CODE OF VIRGINIA AGAINST DEFAULT OF THE COMPANY DUE TO INSOLVENCY. IN THE EVENT OF INSURANCE COMPANY INSOLVENCY YOU MAY BE UNABLE TO COLLECT ANY AMOUNT OWED TO YOU BY THE COMPANY REGARDLESS OF THE TERMS OF THIS INSURANCE POLICY, AND YOU MAY HAVE TO PAY FOR ANY CLAIMS MADE AGAINST YOU.

USI Insurance Services, LLC

(Name of Surplus Lines Broker)

101198

(License Number)

601 Union St., Ste 1000, Seattle, WA 98101

(Broker's Mailing Address)



EXHIBIT 3

# RFP Response of Va. Motorsports Park, LLC, et al. 1

VIRGINIA FORM SLB-9 (Eff. 8/20)

DEF_VMP_FRANKLIN000002

## SUBSCRIBING MEMBER'S CERTIFICATE

| THIS SUBSCRIBING MEMBER'S CERTIFICATE FORMS A PART OF THE MASTER POLICY FOR: | |
|---|---|
| | MASTER POLICY NUMBER: 41-LX-861736200-0 |

Preferred Motor Sports Risk Purchasing Group, LLC
4300 Market Pointe Drive, Suite 600, Minneapolis, MN 55435 and
Additional Named Insureds, as evidenced on this Subscribing Member's
Certificate and as on file with the company.

Term: 01/25/2023 to 01/25/2025

Subscribing Member's Certificate Number: NH - 107
Renewal of Number:

Insurer Affording Coverage:

Lexington Insurance Co.
99 High Street, 23rd Floor
Boston, MA 02110

| Item 1. Subscribing Member Named Insured & Mailing Address | Agent Name and Address: |
|---|---|
| Va Motorsports Park, LLC dba Virginia Motorsports Park<br>8018 Boydton Plank Road<br>N. Dinwiddle        VA        23803 | Safehold Special Risk, Inc<br>2050 W Sam Houston Parkway South<br>Suite 1500<br>Houston, TX 77042 |

Item 2. Certificate Coverage Period:

From:        3/1/2023        To:        3/1/2024
At 12:01 AM Standard Time at the Mailing Address of the Named Insured shown above

Item 3. Form of Business        LLC

Item 4. Description of Business:        Motorsports

Locations of All Premises You Own, Rent or Occupy:        8018 Boydton Plank Road, N. Dinwiddle, VA 23803

Terrorism Coverage:

| ☐ | If this box is checked, the Named Insured Member has accepted Coverage for certified acts of terrorism;<br>coverage is included per applicable forms attached to this certificate. |
|---|---|
| ☑ | If this box is checked, the Named Insured Member has rejected Coverage for certified acts of terrorism;<br>coverage is excluded per applicable forms attached to this certificate. |

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS CERTIFICATE AND THE MASTER POLICY,
WE AGREE WITH YOU TO PROVIDE THE COVERAGE(S) FOR WHICH PREMIUM IS SHOWN. THE PREMIUMS SHOWN MAY BE SUBJECT TO ADJUSTMENT.

| | |
|---|---|
| Estimated Liability Premium: | |
| Terrorism Premium, (if accepted) | REJECTED |
| Maintenance Fee | |
| State Tax | |
| USI Filing Fee | |
| Estimated Total Member Premium: | |
| Deposit Premium | |
| Payment Plan: | 40% Deposit, 3 Quarterly Payments |
| PRG 142114 (01-23) Event Reporting and Earned Premium (Event Reporting Option): | Annual |

# RFP Response of Va. Motorsports Park, LLC et al. 2

| PRG 142084 (12/22) | Includes copyrighted material of Insurance Services Office,<br>Inc. with its permission. | Page 1 of 2 |
|---|---|---|

DEF_VMP_FRANKLIN000003

8. "Control Group" means a "Company's" Chief Executive Officer, Chief Financial Officer, Chief Security Officer, Chief Technology Officer, Chief Information Officer, Chief Information Security Officer, Data Protection Officer, Risk Manager and General Counsel (or persons with equivalent functions, regardless of title).

9. "Cyberterrorism" means the premeditated use of disruptive activities against any computer system or network, or the explicit threat to use such activities, by an individual or group of individuals, whether acting alone or on behalf of or in connection with any entity or government, in each case with the intention to cause harm, further social, ideological, religious, political or similar objectives, or to intimidate any person(s) in furtherance of such objectives. "Cyberterrorism" does not include any such activities which are part of or in support of any military action or war.

10. "Defense Costs" means all reasonable and necessary fees charged by an attorney appointed by us in connection with any "Suit" or "Regulatory Action" brought against an "Insured", as well as all other reasonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) incurred in the defense or investigation of a "Claim" by us or by an "Insured" with our written consent. Defense Costs shall not include: (i) compensation of any natural person "Insured"; or (ii) any fees, costs or expenses incurred prior to the time that a "Claim" is first made against an "Insured".

11. "Electronic Data" means any software or data stored electronically on a "Computer System", including without limitation "Confidential Information".

12. "Extortion Threat" means any:

    a. attack against a "Computer System" including, without limitation, an attack resulting from unauthorized access or use, a denial of service attack or the receipt or transmission of malicious code (including ransomware);

    b. threat or connected series of threats to attack, corrupt, damage or destroy a "Computer System"; or

    c. threat or connected series of threats to unlawfully access, use, disclose, damage or destroy "Confidential Information" for which an "Insured" is legally responsible;

    made in connection with a demand to an "Insured" for money, securities, tangible or intangible property, or the performance or cessation of a service or other activity by the "Insured", in order to end the attack or avoid the threatened action. "Extortion Threat" includes any such attack or threat made in connection with "Cyberterrorism".

13. "Extended Reporting Period" means any *Automatic Extended Reporting Period* or *Optional Extended Reporting Period*; as such terms are defined in the Extended Reporting Period Paragraph of this Coverage Part.

14. "First Party Insuring Agreement" means the *Event Management Insuring Agreement*, *Network Interruption Insuring Agreement* and *Cyber Extortion Insuring Agreement*.

15. "First Party Event" means:

    a. with respect to the *Event Management Insuring Agreement* and *Cyber Extortion Insuring Agreement*, any "Privacy Event" or "Security Failure";

    b. with respect to the *Network Interruption Insuring Agreement*, any "Security Failure"; and

    c. with respect to the *Cyber Extortion Insuring Agreement*, any "Extortion Threat";

16. "Information Holder" means a third party that:

    a. a "Company" has provided "Confidential Information" to; or

    b. has received "Confidential Information" on behalf of a "Company".

| 123020 (6-19) | | ©AIG, Inc.,<br>All rights reserved. | Page 3 of 20 |
|---|---|---|---|

**RFP Response of Va. Motorsports Park, LLC, et al. 61**

DEF_VMP_FRANKLIN000062

17. "Insured" means, with respect to all Insuring Agreements, any "Company".

With respect to the *Security and Privacy Insuring Agreement*, the definition of "Insured" also means any:

a. past, present or future officer, director, trustee or employee of a "Company" acting in their capacity as such (and in the event a "Company" is a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal thereof acting in their capacity as such); or

b. entity which a "Company" is required by contract to add as an "Insured" under the *Security and Privacy Insuring Agreement* of this Coverage Part, but only for the acts of such "Company" that result in a "Security Failure" or a "Privacy Event".

18. "Insurer" means the insurance company indicated in the Declarations.

19. "Limit of Liability" means the amount stated in Item 4 of the Declarations.

20. "Loss":

a. with respect to the *Security and Privacy Insuring Agreement*, "Loss" means damages, judgments, settlements, pre-judgment and post-judgment interest and "Defense Costs", including without limitation:

(1) punitive, exemplary and multiple damages where insurable by the applicable law which most favors coverage for such punitive, exemplary and multiple damages;

(2) civil fines or penalties imposed by a governmental agency and arising from a "Regulatory Action", where insurable by the applicable law which most favors coverage for such civil fines or penalties;

(3) any monetary amounts an "Insured" is required by law or has agreed by settlement to deposit into a consumer redress fund; and

(4) amounts payable in connection with a "PCI-DSS Assessment".

b. with respect to the *Event Management Insuring Agreement*, "Loss" means the following reasonable and necessary expenses and costs incurred by an "Insured" after (i) the discovery of a "Security Failure" or "Privacy Event", or (ii) the "Insured's" reasonable belief that a "Security Failure" or "Privacy Event" has occurred:

(1) for legal advice to an "Insured": (a) on minimizing the harm to such "Insured"; (b) regarding the course of action that is legally required or appropriate to respond to the "Security Failure" or "Privacy Event"; (c) on the appropriate content, scope and distribution of any notice or disclosure to consumers, government agencies, regulators, law enforcement agencies, investors or other interested parties concerning the "Security Failure" or "Privacy Event"; and (d) regarding any responses to inquiries from government agencies, regulators, law enforcement agencies or other interested parties;

(2) to (a) conduct an investigation (including a forensic investigation) to determine the existence, cause and scope of the "Security Failure" or "Privacy Event"; (b) identify any affected parties; and (c) contain and resolve the "Security Failure" or "Privacy Event";

(3) for public relations or crisis management advice to the "Insured" in order to minimize the harm to the reputation of the "Insured" and maintain or restore public confidence in the "Insured", including the costs to implement any public relations campaign designed specifically to avoid or minimize any adverse effects of negative publicity resulting from the "Security Failure" or "Privacy Event";

123020 (6-19)    ©AIG, Inc.,    Page 4 of 20
All rights reserved.

RFP Response of Va. Motorsports Park, LLC, et al. 62

DEF_VMP_FRANKLIN000063

**(4)** to notify those individuals and entities whose "Confidential Information" is reasonably believed to be the subject of the "Security Failure" or "Privacy Event" and advise of any available remedy in connection with the "Security Failure" or "Privacy Event", including, without limitation, those expenses and costs for printing, advertising and mailing of materials;

**(5)** to provide identity theft education and assistance, identity theft call center services, credit file or identity monitoring, identity theft restoration services and victim expense reimbursement insurance made available to those persons notified about a "Security Failure" or "Privacy Event" pursuant to subparagraph **(4)** above;

**(6)** to identify lost, damaged, destroyed or corrupted "Electronic Data" and determine whether such "Electronic Data" can be restored, repaired, recollected or recreated;

**(7)** to restore, recreate, repair or recollect lost, damaged, destroyed or corrupted "Electronic Data" to substantially the form in which it existed immediately prior to the "Security Failure" or "Privacy Event"; and

**(8)** for any other services approved by us at our sole and absolute discretion to mitigate the effects of a "Security Failure" or "Privacy Event" or avoid "Loss".

Notwithstanding the foregoing, "Loss" under the *Event Management Insuring Agreement* shall not include compensation, fees, benefits, overhead or internal charges of any "Insured". Additionally, expenses and costs to perform the services or tasks described above shall only be covered as "Loss" to the extent such services or tasks are performed by a firm appointed by us, or with our prior agreement.

**c.** with respect to the *Network Interruption Insuring Agreement*, "Loss" means the below listed costs incurred from the beginning of a "Material Interruption" through the 120th day after the end of the "Material Interruption" (or 120 days after the "Material Interruption" would have ended if an "Insured" exercised due diligence and dispatch):

**(1)** expenses, over and above normal operating expenses, to reduce "Loss" or to shorten the "Material Interruption"; and

**(2)** the sum of all of following, which shall be calculated on an hourly basis:

**(a)** net profits that would have been earned but for a "Material Interruption" (after charges and expenses, but not including any capital receipts, outlays properly chargeable to capital, and deductions for taxes and profits); and

**(b)** charges and expenses which necessarily continue (including ordinary payroll).

If there would have been no net profit, this subparagraph (2) is amended to say: charges and expenses which necessarily continue less any loss from business operations that would have been sustained had there been no "Material Interruption".

In determining the amount of "Loss" for the *Network Interruption Insuring Agreement*, due consideration shall be given to: (i) the experience of the "Insured's" business before the date of the "Material Interruption" and the probable experience had no "Material Interruption" occurred; and (ii) "Loss" which is recovered after the end of the "Material Interruption". The "Insured" agrees to act with due diligence and dispatch to repair or restore the "Computer System" to the same or equivalent operating conditions that existed prior to the "Material Interruption", and to use any other resources available to the "Insured", in order to continue its business and to reduce "Loss". "Loss" shall be reduced by any amount the "Insured" is able to collect from an "Outsource Provider" or other third party.

**RFP Response of Va. Motorsports Park, LLC, et al.** 63

DEF_VMP_FRANKLIN000064

If any "Insured" and we disagree on the amount of "Loss" the *Network Interruption Insuring Agreement*, either may make a written demand for an appraisal of such "Loss". If such demand is made, each party will select a competent and impartial appraiser. The appraisers will then jointly select an umpire. If the appraisers cannot agree on an umpire, they may request that selection be made by a judge of a court having jurisdiction. Each appraiser will separately state the amount of "Loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two of these three will be binding.

Such "Insured" and we will:

**(1)** pay their respective chosen appraiser; and

**(2)** bear the expenses of the umpire equally.

Any appraisal of "Loss" shall be calculated in accordance with all terms, conditions and exclusions of this Coverage Part.

If there is an appraisal, it is without prejudice to our rights under the terms and conditions of this Coverage Part and our right to deny the claim in whole or in part.

d.  with respect to the *Cyber Extortion Insuring Agreement*, "Loss" means:

**(1)** monies paid by an "Insured" with our prior written consent to end an "Extortion Threat" that would otherwise result in harm to any "Insured", including ransom payments, reward payments;

**(2)** the cost to obtain cryptocurrency to be surrendered as a ransom payment; and

**(3)** the following reasonable and necessary expenses and costs incurred by an "Insured" after notice of an "Extortion Threat" has been made to us:

**(a)** for legal advice to an "Insured": (i) on minimizing the harm to such "Insured"; (ii) regarding the course of action that is legally required or appropriate to respond to the "Extortion Threat", including advice as to whether the "Insured" has a right to indemnification from another party in connection with the "Extortion Threat"; (c) on the appropriate content, scope and distribution of any notice to government agencies, regulators or law enforcement agencies concerning the "Extortion Threat"; and (d) in connection with any inquiries made by government agencies, regulators, law enforcement agencies or other interested parties;

**(b)** to provide advice to the "Insured" as to the proper response to an "Extortion Threat" and assist an "Insured" in negotiating a resolution to an "Extortion Threat";

**(c)** to conduct an investigation to determine the validity, cause and scope of the "Extortion Threat" and contain or resolve the disruption of the operations of a "Computer System" caused by the "Extortion Threat"; and

**(d)** to provide public relations and/or crisis management advice to the "Insured" in order to minimize the harm to the reputation of the "Insured" and maintain or restore public confidence in the "Insured", including the costs to implement any public relations campaign designed specifically to avoid or minimize any adverse effects of negative publicity resulting from the "Extortion Threat".

"Loss" shall not include compensation, fees, benefits, overhead or internal charges of any "Insured". Expenses and costs to perform the services or tasks described above shall only be covered as "Loss" to the extent such services or tasks are performed by a firm appointed by us or with our prior agreement.

RFP Response of Va. Motorsports Park, LLC, et al. 64

| 123020 (6-19) | ©AIG, Inc.,<br>All rights reserved. | Page 8 of 20 |

21. "Management Control" means: (i) owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or (ii) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a "Company", to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

22. "Material Interruption" means the actual and measurable interruption or suspension of an "Insured's" business directly caused by a "Security Failure".

23. "Named Entity" means the named insured or entity listed in Item 1 of the Declarations.

24. "Outsource Provider" means an entity not owned, operated or controlled by an "Insured" that such "Insured" depends on to conduct its business; provided, however, "Outsource Provider" shall not include any "Utility," securities exchange or securities market.

25. "PCI-DSS Assessment" means any written demand or notice received by a "Company" from a Payment Card Association (e.g., MasterCard, Visa, American Express) or bank or servicer processing payment card transactions (an "Acquiring Bank" or "Payment Processor") for a monetary assessment including, without limitation, fraud recovery, operational reimbursement (including reimbursement of card reissuance expenses) and contractual fines and penalties, where:

    a. a "Company" has contractually agreed to indemnify such Acquiring Bank, Payment Processor or Payment Card Association for any monetary assessment made in connection with a "Company's" obligations under "PCI Data Security Standards" including, without limitation, such contractual obligations contained in a Merchant Services Agreement or similar agreement; and

    b. such monetary assessment arises out of a "Security Failure" or "Privacy Event".

26. "Policy Period" means the period of time from the inception date stated in Item 3 of the Declarations to the earlier of the expiration date stated in Item 3 of the Declarations or the effective date of cancellation of the coverage provided under this Coverage Part.

27. "Pollutants" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

28. "Privacy Event":

    a. with respect to the *Security and Privacy Insuring Agreement,* "Privacy Event" means the following occurring on or after the "Retroactive Date" and prior to the end of the "Policy Period":

        (1) any failure to protect "Confidential Information" (whether by "phishing," other social engineering technique or otherwise) including, without limitation, that which could result in an identity theft or other wrongful emulation of the identity of an individual or corporation;

        (2) any failure to disclose an event referenced in sub-paragraph (1) above in violation of any "Security Breach Notice Law"; or

        (3) any violation of a federal, state, foreign or local privacy law alleged in connection with a failure or activity described above;

| 123020 (6-19) | | |

©AIG, Inc.
All rights reserved.

**RFP Response of Va. Motorsports Park, LLC, et al.** Page 7 of 20 65

DEF_VMP_FRANKLIN000066

including any event described above resulting from the use of a computer or electronic device (including mobile phones or tablets) owned or controlled by an officer, employee or "Information Holder" to store or access "Confidential Information".

b.  with respect to the *Event Management Insuring Agreement*, "Privacy Event" means any failure to protect "Confidential Information" (whether by "phishing," other social engineering technique or otherwise), including, without limitation, that which could result in an identity theft or other wrongful emulation of the identity of an individual or corporation. "Privacy Event" includes any event described above resulting from the use of a computer or electronic device (including mobile phones or tablets) owned or controlled by an officer, employee or "Information Holder" to store or access "Confidential Information".

29. "Property Damage" means physical damage to, loss of use of or destruction of any tangible property; provided, however, "Property Damage" does not include the loss of use of computer or electronic equipment unless caused by physical damage to or destruction of tangible property. For purposes of this definition, "tangible property" shall not include electronic data.

30. "Regulatory Action" means a request for information, civil investigative demand or civil or administrative proceeding brought by or on behalf of a governmental agency or authorized data protection authority.

31. "Related Acts" means all "First Party Events" and "Third Party Events" which are the same, related or continuous and all "First Party Events" and "Third Party Events" which arise from a common nucleus of facts. All "Related Acts" shall be deemed to have occurred at the time the first such "Related Act" occurred.

32. "Remaining Retention" means the Retention set forth in Item 6 of the Declarations less the amount of "Loss" incurred by any "Insured" during the "Waiting Hours Period". If the "Loss" incurred by any "Insured" during the "Waiting Hours Period" is greater than the Retention, the "Remaining Retention" equals zero.

33. "Retroactive Date" means the date set forth in Item 8 of the Declarations.

34. "Security Breach Notice Law" means any federal, state, local or foreign statute or regulation that requires an entity collecting or storing "Confidential Information", or any entity that has provided "Confidential Information" to an "Information Holder", to provide notice of any actual or potential unauthorized access by others to such "Confidential Information".

35. "Security Failure" means any failure or violation of the security of a "Computer System", including, without limitation, that which results in or fails to mitigate any unauthorized access, unauthorized use, denial of service attack or receipt or transmission of a malicious code. "Security Failure" includes any such failure or violation resulting from (i) the theft of a password or access code by electronic or non-electronic means; (ii) "Cyberterrorism"; or (iii) the use of a computer or electronic device (including mobile phones or tablets owned or controlled by an officer or employee of a "Company" or "Information Holder" to access a "Computer System".

With respect to the *Security and Privacy Insuring Agreement*, "Security Failure" also means the failure to disclose an event described above in violation of any "Security Breach Notice Law"., Notwithstanding the foregoing, with respect to the *Security and Privacy Insuring Agreement*, "Security Failure" shall only means the events described in the preceding two paragraphs of this definition if such events occurred on or after the "Retroactive Date" and prior to the end of the "Policy Period".

36. "Suit" means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. "Suit" includes a binding arbitration proceeding to which an "Insured" must submit or does submit with our consent.

©AIG, Inc.,
All rights reserved.

| 123020 (6-19) | | Page 8 of 20 |

**RFP Response of Va. Motorsports Park, LLC, et al. 66**

DEF_VMP_FRANKLIN000067

37. "Subsidiary" means:

   a.  any for-profit entity of which you have or had "Management Control" ("Controlled Entity") on or before the inception date of the "Policy Period", either directly or indirectly through one or more other "Controlled Entities";

   b.  any for-profit entity of which you acquire "Management Control" during the "Policy Period", either directly or indirectly, whose gross revenues for the most recent fiscal year prior to the inception of the "Policy Period" do not exceed fifteen percent (15%) of the aggregate gross revenues of all "Companies" for the most recent fiscal year prior to the inception date of the "Policy Period";

   c.  any for-profit entity of which you acquire "Management Control" during the "Policy Period", either directly or indirectly, whose gross revenues for the most recent fiscal year prior to the inception of the "Policy Period" exceed fifteen percent (15%) of the aggregate gross revenues of all "Companies" for the most recent fiscal year prior to the inception the "Policy Period", but only once (i) you shall have provided us with full particulars of such entity and agreed to any additional premium and amendments to this Coverage Part relating to such entity; and (ii) we have ratified its acceptance of such entity as a "Subsidiary" by endorsement to this Coverage Part; and

   d.  any not-for-profit entity sponsored exclusively by a "Company".

Notwithstanding the foregoing, coverage afforded under this Coverage Part for any "Subsidiary" or any person or entity that is an "Insured" solely as a result of their affiliation therewith, shall only apply to "Loss" arising out of "First Party Events" and "Third Party Events" occurring or allegedly occurring after the effective time that you obtained "Management Control" of such "Subsidiary" and prior to the time you ceased to have "Management Control" of such "Subsidiary".

38. "Third Party Event" means, with respect to the *Security and Privacy Insuring Agreement*, a "Security Failure" or "Privacy Event".

39. "Waiting Hours Period" means twenty-four (24) hours, which is time that must elapse once a "Material Interruption" has begun.

40. "Utility" means an entity that provides any of the following or similar services: electricity, waste management, sewage services, water supply, fire services, police services, gas/oil/steam/energy services, postal service, public security, public safety, emergency services, public transportation, and telecommunications, including but not limited to, phone services, broadband services, internet service providers (including any provider of internet connectivity), both fixed-line and mobile.

C. EXTENSIONS

Subject to the other terms of this Coverage Part, this Coverage Part shall cover "Loss" arising from any "Claim" made against (i) the estate, heirs, or legal representatives of a deceased natural person "Insured", and the legal representatives of a natural person "Insured" in the event of incompetency, insolvency or bankruptcy, who was an "Insured" at the time the "Third Party Events" upon which such "Claims" are based occurred; or (ii) the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or legally recognized domestic partner of a natural person "Insured" for all "Claims" arising solely out of his or her status as the spouse or domestic partner of a natural person "Insured", including a "Claim" that seeks damages recoverable from marital community property, property jointly held by the natural person "Insured" and the spouse or domestic partner, or property transferred from the natural person "Insured" to the spouse or domestic partner.

D. EXCLUSIONS

| 123020 (6-19) | | ©AIG, Inc.<br>All rights reserved. | Page 8 of 20 |

**RFP Response of Va. Motorsports Park, LLC, et al. 67**

**1. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS:**

This Coverage Part shall not cover "Loss" in connection with any "Claim" or "First Party Event":

**a.** alleging, arising out of, based upon or attributable to any (i) presence of "Pollutants", (ii) the actual or threatened discharge, dispersal, release or escape of "Pollutants", or (iii) direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or in any way respond to or assess the effects of "Pollutants".

**b.** alleging, arising out of, based upon or attributable to any "Bodily Injury" or "Property Damage".

**c.** alleging, arising out of, based upon or attributable to any war (whether war is declared or not), invasion, use of military force, civil war, popular or military uprising, rebellion, revolution, or any action taken to hinder or defend against any of these events;

**d.** alleging, arising out of, based upon or attributable to any "Security Failure", "Privacy Event", "Extortion Threat", or any "Related Acts" thereto, alleged or contained in any "Claim" or "First Party Event" which has been reported, or in any circumstances of which notice has been given, under any policy of which this Coverage Part is a renewal or replacement or which it may succeed in time.

**e.** alleging, arising out of, based upon or attributable to any fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law, if committed by any:

    **(1)** individual who, at the time of such event, was a member of the "Control Group", or a duly elected or appointed member of the board of directors, management committee or other governing body of a "Company", whether acting alone or in collusion with other persons; or

    **(2)** past or present employee (other than those referenced in Sub-paragraph (1) above) or independent contractor employed by a "Company" or an "Information Holder" if any person referenced in Sub-paragraph (1) above participated in, approved of or acquiesced to, or knew or had reason to know prior to the act of such fraudulent, malicious, or criminal act or such intentional or knowing violation of the law;

provided, however, for the *Security and Privacy Insuring Agreement*, we will defend any "Suit" or "Regulatory Action" alleging any such conduct  not otherwise excluded, until there is a final, non-appealable judgment or adjudication as to such conduct in any action or proceeding other than an action or proceeding initiated by us to determine coverage under this Coverage Part, at which time the "Insureds" shall reimburse us for "Defense Costs".

**f.** alleging, arising out of, based upon or attributable to any fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, solar flare, act of God or any other physical event, however caused.

**g.** alleging, arising out of, based upon or attributable to any satellite failure.

**h.** alleging arising out of, based upon or attributable to any:

    **(1)** infringement of patent; or

    **(2)** misappropriation of a trade secret by or for the benefit of an "Insured".

**i.** alleging, arising out of, based upon or attributable to any electrical or mechanical failures of infrastructure not under the control of an "Insured", including any electrical power interruption, surge, brownout or blackout.

123020 (6-19)    ©AIG, Inc.,    Page 10 of 20
All rights reserved.

RFP Response of Va. Motorsports Park, LLC, et al. 68

   j.   alleging, arising out of, based upon or attributable to any failure of telephone lines, data transmission lines or other telecommunications or networking infrastructure not under the control of an "Insured".

   k.   alleging, arising out of, based upon or attributable to any:

       (1)  purchase, sale, or offer or solicitation of an offer to purchase or sell the securities of a "Company"; or

       (2)  violation by any "Insured" of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; provided, however, solely with respect to the *Security and Privacy Insuring Agreement*, this exclusion does not apply to a "Claim" alleging a "Privacy Event" in violation of Regulation S-P (17 C.F.R. § 248); provided further, however, this exclusion does not apply to a "Claim" alleging a failure to disclose a "Security Failure" or "Privacy Event" in violation of any "Security Breach Notice Law".

   l.   for (i) the theft or loss of money or securities from an "Insured"; or (ii) the theft or loss of money or securities being transferred: (i) from or to an "Insured's" accounts or accounts under an "Insured's" control (including customer accounts), or (ii) at the actual or apparent direction of an "Insured". For purposes of this exclusion, the term "accounts" shall include, but are not limited to, deposit, credit, debit, prepaid and securities brokerage accounts, and the term "money or securities" includes, but is not limited to, cryptocurrency.

   m.  alleging, arising out of, based upon or attributable to any seizure, confiscation, or nationalization of a "Computer System" or "Electronic Data" by order of any governmental or public authority.

   n.   for an "Insured's" cost of providing, correcting, re-performing or completing any services.

   o.   for the loss, damage or diminishing of value of any money, securities, cryptocurrency or other digital assets.

**2.  ADDITIONAL EXCLUSIONS APPLICABLE TO SECURITY AND PRIVACY INSURING AGREEMENT:**

This Coverage Part shall not cover "Loss" in connection with any "Claim":

   a.   brought by or on behalf of:

       (1)  any "Insured";

       (2)  any business entity that is controlled, managed or operated, directly or indirectly, in whole or in part, by an "Insured"; or

       (3)  any parent company, "Subsidiary", successor or assignee of an "Insured", or any person or entity affiliated with an "Insured" or such business entity through common "Management Control";

       provided, however, that this exclusion shall not apply to (i) an "Insured" as described in sub-paragraph c. of the definition of "Insured"; or (ii) an "Insured" as described in sub-paragraph b. of the definition of "Insured" but only to the extent such "Insured" is alleging a "Privacy Event" or a failure to disclose a "Security Failure" or "Privacy Event".

   b.   for any of the following:

       (1)  the return of an "Insured's" fees or compensation;

       (2)  an "Insured's" expenses or charges, including employee compensation and benefits, overhead, over-charges or cost over-runs;

| 123020 (6-19) | | ©AIG, Inc.<br>All rights reserved. | Page 11 of 20 |

RFP Response of Va. Motorsports Park, LLC, et al. 69

DEF_VMP_FRANKLIN000070

(3) civil or criminal fines or penalties imposed by law against an "Insured" and any matters deemed uninsurable under the law pursuant to which this Coverage Part shall be construed; provided, however, solely with respect to the *Security and Privacy Insuring Agreement*, this sub-paragraph (3) shall not apply to (i) any monetary amounts an "Insured" is required by law or has agreed to by settlement to deposit into a consumer redress fund, or (ii) any civil fine or penalty imposed by a governmental agency arising from a "Regulatory Action", where insurable by the applicable law which most favors coverage for such civil fines or penalties;

(4) an "Insured's" costs and expenses of complying with any injunctive or other form of equitable relief;

(5) taxes incurred by an "Insured";

(6) the amounts for which an "Insured" is not financially liable or which are without legal recourse to any "Insured"; or

(7) amounts an "Insured" agrees to pay pursuant to a contract, including without limitation, liquidated damages, setoffs or penalties, to the extent such amounts exceed the amount the "Insured" can prove it would have been liable for in the absence of a contract; provided, however, this exclusion shall not apply to any "PCI-DSS Assessment".

c. alleging, arising out of, based upon or attributable to any "Security Failure" or "Privacy Event" occurring prior to the applicable "Retroactive Date" or any "Related Acts" thereto, regardless of when such "Related Act" occurs.

d. alleging, arising out of, based upon or attributable to any "Security Failure" or "Privacy Event" occurring prior to the applicable "Continuity Date", or any "Related Act" thereto (regardless of when such "Related Act" occurs), if, as of the "Continuity Date", non-administrative personnel in the office of any member of the "Control Group" knew or could have reasonably foreseen that such "Security Failure" or "Privacy Event" did or would result in a "Claim" against an "Insured".

e. alleging, arising out of, based upon or attributable to any obligation an "Insured" has under contract; provided, however, this exclusion shall not apply to:

(1) the obligation to prevent a "Security Failure" or a "Privacy Event", including without limitation, whether same is in violation of an implied or statutory standard of care;

(2) liability an "Insured" would have in the absence of such contract or agreement;

(3) the obligation to comply with "PCI Data Security Standards" or to indemnify an Acquiring Bank or Payment Processor for amounts owed in connection with a "PCI-DSS Assessment"; or

(4) with respect to a "Privacy Event", any liability or obligation under the confidentiality or non-disclosure provisions of any agreement.

f. alleging, arising out of, based upon or attributable to antitrust, unfair competition, restraint of trade, including, without limitation, violations of any local, state or federal law regulating such conduct; provided, however, this exclusion shall not apply to any "Regulatory Action" alleging unfair competition directly in connection with a "Security Failure" or "Privacy Event".

g. alleging, arising out of, based upon or attributable to any of an "Insured's" employment practices (including, without limitation, wrongful dismissal, discharge or termination, discrimination, harassment, retaliation or other employment-related claim); provided, however, this exclusion shall not apply to any "Claim" by an individual to the extent such individual is alleging (ii) a "Privacy Event" in connection with such individual's employment or application for employment with a "Company", or (ii) a failure to disclose a "Security Failure" or "Privacy Event" in violation of any "Security Breach Notice Law".

| 123020 (6-19) | | ©AIG, Inc., All rights reserved. | | Page 123 of 201 |

**RFP Response of Va. Motorsports Park, LLC, et al. 70**

DEF_VMP_FRANKLIN000071

3.  **ADDITIONAL EXCLUSIONS APPLICABLE TO NETWORK INTERRUPTION INSURING AGREEMENT:**

The Insurer shall not be liable to make any payment for Loss for:

a.  legal costs or legal expenses of any type;

b.  contractual penalties or consequential damages;

c.  income loss due to unfavorable business conditions;

d.  the cost of removing software programing errors or vulnerabilities;

e.  extortion payments or public relations expenses;

f.  updating, upgrading, enhancing, or replacing any component of the "Computer System" to a level beyond that which existed prior to sustaining "Loss"; or

g.  a "Security Failure" caused by the outage or impairment of any "Utility", securities exchange or market.

**E.  LIMIT OF LIABILITY**

The "Limit of Liability" is our maximum liability for all "Loss" under this Coverage Part and we shall not be responsible to pay any "Loss" after the exhaustion of the "Limit of Liability".

The "Limit of Liability" for any "Extended Reporting Period" shall be part of, and not in addition to, the "Limit of Liability" for the "Policy Period".

Solely with respect to *the Security and Privacy Insuring* Agreement, a "Claim" made subsequent to the "Policy Period" or "Extended Reporting Period" which, pursuant to Paragraphs **G.1.b** and **G.1.c** respectively, is considered made during the "Policy Period" or "Extended Reporting Period", shall also be subject to the "Limit of Liability".

Notwithstanding the foregoing:

1.  our maximum liability for all "Loss" under the *Cyber Extortion Insuring Agreement* is the Cyber Extortion Sublimit of Liability set forth in Item 5 of the Declarations. This amount shall be part of and not in addition to the "Limit of Liability".

2.  our maximum liability for all "Loss" under the *Network Interruption Insuring Agreement* arising from a "Security Failure" of the "Computer System" of an "Outsource Provider" is $25,000. This amount shall be part of and not in addition to the "Limit of Liability".

**F.  RETENTION**

We shall only be liable for the amount of "Loss" arising from a "Claim" or "First Party Event" that exceeds the applicable Retention stated in Item 6 of the Declarations. Such Retention amounts must be borne by the "Insureds" and remain uninsured. One Retention shall apply to all "Related Acts".

Notwithstanding the foregoing; solely with respect to the *Network Interruption Insuring Agreement*, the applicable Retention shall be the Remaining Retention.

| 123020 (6-19) | | ©AIG, Inc., All rights reserved. | Page 13 of 20 |

**RFP Response of Va. Motorsports Park, LLC, et al. 71**

DEF_VMP_FRANKLIN000072

## G. CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

1. **NOTICE**

   a. The "Insureds" shall, as a condition precedent to our obligations under this Coverage Part, give written notice to us of any "Claim" made against an "Insured" or a "First Party Event" as soon as practicable after:

      (1) For the *Security and Privacy Insuring Agreement*, any member of the "Control Group", or any non-administrative personnel reporting directly to a member of the "Control Group", first becomes aware of the "Claim"; or

      (2) For a "First Party Insuring Agreement", any "First Party Event" commences or, solely with respect to the *Event Management Insuring Agreement*, is discovered.

   b. Notwithstanding the foregoing and regardless of whether any person described in **1.a.(1)** above has become aware, in all events each "Claim" or "First Party Event" for which coverage is sought under this Coverage Part must be reported no later than either:

      (1) sixty (60) days after the end of the "Policy Period"; or

      (2) the end of any applicable "Extended Reporting Period".

   c. If written notice of a "Claim" or a "First Party Event" has been given to us pursuant to Paragraphs **1.a.** or **1.b.** above, then notice of:

      (1) any subsequent "Claim" made against an "Insured"; or

      (2) any subsequent "First Party Event";

      arising out of, based upon or attributable to the facts giving rise to the first noticed "Claim" or "First Party Event", or alleging any "Related Act(s)" thereto, (i) must first satisfy the applicable notice requirements in Paragraph **1.a.** or **1.b.** above, and then (2) shall be considered given at the time the first such notice was given.

   d. Solely with respect to the *Security and Privacy Insuring Agreement*, if during the "Policy Period" or during the "Extended Reporting Period" (if applicable), an "Insured" shall become aware of any circumstances which may reasonably be expected to give rise to a "Claim" being made against an "Insured" and shall choose to give written notice to us of such circumstances, the "Third Party Events", allegations anticipated and the reasons for anticipating such a "Claim", with full particulars as to dates, persons and entities involved, then any "Claim" which is subsequently made against an "Insured" and reported to us alleging, arising out of, based upon or attributable to such circumstances or alleging any "Related Act" to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

   e. Notice as described herein shall be given to us in one of the following ways:

      (1) In writing at the following address:

      **AIG Property Casualty**
      **Financial Lines Claims**
      **P.O. Box 25947**
      **Shawnee Mission, KS  66225**

      (2) By email, to c-claim@aig.com

| 123020 (6-19) | | ©AIG, Inc.<br>All rights reserved. | Page 14 of 20 |

**RFP Response of Va. Motorsports Park, LLC, et al.** 72

DEF_VMP_FRANKLIN000073

Any notice must reference the Policy Number and the Insuring Agreement(s) under which an "Insured" is providing notice.

If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

f. *Cooperation with Law Enforcement.* In the event a "Company" receives a request from a law enforcement authority to keep certain information about an actual or suspected "First Party Event" or "Third Party Event" confidential, notice of such "First Party Event", or of a "Claim" relating to or arising out of such "Third Party Event", shall be considered timely under the Coverage Part if:

(1) as soon as practicable after receipt of such request, an officer or employee of the "Company" requests permission from such law enforcement authority to give notice of such "First Party Event" or "Claim" under this Coverage Part and to share such confidential information with us;

(2) the "Company" only withholds from us that portion of the information, and any required notice, that it has been instructed by such law enforcement authority not to share with us; and

(3) the "Company" provides full notice of such "First Party Event" or "Claim" to us as soon as legally permitted, including a copy of the request from the law enforcement authority and any subsequent communications relating thereto.

To the extent the procedure set forth above is followed in connection with a law enforcement request, any failure or delay in providing information to us shall not be the basis for denial of coverage for such "Claim" or "First Party Event" for failure to provide documentation or otherwise cooperate, as required by Paragraph G.3 of this Coverage Part.

Notwithstanding the foregoing, no coverage shall be afforded under this Coverage Part for any "Claim" or "First Party Event" if the information withheld relating to such "First Party Event" or "Third Party Event" was: (i) known to the "Company" prior to the applicable "Continuity Date", or if no "Continuity Date" is applicable, prior to the inception date of the first CyberEdge Coverage Form (or other endorsement or policy providing substantively identical coverage) issued by us (or our insurance company affiliate) to you and continually renewed by us (or an affiliate) until the inception date of this Coverage Part, and (ii) not disclosed in the "Application".

2. **DEFENSE AND SETTLEMENT OF CLAIMS**

a. We have the right and duty to defend a "Suit" or "Regulatory Action" alleging a "Security Failure" or "Privacy Event", even if the "Suit" or "Regulatory Action" is groundless, false or fraudulent.

b. We have the right to investigate any "Claim".

c. Our duty to defend ends if an "Insured" refuses to consent to a settlement that we recommend pursuant to the SETTLEMENT provision below and that the claimant will accept. As a consequence of such "Insured's" refusal, our liability shall not exceed the amount for which we could have settled such "Claim" had such "Insured" consented, plus "Defense Costs" incurred prior to the date of such refusal, plus 50% of "Loss" incurred after the date of such refusal (including 50% of "Defense Costs" incurred with our prior written consent). This Paragraph shall not apply to any settlement where the total incurred "Loss" does not exceed the applicable Retention amount.

d. We have the right, with the written consent of an "Insured", to settle any "Claim" if we believe that it is proper.

e. An "Insured" may settle any "Claim" on behalf of all "Insureds" to which this insurance applies and which are subject to one Retention amount where the total incurred "Loss" does not exceed the Retention amount.

RFP Response of Va. Motorsports Park, LLC, et al. 73

DEF_VMP_FRANKLIN000074

## 3. INSURED'S OBLIGATIONS

a. Before any "Loss" is paid in connection with a "Claim", each "Insured" agrees to:

(1) send us copies of all demands, suit papers, other related legal documents and invoices for "Defense Costs" received by such "Insured", as soon as practicable;

(2) cooperate with us and/or any counsel appointed pursuant to the terms of this Coverage Part, including, without limitation, as follows:

(a) by not admitting liability;

(b) in making settlements;

(c) in enforcing any legal rights any "Insured" may have against anyone who may be liable to any "Insured";

(d) by attending depositions, hearings and trials, securing and giving evidence, and obtaining the attendance of witnesses; and

(e) by furnishing any and all documentation within the possession of such "Insured" that may be required.

b. Before any "Loss" is paid in connection with a "First Party Event", each "Insured" agrees to:

(1) provide to us a written, signed and affirmed proof of loss which shall include, among any other pertinent information:

(a) the specifics of the "First Party Event" including, without limitation, the date the "First Party Event" first occurred, and the date the "Insured" first became aware of the "First Party Event";

(b) where the "First Party Event" was caused by or involved a party other than an "Insured", the identity of the third party and all information provided by such third party in connection with or relating to the "First Party Event";

(c) a full description of "Loss" incurred and the circumstances surrounding such "Loss" including, along with any other necessary information, the time, place and cause of the "Loss" and a detailed calculation of "Loss"; and

(d) all underlying documents and materials that reasonably relate to or form any part of the proof of "Loss".

(2) cooperate with us, including, without limitation, assisting us:

(a) in any investigation or appraisal of a "First Party Event" or "Loss";

(b) in enforcing any legal rights an "Insured" or we may have against anyone who may be liable to an "Insured";

(c) by executing any documents that we deem necessary to secure our rights under this Coverage Part;

(d) where requested by us, by submitting to an examination under oath; and

(e) by taking such actions that you and we agree are necessary and practicable to prevent or limit "Loss" arising from the "First Party Event".

**RFP Response of Va. Motorsports Park, LLC, et al.** 74

| 123020 (6-19) | | ©AIG, Inc., All rights reserved. | Page 16 of 20 |
| --- | --- | --- | --- |

DEF_VMP_FRANKLIN000075

All adjusted claims shall be due and payable thirty (30) days after the presentation and written acceptance by us of satisfactory proof of "Loss" to the address set forth in Paragraph **G.1.e.** above. Unless otherwise specifically provided, the costs and expenses of establishing or proving "Loss" under any Insuring Agreement, including, without limitation, those connected with preparing a proof of loss, shall be such "Insured's" obligation, and are not covered under this Coverage Part.

(3) unless required to do so by law, "Insureds" shall not, without our prior written consent:

(a) assume any financial obligation or incur any cost unless specifically allowed to settle any "Claim" on behalf of all "Insureds" within the Retention; or

(b) take any action or fail to take any required action which prejudices our rights under this Coverage Part.

## 4. EXTENDED REPORTING PERIODS

This Paragraph applies solely to the *Security and Privacy Insuring Agreement* but shall not apply in the event of cancellation for non-payment of premium:

a. *Automatic Extended Reporting Period*: If you or we shall cancel or refuse to renew this Coverage Part, you shall have the right following the effective date of such cancellation, nonrenewal, or "Transaction" to a period of sixty (60) days (the "*Automatic Extended Reporting Period*") in which to give written notice to us of "Claims" first made against an "Insured" during the *Automatic Extended Reporting Period* for any "Third Party Events" occurring prior to such effective date. The *Automatic Extended Reporting Period* shall not apply where an *Optional Extended Reporting Period* has been purchased or to "Claims" that are covered under any subsequent insurance an "Insured" purchases or that is purchased for an "Insured's" benefit, or that would be covered by any subsequent insurance but for the exhaustion of the amount of insurance applicable to any such "Claim" or any applicable Retention.

b. *Optional Extended Reporting Period*: Except as indicated below, if you or we shall cancel or refuse to renew this Coverage Part or in the event of a "Transaction" (as that term is defined in Paragraph G.5 below), you shall have the right to a period of up to three years following the end of the "Policy Period" (an *Optional Extended Reporting Period*), upon payment of an additional premium amount of up to:

(1) one hundred percent (100%) of the full annual premium, for a period of one (1) year;

(2) one hundred and seventy-five percent (175%) of the full annual premium, for a period of two (2) years; or

(3) two hundred percent (200%) of the full annual premium, for a period of three (3) years,

in which to give written notice to us of "Claims" first made against an "Insured" during the *Optional Extended Reporting Period* for any "Third Party Events" occurring prior to such effective date.

If you exercise your right to purchase an *Optional Extended Reporting Period*, that period incepts at the end of the "Policy Period" and there shall be no *Automatic Extended Reporting Period*.

As used herein, "full annual premium" means the premium amount set forth in the Declarations as such, plus an additional premium charged for any endorsements to this Coverage Part.

The right to purchase an *Optional Extended Reporting Period* shall terminate unless written notice of election, together with any additional premium due, is received by us no later than thirty (30) days after the effective date of the cancellation, nonrenewal or "Transaction".

Any "Extended Reporting Period" cannot be canceled by the "Insured".

**RFP Response of Va. Motorsports Park, LLC, et al. 75**

DEF_VMP_FRANKLIN000076

5. **TRANSACTIONS**

   a. If during the "Policy Period":

      (1) you shall consolidate with or merge into, or sell all or substantially all of your assets to any other person or entity or group of persons or entities acting in concert; or

      (2) any person or entity or group of persons or entities acting in concert shall acquire "Management Control" of you;

     (either of the above events herein referred to as the "Transaction"), then the coverage provided under this Coverage Part shall continue in full force and effect only as to those "First Party Events" and "Third Party Events" occurring prior to the effective time of the "Transaction".

     The coverage provided under this Coverage Part may not be canceled by you after the effective time of the "Transaction".

   b. Notwithstanding the foregoing, coverage provided under this Coverage Part may continue as to those "First Party Events" and "Third Party Events" occurring after the effective time of the "Transaction" if:

      (1) within thirty (30) days of such "Transaction" we have been provided with full particulars of the "Transaction", the related or acquiring person(s) or entity(ies) and any other information requested by us; and

      (2) we waive the restrictions set forth in Paragraph G.4.a above with respect to such "Transaction" by written endorsement to this Coverage Part and you or your successor has paid any additional premium and accepted any amendments to this Coverage Part required by us.

6. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

   An "Insured" may be able to recover all or part of "Loss" from someone other than us. Such "Insured" must do all that is possible after a "First Party Event" or "Third Party Event" to preserve any, and all, rights of recovery. As a condition of any payment by us under this Coverage Part, an "Insured's" rights to recovery will be transferred to us. Each "Insured" will do whatever is necessary, including signing documents, to help us obtain that recovery.

   A "Company" may waive an "Insured's" rights to recovery against others if such "Company" does so in writing and before the "First Party Event" or "Third Party Event" occurred.

7. **OTHER INSURANCE**

   Such insurance as is provided by this Coverage Part shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over the "Limit of Liability" provided by this Coverage Part.

8. **NOTICE AND AUTHORITY**

   Except for the giving of a notice of "Claim", which shall be governed by the provisions of the Notice Condition of this Coverage Part, all notices required under this Coverage Part to be given by an "Insured" to us shall be given in writing to us at the address stated in Item 2 of the Declarations. It is agreed that the first Named Insured or first "Named Entity" shall act on behalf of all "Insureds" with respect to the giving of notice of a "Claim", the giving and receiving of notice of cancellation and nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this Coverage Part, the receipt and acceptance of any endorsements issued to form a part of this Coverage Part, the exercising or declining of the right to tender the defense of a "Claim" to us and the exercising or declining to exercise any right to a "Extended Reporting Period".

| 123020 (6-19) | | ©AIG, Inc., <br> All rights reserved. | Page 18 of 20 |

RFP Response of Va. Motorsports Park, LLC, et al. 76

DEF_VMP_FRANKLIN000077

IL 01 40 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Connecticut law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to:

1. Individual Named Insured by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, or Farm Umbrella Liability Policy, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Connecticut law, who is a resident of your household, including a ward or foster child.

**RFP Response of Va. Motorsports Park, LLC, et al. 77**

IL 01 40 09 08                © ISO Properties, Inc., 2007                Page 1 of 1

DEF_VMP_FRANKLIN000078

**9.  DISPUTE RESOLUTION PROCESS**

All disputes or differences which may arise under or in connection with this Coverage Part, whether arising before or after termination of this Coverage Part, including any determination of the amount of "Loss", shall be submitted to an alternative dispute resolution process (ADR) as provided in this Paragraph.  You may elect either mediation or arbitration as the type of ADR process; provided, however, that in the absence of a timely election, we may elect the type of ADR.  To the extent we elect the type of ADR, you shall have the right to reject our choice of ADR at any time prior to the commencement, after which, our choice of ADR shall control.

**a.**  *Mediation*:  In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 90 days shall have elapsed from the date of the termination of the mediation.

**b.**  *Arbitration*:  In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or other costs.

**c.**  *Selection of Arbitrator(s) or Mediator*:  We and you shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel, or (ii) in case of mediation, a single mediator.  The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, coverage subject matter, or insurance issues relevant to the matters in dispute.  In the absence of agreement, we and you each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

**d.**  *ADR Rules*:  In considering the construction or interpretation of the provisions of this Coverage Part the mediator or arbitrator(s) must give due consideration to the general principles of the law of the state in which this Coverage Part is issued. Each party shall share equally the expenses of the process elected. At your election, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations as the mailing address of the first "Named Entity".  The first "Named Entity" shall act on behalf of each and every "Insured" under this Alternative Dispute Resolution Paragraph. In all other respects, we and you shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.

**10.  LEGAL ACTION AGAINST US**

Except as provided in Paragraph 9 above, no action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Coverage Part, nor, with respect to the *Security and Privacy Insuring Agreement*, until the amount of an "Insured's" obligation to pay shall have been finally determined either by judgment against such "Insured" after actual trial or by written agreement of such "Insured", the claimant and us.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Coverage Part to the extent of the insurance afforded by this Coverage Part.  No person or organization shall have any right under this Coverage Part to join us as a party to any action against an "Insured" or a "Company" to determine an "Insured's" liability, nor shall we be impleaded by an "Insured" or a "Company" or their legal representatives.

**11.  BANKRUPTCY**

Bankruptcy or insolvency of any "Company" or any "Insured" or of their estates shall not relieve us of any of its obligations hereunder.

| 123020 (6-19) | | ©AIG, Inc.,<br>All rights reserved. | Page 19 of 20 |

RFP Response of Va. Motorsports Park, LLC, et al. 78

**12. WORLDWIDE TERRITORY**

This Coverage Part shall apply to "First Party Events" and "Third Party Events" occurring, "Claims" made or "Losses" suffered anywhere in the world.

**13. HEADINGS**

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**14. WHEN WE DO NOT RENEW**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured or first "Named Entity" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**15. CONFORMANCE TO LAW**

Coverage under this Coverage Part shall not be provided to the extent prohibited by law.

**16. RECOVERY OF LIMITS**

In the event we recover amounts we paid under this Coverage Part, we shall reinstate the Limit of Liability of this Coverage Part to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. We assume no duty to seek a recovery of any amounts paid under this Coverage Part.

[The balance of this page is intentionally left blank.]

| 123020 (6-19) | | ©AIG, Inc., <br> All rights reserved. | Page 20 of 20 |

**RFP Response of Va. Motorsports Park, LLC, et al.** 79

DEF_VMP_FRANKLIN000080

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Policy No.: 41-LX-061736200-0 000
Effective 12:01 a.m. 01/25/2023

## AMENDATORY ENDORSEMENT
## MINNESOTA

This endorsement modifies insurance provided under the following:

**CyberEdge Coverage Form®**

The Coverage Part is amended as follows:

1.  The Claims-Made Notice of the DECLARATIONS and the first page of this Coverage Part is deleted and replaced with the following:

    THIS NOTICE IS REQUIRED BY THE MINNESOTA DEPARTMENT OF COMMERCE WITH RESPECT TO THE LIABILITY COVERAGE PROVIDED UNDER THIS POLICY.

    THIS POLICY CONTAINS ONE OR MORE COVERAGE SECTIONS ON A CLAIMS-MADE BASIS. THIS MEANS THAT ONLY CLAIMS ACTUALLY MADE DURING THE POLICY PERIOD ARE COVERED UNLESS COVERAGE FOR AN EXTENDED REPORTING PERIOD IS PURCHASED. IF AN EXTENDED REPORTING PERIOD IS NOT MADE AVAILABLE TO YOU, YOU RISK HAVING GAPS IN COVERAGE WHEN SWITCHING FROM ONE COMPANY TO ANOTHER. MOREOVER, EVEN IF SUCH A REPORTING PERIOD IS MADE AVAILABLE TO YOU, YOU MAY STILL BE PERSONALLY LIABLE FOR CLAIMS REPORTED AFTER THE PERIOD EXPIRES. CLAIMS-MADE POLICIES DO NOT PROVIDE COVERAGE FOR WRONGFUL ACTS COMMITTED BEFORE A FIXED CONTINUITY/RETROACTIVE DATE. RATES FOR CLAIMS-MADE POLICIES ARE DISCOUNTED IN THE EARLY YEARS OF A POLICY, BUT INCREASE STEADILY OVER TIME.

2.  The last sentence of the DECLARATIONS is modified to the extent necessary to provide the following:

    Where required by law, this Policy shall not be valid unless signed below at the time of issuance by our authorized representative.

3.  The definition of "Loss" in the **DEFINITIONS** Section related to *Security and Privacy Insuring Agreement* is modified to the extent necessary to provide the following:

    (a)  Any coverage provided under this Coverage Part for punitive, exemplary and multiple damages shall be limited to those instances where the laws of the State of Minnesota do not govern the "Claim". As regards to "Claims" brought in the State of Minnesota, punitive or exemplary damages are only insurable in cases involving the "Named Entity's" vicarious liability.

**RFP Response of Va. Motorsports Park, LLC, et al. 80**

| 123039 (6-19) | © American International Group, Inc. All rights reserved. | Page 1 of 3 |
|---|---|---|

DEF_VMP_FRANKLIN000081

    (b)    Pre-judgment interest is removed from the definition of "Loss".

    (c)    The following paragraph is added to the end thereof:

        Pre-judgment interest on a covered judgment shall be paid in addition to the "Limit of Liability" (in accordance with Section 4. of this Amendatory Endorsement).

4.    Section **E. LIMIT OF LIABILITY** is amended to include the following paragraph at the end of the Section:

    Pre-judgment interest on a covered judgment shall be paid in addition to the "Limit of Liability", subject to the following:

        If the claimant or his/her attorney makes a settlement offer resolving the "Claim" against us and an "Insured" (the principal amount of which is within the applicable "Limit of Liability" and an "Insured" and the claimant or his/her attorney agree to their portion of such settlement offer, but we reject our portion of such settlement offer, then, in the event a judgment is entered against an "Insured", (the principal amount of which is within the applicable "Limit of Liability" , we shall be liable for all interest due on said judgment entered against an "Insured", even if the payment of the judgment, plus such interest thereon, totals a sum in excess of the policy's "Limit of Liability".  If an "Insured" rejects a settlement offer made by a claimant or his/her attorney, and we consented to the settlement, then we shall not be liable for any interest due on any subsequent judgment.

5.    Paragraph **1. NOTICE** of Section **G. CONDITIONS** is modified to the extent necessary to provide the following:

        Notice of a "Claim" may be received either orally or in writing.  Notice given by or on behalf of an "Insured", or notice by or on behalf of the injured party or any other claimant, to any of our licensed agents in the state of Minnesota, with particulars sufficient to identify the "Insured", shall be deemed notice to us.

6.    Subparagraph e. of Paragraph **1. NOTICE** of Section **G. CONDITIONS** is deleted in its entirety and replaced by the following:

    e.    Notice as described herein shall be given in writing to us in one of the following ways:

        (1)    In writing at the following address or email address:

            AIG Property Casualty
            Financial Lines Claims
            P.O. Box 25947
            Shawnee Mission, KS  66225
            c-claim@aig.com

        (2)    By email, to c-claim@aig.com

        (3)    Orally at (888) 602-5246

    Any notice must reference the Policy Number set forth in the Declarations and the Coverage Section(s) under which an Insured is providing notice.

**RFP Response of Va. Motorsports Park, LLC, et al. 81**

| 123039 (6-19) | © American International Group, Inc.<br>All rights reserved. | Page 2 of 3 |

DEF_VMP_FRANKLIN000082

If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

7. Paragraph 6. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** of Section **G. CONDITIONS** is modified to the extent necessary to provide the following:

We may not proceed against an "Insured" in a subrogation action where the "loss" is caused by the unintentional acts of such "Insured".

We also may not subrogate itself to the rights of an "Insured" to proceed against another person if that other person is insured for the same "Loss" by us. This only applies if the "Loss" was caused by an unintentional act.

8. Paragraph 9. **DISPUTE RESOLUTION PROCESS** of Section **G. CONDITIONS** is modified to the extent necessary to provide the following:

The non-binding mediation shall be commenced in the state indicated in Item 1 of the Declarations as the mailing address for the first "Named Entity".

9. Paragraph 11. **BANKRUPTCY** of Section **G. CONDITIONS** is modified to the extent necessary to provide the following:

Bankruptcy, insolvency or dissolution of any "Company" or "Insured" or of their estates shall not relieve us of any of our obligations hereunder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

**RFP Response of Va. Motorsports Park, LLC, et al. 82**

| 123039 (6-19) | © American International Group, Inc. All rights reserved. | Page 3 of 3 |

DEF_VMP_FRANKLIN000083

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Policy No: 41-LX-061736200-0 000

Effective 12:01 a.m. 01/25/2023

## Physical Abuse, Sexual Abuse or Molestation Exclusion Endorsement

*This endorsement modifies insurance provided under the following:*

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph 2. Exclusions of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, and Paragraph 2. Exclusions of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING LIABILITY:

This insurance does not apply to any liability of any person by any person, arising out of:

1. Any actual, threatened or alleged, sexual abuse, sexual molestation, sexual harassment, sexual misconduct, physical abuse, mental abuse, physical assault, sexual assault, sexual victimization, sexual intimacy (even if consensual), sexual contact, sexual advances, sexual exploitation, requests for sexual favors, verbal or physical conduct of a sexual nature, coercion to engage in sexual activities, licentious or immoral misconduct, and any resulting mental or emotional injury; or

2. The negligent employment, investigation, supervision, reporting to the proper authorities or failure to so report, or the retention of any person for whom any insured is or has ever been legally responsible and whose conduct would be excluded by Paragraph 1. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or Countersignature
(Where Applicable)

113513 (3/13)    Includes copyrighted material of Insurance Services Office, Inc.,    Page 1 of 1
with its permission.

**RFP Response of Va. Motorsports Park, LLC, et al. 83**

DEF_VMP_FRANKLIN000084

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 A.M. 01/25/2023
Forms a part of Policy No.:  41-LX-061736200-0

## EPIDEMIC OR PANDEMIC EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is hereby agreed as follows:

I.    SECTION I – COVERAGES, Paragraph 2. Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY and Paragraph 2. Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY are each amended by the addition of the following exclusion:

**Epidemic or Pandemic**

This insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", liability or any other loss, cost, damage, expense, injury, claim or "suit", arising out of, or resulting directly or indirectly, in whole or in part from an "epidemic" or "pandemic", regardless of when such "epidemic" or "pandemic" was declared, including but not limited to:

1.   any "communicable disease" that is part of, or in any way involved in, any "epidemic" or "pandemic";

2.   any disease, illness or condition resulting from or arising out of any "epidemic" or "pandemic"; or

3.   any liability, loss, injury, damage, cost or expense relating to the testing, monitoring, clean-up, removal, containment, treatment, disposal, replacement, rehabilitation of, or responding in any way to, the actual, alleged, threatened or suspected contamination of real or personal property by any item described in paragraphs 1. or 2. above.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing, breach of duty or violation of law in:

a.   supervising, hiring, employing, training or monitoring of others that may be a host or carrier of any "communicable disease" described in paragraph 1. above or infected with any disease, illness or condition described in paragraph 2. above;

b.   testing or failure to test for any "communicable disease" described in paragraph 1. above or any disease, illness or condition described in paragraph 2. above;

REP Response of Va. Motorsports Park, LLC, et al. 84

| 143307 (9/21) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 1 of 2 |

DEF_VMP_FRANKLIN000085

   **c.**   failure to prevent or limit the spread of any "communicable disease" described in paragraph 1. above or any disease, illness or condition described in paragraph 2. above;

   **d.**   failure to warn or inadequacy of any warnings or instructions related to the actual or potential presence of any "communicable disease" described in paragraph 1. above or any disease, illness or condition described in paragraph 2. above;

   **e.**   failure to report the presence of any known or suspected "communicable disease" described in paragraph 1. above or any disease, illness or condition described in paragraph 2. above to a governing authority or organization; or

   **f.**   any other measure taken in response to the actual or suspected presence of any "communicable disease" described in paragraph 1. above or any disease, illness or condition described in paragraph 2. above.

**II.**   **SECTION VI. DEFINITIONS** is amended to include the following additional definitions:

"Communicable disease" means any infectious or contagious substance:

   **a.**   including, but not limited to, a virus, bacterium, parasite or other organism or any mutation thereof, whether deemed living or not, and

   **b.**   regardless of the method of transmission, whether direct or indirect, including, but not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between humans, animals, or from any animal to any human or from any human to any animal,

that can cause any disease, illness, or bodily condition or exacerbate or accelerate an existing disease, illness or bodily condition.

"Epidemic" means an outbreak of an infectious disease, illness or bodily condition that is declared to be an epidemic by the U.S. Centers for Disease Control and Prevention (CDC) or any government authority, public health organization or other entity of any city, state, country or territory that has the authority to make such a declaration.

"Pandemic" means an outbreak of an infectious disease, illness or bodily condition that is declared a pandemic by the World Health Organization (WHO) or any international government authority, public health organization or other entity that has the authority to make such a declaration.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

| 143307 (9/21) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 2 of 2 |
|---|---|---|

RFP Response of Va. Motorsports
Park, LLC, et al. 85

DEF_VMP_FRANKLIN000086

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Policy No: 41-LX-061736200-0 000

Effective 12:01 a.m. 01/25/2023

RADIOACTIVE MATTER EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions, is amended to add:**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. - Exclusions, is amended to add:**

"Personal and advertising injury" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 86**

62898 (07/12)                Includes copyrighted material of                Page 1 of 1
Insurance Services Office, Inc., with its permission.

DEF_VMP_FRANKLIN000087

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Policy No: 41-LX-061736200-0 000

Effective 12:01 a.m.  01/25/2023

ERISA EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section I. – Coverages, Coverage A.– Bodily Injury and Property Damage Liability, 2. – Exclusions, is amended to add:

> "Bodily injury" or "property damage" arising out of any obligation you incur under the Employee Retirement Income Security Act of 1974, Public Law 93-406, any law amendatory thereof or any regulation pertaining thereto.

Section I. – Coverages, Coverage B.– Personal and Advertising Liability, 2. – Exclusions is amended to add:

> "Personal and advertising injury" arising out of any obligation you incur under the Employee Retirement Income Security Act of 1974, Public Law 93-406, any law amendatory thereof or any regulation pertaining thereto.

_____

Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 87**

64004 (07/12)                  includes copyrighted material of
                    Insurance Services Office, Inc., with its permission.

DEF_VMP_FRANKLIN000088

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Policy No: 41-LX-061736200-0 000

Effective 12:01 a.m. 01/25/2023

## ASBESTOS AND SILICA EXCLUSION ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section I. - COVERAGES, COVERAGE A. - BODILY INJURY and PROPERTY DAMAGE LIABILITY,
2. - Exclusions, is amended to add the following exclusions:

Asbestos

"Bodily injury" or "property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

Silica

"Bodily injury" or "property damage" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

Section I. - COVERAGES, COVERAGE B. - PERSONAL and ADVERTISING INJURY LIABILITY,
2. - Exclusions is amended to add the following exclusions:

Asbestos

"Personal and advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

Silica

"Personal and advertising injury" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

All other terms, conditions and exclusions of the policy shall remain unchanged.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 88**

82540 (07/12)
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

DEF_VMP_FRANKLIN000089

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

  (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  (2) The "bodily injury" or "property damage" occurs during the policy period; and

  (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## RFP Response of Va. Motorsports Park, LLC, et al. 89

© Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

# RFP Response of Va. Motorsports Park, LLC, et al. 90

© Insurance Services Office, Inc., 2012

## Item 5. Coverage(s) and Limit(s) of Insurance

| COMMERCIAL GENERAL LIABILITY | COVERAGE SPECIFICATIONS: YOUR POLICY CONSISTS OF THE FOLLOWING COVERAGE(S) WHEN A LIMIT OF INSURANCE IS INDICATED BELOW. IF A LIMIT OF LIABILITY IS NOT SHOWN, THERE IS NO COVERAGE PROVIDED. | |
|---|---|---|
| **LIMITS AND DEDUCTIBLES** | | |
| General Aggregate Limit | $ | 5,000,000 |
| Products Completed Operations Aggregate Limit | $ | 5,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Personal & Advertising Injury Limit | $ | 1,000,000 |
| Damage to Premises Rented to You Limit | $ | 100,000  *Any one premises* |
| Medical Expense Limit | | Excluded  *Any one person or organization* |
| | | |
| Motorsports Participant Liability | $ | 1,000,000 |
| Limited Coverage – Damage to Property in Restricted Area at a Motor Racing Event | $ | 100,000 |
| Motorsports Errors & Omission, Each Occurrence | $ | 250,000 |
| Personal and Advertising Injury - Wrongful Eviction - Motor Racing Events | $ | 100,000 |
| Liquor Liability - Each Common Cause | $ | 1,000,000 |
| Liquor Liability - Aggregate | $ | 2,000,000 |

## Item 6. Classification and Premium

| Classification /Code No. | | | Premium Basis | Rate | Premium |
|---|---|---|---|---|---|
| Race Tracks-motorized vehicles | Drag Events | 46911 | 23 | | |
| Race Tracks-motorized vehicles | Grudge | 46911 | 30 | | |
| Race Tracks-motorized vehicles | Car Shows | 46911 | 2 | | |
| Race Tracks-motorized vehicles | Mudbog | 46911 | 2 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total Estimated Premium | | | | $ | |

The TOTAL PREMIUM shown above includes charges for endorsements which may not be listed in the CLASSIFICATION AND PREMIUM section above.

## Item 7. Endorsements Attached to This Policy: As Listed On The Master Policy And Any Additional Forms Listed Here (if applicable)

| CG2026 Additional Insured Designated Person or Organization |
|---|
| PRG 142096 (01-23) Exclusion - Designated Activities |
| PRG 4101 (12-19) CyberEdge Coverage Form Declarations Page |

March 2, 2023
Issued Date

Authorized Representative

THIS IS TO CERTIFY THAT THE COVERAGE OF INSURANCE LISTED ABOVE HAS BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE COVERAGE PERIOD INDICATED. THESE CERTIFICATE AND DECLARATIONS OF THE RISK PURCHASING GROUP, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.
THE INSURANCE AFFORDED BY THE POLICY DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF THE MASTER POLICY AND ANY ENDORSEMENTS LISTED ABOVE.

RPR Response of Va. Motorsports Park, LLC, et al. 3

| PRG 142084 (12/22) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 2 of 2 |
|---|---|---|

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

# RFP Response of Va. Motorsports Park, LLC, et al. 4

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

# RFP Response of Va. Motorsports Park, LLC, et al. 5

     © ISO Properties, Inc., 2004     CG 20 28 07 04     ☐
DEF_VMP_FRANKLIN000006

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EXCLUSION – DESIGNATED ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Description Of Designated Activities: |
| --- |
|  |
| Specified Location (If Applicable): |
|  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the activities described in the Schedule of this endorsement, regardless of whether such activities are conducted by you or on your behalf or whether the activities are conducted for you or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such activities are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described activities conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**RFP Response of Va. Motorsports Park, LLC, et al. 6**

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 1 of 2 |
| --- | --- | --- |

DEF_VMP_FRANKLIN000007

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

RFP Response of Va. Motorsports

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc. with its permission. | Page 2 of 2 |

Park, LLC, et al. 7

DEF_VMP_FRANKLIN000008

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

# RFP Response of Va. Motorsports
# Park, LLC, et al. 8

91222 (9/16)

## POLICYHOLDER NOTICE

### Taxes, Assessments and/or Surcharges

The taxes, assessments and/or surcharges shown on the declarations page or any premium schedule are collected on behalf of the applicable State(s) and in accordance with such State's laws and regulations. The payment of these taxes, assessments and/or surcharges is the responsibility of the Named Insured. In the event the applicable State implements a new tax, assessment and/or surcharge or increases such tax, assessment and/or surcharge during the term of this policy, the Named Insured shall remain responsible for the payment of all amounts due under the policy, including those newly implemented or increased taxes, assessments and/or surcharges.

Any newly implemented or increased taxes, assessments and/or surcharges shall apply on the effective date dictated by the applicable State regardless:

1.  Of when the Insurance Company implements the new or increased tax, assessment or surcharge into its systems; or
2.  If the Insurance Company recalculates the Named Insured's premium in accordance with the policy's terms and conditions as part of a premium audit after the end of the policy period.

# RFP Response of Va. Motorsports Park, LLC, et al. 9

118477 (3/15)

DEF_VMP_FRANKLIN000010

# Notification

## CHANGE TO INSURER'S ADDRESS

Please be advised that all references to the address 175 Water St, New York, NY 10038 contained in the Policy, Policy Declarations, riders, endorsements, and Policy notices are hereby deleted in their entirety and replaced with the following: 1271 Ave of the Americas FL 37, New York, NY 10020-1304

All other terms and conditions of the Policy remain the same.

**RFP Response of Va. Motorsports Park, LLC, et al. 10**

141636 (5/21)

DEF_VMP_FRANKLIN000011

## Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**Lexington Insurance Company**
To get information or file a complaint with your insurance company or HMO:
> **Call: AIG at 212-770-7000**
> **Toll-free: 866-397-1933**
> **Email: GCMS@aig.com**
> **Mail: Attn: Complaints, 1271 Ave of the Americas, Floor 37**
> **New York, NY 10020-1304**

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:
> Call with a question: 1-800-252-3439
> File a complaint: www.tdi.texas.gov
> Email: ConsumerProtection@tdi.texas.gov
> Mail: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

## ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**Lexington Insurance Company**
Para obtener información o para presentar una queja ante su compañía de seguros o HMO:

# RFP Response of Va. Motorsports Park, LLC, et al. 11

135934 (8/21)

DEF_VMP_FRANKLIN000012

**Llame a: AIG al 212-770-7000**

**Teléfono gratuito: 866-397-1933**
**Correo electrónico: GCMS@aig.com**
**Dirección postal: Attn: Complaints, 1271 Ave of the Americas, Floor 37**
    **New York, NY 10020-1304**

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

Llame con sus preguntas al: 1-800-252-3439
Presente una queja en: www.tdi.texas.gov
Correo electrónico: ConsumerProtection@tdi.texas.gov
Dirección postal: MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

135934 (8/21)

# RFP Response of Va. Motorsports Park, LLC, et al. 12

DEF_VMP_FRANKLIN000013

# LEXINGTON INSURANCE COMPANY

A stock company
99 High Street, Boston, MA 02110
## COMMON POLICY DECLARATIONS
DECLARATION

POLICY NO: 41-LX-061736200-0

**NAMED INSURED AND MAILING ADDRESS**

PREFERRED MOTOR SPORTS RISK PURCHASING
GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

**PRODUCER MAILING ADDRESS**          103418

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
CARROLLTON, GA 30117

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

**THE NAMED INSURED IS:** Limited Liability Company (LLC)    **BUSINESS DESCRIPTION:** Motorsports Risk Purchasing Group

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| THIS POLICY CONSISTS OF THE COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. | |
|---|---|
| | **PREMIUM** |
| COMMERCIAL PROPERTY | $ |
| COMMERCIAL GENERAL LIABILITY | $ |
| CRIME AND FIDELITY | $ |
| COMMERCIAL INLAND MARINE | $ |
| PROFESSIONAL LIABILITY | $ |
| CYBEREDGE | $ |
| TOTAL PREMIUM | $ |
| POLICY PREMIUM | $ |

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS**
See Forms Schedule
NOTE: IF NO ENTRY APPEARS ON THE ABOVE ENDORSEMENTS, INFORMATION REQUIRED TO COMPLETE THE FORM WILL BE SHOWN ON THE SUPPLEMENTAL FORM DECLARATION IMMEDIATELY FOLLOWING THE APPLICABLE ENDORSEMENT.

THESE DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, AND SUPPLEMENTAL FORM DECLARATION(S), IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

# RFP Response of Va. Motorsports Park, LLC, et al. 13

02-12-23

Page 1 of 1

# LEXINGTON INSURANCE COMPANY

A stock company
99 High Street, Boston, MA 02110
### GENERAL LIABILITY
DECLARATION

| POLICY NO: 41-LX-061736200-0 |
|---|

**NAMED INSURED AND MAILING ADDRESS**

PREFERRED MOTOR SPORTS RISK
PURCHASING GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

**PRODUCER MAILING ADDRESS**          103418

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
CARROLLTON, GA 30117

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**COMMERCIAL GENERAL LIABILITY COVERAGE**

| LIMITS OF INSURANCE | | |
|---|---|---|
| GENERAL AGGREGATE | $5,000,000 | |
| PRODUCTS – COMPLETED OPERATIONS AGGREGATE | $5,000,000 | |
| PERSONAL INJURY & ADVERTISING INJURY | $1,000,000 | |
| EACH OCCURRENCE | $1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU | $100,000 | ANY ONE PREMISES |
| MEDICAL EXPENSE | EXCLUDED | ANY ONE PERSON |

**LIQUOR LIABILITY COVERAGE**

| LIMITS OF INSURANCE | |
|---|---|
| EACH COMMON CAUSE LIMIT | $1,000,000 |
| AGGREGATE LIMIT | $2,000,000 |

**MISCELLANEOUS COVERAGE - POLICY**

| COVERAGE | PREMIUM BASIS | ESTIMATED EXPOSURE |
|---|---|---|
| | | |

02-12-23
93837 (12/06)
CG DS 01 10 01

RFP Response of Va. Motorsports
Park, LLC, et al. 14

Page 1 of 10

DEF_VMP_FRANKLIN000015

# LEXINGTON INSURANCE COMPANY
### GENERAL LIABILITY
DECLARATION

| | |
|---|---|
| POLICY NO: 41-LX-061736200-0 | EFFECTIVE DATE: 01/25/2023 |
| INSURED: PREFERRED MOTOR SPORTS RISK PURCHASING GROUP, LLC | AGENT: SAFEHOLD SPECIAL RISK, INC |

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**
1 RPG 4300 Marketpointe Dr., Suite 600, Minneapolis. MN 55435
2 Alaska Refer to Subscribing Member Certificate
3 Arizona Refer to Subscribing Member Certificate
4 Arkansas Refer to Subscribing Member Certificate
5 California Refer to Subscribing Member Certificate
6 Colorado Refer to Subscribing Member Certificate
7 Oklahoma Refer to Subscribing Member Certificate
8 Georgia Refer to Subscribing Member Certificate.
9 Hawaii Refer to Subscribing Member Certificate

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**
10 Idaho Refer to Subscribing Member Certificate
11 Illinois Refer to Subscribing Member Certificate,
12 Indiana Refer to Subscribing Member Certificate
13 Iowa Refer to Subscribing Member Certificate
14 Louisiana Refer to Subscribing Member Certificate,
15 Maryland Refer to Subscribing Member Certificate,
16 Nebraska Refer to Subscribing Member Certificate,
17 New Jersey Refer to Subscribing Member Certificate
18 Ohio Refer to Subscribing Member Certificate,
19 New Mexico Refer to Subscribing Member Certificate
20 Pennsylvania Refer to Subscribing Member Certificate,
21 South Carolina Refer to Subscribing Member Certificate
22 Texas Refer to Subscribing Member Certificate,
23 Virginia Refer to Subscribing Member Certificate,
24 Washington Refer to Subscribing Member Certificate,

| DESCRIPTION OF BUSINESS |
|---|

FORM OF BUSINESS:
☐ INDIVIDUAL     ☐ PARTNERSHIP     ☐ JOINT VENTURE     ☐ TRUST

☒ LIMITED LIABILITY COMPANY     ☐ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

☐ OTHER

BUSINESS DESCRIPTION:  Motorsports Risk Purchasing Group

02-12-23
93837 (12/06)
CG DS 01 10 01

**RFP Response of Va. Motorsports Park, LLC, et al. 15**
Page 2 of 10

DEF_VMP_FRANKLIN000016

# LEXINGTON INSURANCE COMPANY

99 High Street, Boston, MA 02110

## GENERAL LIABILITY

GENERAL CHANGE ENDORSEMENT

POLICY NO: 41-LX-061736200-0 END: 001

**ACCOUNT NUMBER:**

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS     103418 |
|---|---|
| PREFERRED MOTOR SPORTS RISK<br>PURCHASING GROUP, LLC<br>4300 MARKETPOINTE DR., SUITE 600<br>MINNEAPOLIS, MN 55435 | SAFEHOLD SPECIAL RISK, INC<br>100 GLEN EAGLES COURT<br>CARROLLTON, GA 30117 |

| 25 | Alabama | ABBEVILLE | Refer to Subscribing Member Certificate | Abbeville | Alabama | 36310 |
|---|---|---|---|---|---|---|
| 26 | Connecticut | Abington | Refer to Subscribing Member Certificate | Abington | Connecticut | 06230 |
| 27 | DC | Anacostia | Refer to Subscribing Member Certificate | Anacostia | District of Columbia | 20373 |
| 28 | North Carolina | Aberdeen | Refer to Subscribing Member Certificate | Aberdeen | North Carolina | 28315 |
| 29 | Florida | Jacksonville | Refer to Subscribing Member Certificate | Jacksonville | Florida | 32099 |
| 30 | Kansas | Kansas City | Refer to Subscribing Member Certificate | Kansas City | Kansas | 66104 |
| 31 | Kentucky | SAINT FRANCIS | Refer to Subscribing Member Certificate | Saint Francis | Kentucky | 40062 |
| 32 | Maine | Auburn | Refer to Subscribing Member Certificate | Auburn | Maine | 04210 |
| 33 | Massachusetts | Cambridge | Refer to Subscribing Member Certificate | Cambridge | Massachusetts | 02139 |
| 34 | Michigan | East Lansing | Refer to Subscribing Member Certificate | East Lansing | Michigan | 48823 |
| 35 | Mississippi | Avalon | Refer to Subscribing Member Certificate | Avalon | Mississippi | 38930 |
| 36 | Missouri | SAINT LOUIS | Refer to Subscribing Member Certificate | Kirksville | Missouri | 63501 |
| 37 | Montana | Bozeman | Refer to Subscribing Member Certificate | Bozeman | Montana | 59715 |
| 39 | New Hampshire | Salem | Refer to Subscribing Member Certificate | Salem | New Hampshire | 03079 |
| 41 | North Dakota | Fargo | Refer to Subscribing Member Certificate | Fargo | North Dakota | 58103 |
| 42 | Oregon | PORTLAND | Refer to Subscribing Member Certificate | Portland | Oregon | 97209 |
| 43 | Rhode Island | Cranston | Refer to Subscribing Member Certificate | Cranston | Rhode Island | 02920 |
| 44 | South Dakota | Rockerville | Refer to Subscribing Member Certificate | Rockerville | South Dakota | 57702 |
| 45 | Tennessee | Antioch | Refer to Subscribing Member Certificate | Antioch | Tennessee | 37013 |
| 46 | Utah | Salt Lake City | Refer to Subscribing Member Certificate | Salt Lake City | Utah | 84103 |
| 47 | Vermont | Burlington | Refer to Subscribing Member Certificate | Burlington | Vermont | 05403 |
| 48 | West Virginia | Charleston | Refer to Subscribing Member Certificate | Charleston | West Virginia | 25301 |
| 49 | Wisconsin | Milwaukee | Refer to Subscribing Member Certificate | West Allis | Wisconsin | 53214 |
| 50 | Wyoming | Cheyenne | Refer to Subscribing Member Certificate | Cheyenne | Wyoming | 82005 |

02-27-23

# RFP Response of Va. Motorsports Park, LLC, et al. 16

Page 1 of 2

# LEXINGTON INSURANCE COMPANY
## GENERAL LIABILITY
### DECLARATION

| POLICY NO: 41-LX-061736200-0 | EFFECTIVE DATE: 01/25/2023 |
|---|---|
| INSURED: PREFERRED MOTOR SPORTS RISK PURCHASING GROUP, LLC | AGENT: SAFEHOLD SPECIAL RISK, INC |

| LOC | CLASSIFICATION | CODE | PREMIUM BASIS | EXPOSURE | PMS RATE | PDTS RATE | OTHER RATE |
|---|---|---|---|---|---|---|---|
| | Race Tracks - motorized vehicles - operators<br><br>Products-completed operations are subject to the General Aggregate Limit | 46911 | | | | | |
| | | 70412 | | | | | |
| | | | | | | | |
| | | | | | | | |

02-12-23
93837 (12/06)
CG DS 01 10 01

# RFP Response of Va. Motorsports Park, LLC, et al. 17

DEF_VMP_FRANKLIN000018

# LEXINGTON INSURANCE COMPANY
## GENERAL LIABILITY
### DECLARATION

| | |
|---|---|
| POLICY NO: 41-LX-061736200-0<br>INSURED: PREFERRED MOTOR SPORTS RISK<br>PURCHASING GROUP, LLC | EFFECTIVE DATE: 01/25/2023<br>AGENT: SAFEHOLD SPECIAL RISK, INC |

TERRORISM EXCLUSION APPLIES - RISK INSURANCE ACT

GENERAL LIABILITY PREMIUM

FORMS AND ENDORSEMENTS
APPLYING TO THIS COVERAGE PART AND MADE PART OF THIS POLICY AT TIME OF ISSUE:

02-12-23
93837 (12/06)
CG DS 01 10 01

# RFP Response of Va. Motorsports Park, LLC, et al. 18

DEF_VMP_FRANKLIN000019

# LEXINGTON INSURANCE COMPANY
## GENERAL LIABILITY
### DECLARATION

| | |
|---|---|
| POLICY NO: 41-LX-061736200-0<br>INSURED: PREFERRED MOTOR SPORTS RISK<br>PURCHASING GROUP, LLC | EFFECTIVE DATE: 01/25/2023<br>AGENT: SAFEHOLD SPECIAL RISK, INC |

**See Forms Schedule**

NOTE: IF NO ENTRY APPEARS ON THE ABOVE ENDORSEMENTS, INFORMATION REQUIRED TO COMPLETE THE FORM WILL BE SHOWN ON THE SUPPLEMENTAL FORM DECLARATION IMMEDIATELY FOLLOWING THE APPLICABLE ENDORSEMENT.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, AND SUPPLEMENTAL FORM DECLARATIONS), IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

02-12-23
93837 (12/06)
CG DS 01 10 01

**RFP Response of Va. Motorsports Park, LLC, et al. 19**

Page 10 of 10

DEF_VMP_FRANKLIN000020

# Lexington Insurance Company
99 High Street, Boston, MA 02110

## EXTENDED NAME SCHEDULE

POLICY NO: 41-LX-061736200-0

**ACCOUNT NUMBER:**

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS | 103418 |
|---|---|---|
| PREFERRED MOTOR SPORTS RISK PURCHASING GROUP, LLC<br>4300 MARKETPOINTE DR., SUITE 600<br>MINNEAPOLIS,MN 55435 | SAFEHOLD SPECIAL RISK, INC<br>100 GLEN EAGLES COURT<br>Carrollton, GA 30117 | |

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

Preferred Motor Sports Risk Purchasing Group, LLC and its Subscribing Members Certificate(s) on File with the Company. This Policy Applies to Each Subscribing Member Per the Subscribing Member's Certificate, as if a Separate Policy were issued for Each.

COUNTERSIGNED AT: _____ BY: _____

AUTHORIZED REPRESENTATIVE

**RFP Response of Va. Motorsports Park, LLC, et al.**

02-12-23

Page 120

DEF_VMP_FRANKLIN000021

# LEXINGTON INSURANCE COMPANY

99 High Street, Boston, MA 02110

## FORMS SCHEDULE

POLICY NO: 41-LX-061736200-0

**ACCOUNT NUMBER:**
**NAMED INSURED AND MAILING ADDRESS**

PREFERRED MOTOR SPORTS RISK PURCHASING
GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

**AGENCY AND MAILING ADDRESS**          103418

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
CARROLLTON, GA 30117

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING
ADDRESS SHOWN ABOVE.
**NOTE: IF NO ENTRY APPEARS ON THE FOLLOWING ENDORSEMENTS, INFORMATION REQUIRED TO
COMPLETE THE FORM WILL BE SHOWN ON THE SUPPLEMENTAL FORM DECLARATION IMMEDIATELY
FOLLOWING THE APPLICABLE ENDORSEMENT.**

| COMMON POLICY PACKAGE | | APPLICABLE COVERAGE PARTS |
|---|---|---|
| 118950 02-20 | Terrorism Exclusion Certified and Non-Certified Acts Endorsement | CyberEdge, General Liability |
| 89644 06-13 | Economic Sanctions Endorsement | General Liability |
| 96555 03-20 | Policyholder Disclosure Notice of Terrorism Insurance Coverage (Right to Purchase Coverage) | CyberEdge, General Liability |
| IL0003 09-08 | Calculation of Premium | General Liability |
| IL0017 11-98 | Common Policy Conditions | General Liability |
| IL0021 09-08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) | General Liability |
| IL0258 01-20 | Arizona Changes - Cancellation And Nonrenewal | General Liability |
| IL0125 11-13 | Colorado Changes - Civil Union | General Liability |
| IL0149 01-12 | Hawaii Changes - Civil Union | General Liability |
| IL0147 09-11 | Illinois Changes - Civil Union | General Liability |
| IL0162 10-13 | Illinois Changes - Defense Costs | General Liability |
| IL0158 09-08 | Indiana Changes | General Liability |
| IL0245 09-08 | Minnesota Changes - Cancellation And Nonrenewal | General Liability |
| IL0141 09-08 | New Jersey Changes - Civil Union | General Liability |
| IL0179 10-02 | Oklahoma Notice | General Liability |
| IL0120 05-11 | Pennsylvania Changes - Defense Costs | General Liability |
| IL0910 07-02 | Pennsylvania Notice | General Liability |
| IL0168 03-12 | Texas Changes - Duties | General Liability |
| IL0123 11-13 | Washington Changes - Defense Costs | General Liability |
| IL0146 08-10 | Washington Common Policy Conditions | General Liability |
| IL0198 09-08 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) | General Liability |
| 118457 02-15 | Crisis Response Coverage Extension Endorsement - Minnesota (Including Acts of Nature) | General Liability |
| PRG2023 05-14 | Service of Suit | General Liability |

RFP Response of Va. Motorsports
Park, LLC, et al. 21

02-12-23

Page 1 of 3

# Lexington Insurance Company
## FORMS SCHEDULE

**POLICY NO:** 41-LX-061736200-0
**INSURED:** PREFERRED MOTOR SPORTS RISK
PURCHASING GROUP, LLC

**EFFECTIVE DATE:** 01/25/2023
**AGENT:** SAFEHOLD SPECIAL RISK, INC

| COMMERCIAL GENERAL LIABILITY FORMS | |
|---|---|
| 113513 03-13 | Physical Abuse, Sexual Abuse or Molestation Exclusion Endorsement |
| 143307 09-21 | Epidemic Or Pandemic Exclusion Endorsement |
| 62898 07-12 | Radioactive Matter Exclusion |
| 64004 07-12 | ERISA Exclusion |
| 82540 07-12 | Asbestos and Silicosis Exclusion Endorsement |
| CG0001 04-13 | Commercial General Liability Coverage Form |
| CG2011 12-19 | Additional Insured - Managers Or Lessors Of Premises-1 |
| CG2026 12-19 | Additional Insured - Designated Person Or Organization |
| CG2106 05-14 | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability - With Limited Bodily Injury Exception |
| CG2135 10-01 | Exclusion - Coverage C - Medical Payments |
| CG2144 04-17 | Limitation Of Coverage To Designated Premises, Project Or Operation |
| CG2147 12-07 | Employment-Related Practices Exclusion |
| CG2196 03-05 | Silica Or Silica-Related Dust Exclusion |
| CG4010 12-19 | Exclusion - Cross Suits Liability |
| PRG142029 10/22 | GENERAL AGGREGATE LIMIT PER OPERATION DESIGNATED EVENT OR PREMISES |
| PRG 142031 10/22 | INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE |
| PRG142033 10/22 | Motorsports Errors and Omissions |
| PRG142034 10/22 | NON OWNED AIRCRAFT |
| PRG142036 10/22 | RACING ENDORSEMENT |
| PRG142037 10/22 | Damage to Property In Restricted Area at a Motor Racing Event - Drag Strips |
| PRG142045 11/22 | Personal and Advertising Injury - Wrongful Eviction - Motor Racing Events |
| PRG142095 01/23 | Amendment of Employee Definition (Temporary Employee) |
| PRG142096 01/23 | Exclusion Designated Activities |
| PRG142100 01/23 | Exclusion - Design Activities or Operations with Scheduled Exceptions |
| PRG142101 01/23 | Exclusion - Nuclear or Rocket Propelled Vehicles |
| PRG142192 01/23 | Exclusion - Return Road and Racing Surface |
| PRG142124 01/23 | Deluxe Commercial Liability Broadening Endorsement |
| PRG142138 01/23 | Unmanned Aircraft Exclusion with Limited Exception |
| PRG142114 01/23 | Event Reporting and Earned Premium |
| PRG142117 01/23 | Limited Coverage  Damage to Property in Restricted Area at a Motor Racing Event |
| CG2130 04-13 | Alaska Recording And Distribution Of Material Or Information In Violation Of Law Exclusion |
| CG2670 10-01 | Alaska Changes - Definition Of Metatag |

RFP Response of Va. Motorsports
Park, LLC, et al., 22

DEF_VMP_FRANKLIN000023

# LEXINGTON INSURANCE COMPANY
99 High Street, Boston, MA 02110
## FORMS SCHEDULE

POLICY NO: 41-LX-061736200-0 END: 001

ACCOUNT NUMBER:
NAMED INSURED AND MAILING ADDRESS

PREFERRED MOTOR SPORTS RISK PURCHASING
GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

AGENCY AND MAILING ADDRESS                    103418

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
CARROLLTON, GA 30117

POLICY PERIOD: FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

NOTE: IF NO ENTRY APPEARS ON THE FOLLOWING ENDORSEMENTS, INFORMATION REQUIRED TO COMPLETE THE FORM WILL BE SHOWN ON THE SUPPLEMENTAL FORM DECLARATION IMMEDIATELY FOLLOWING THE APPLICABLE ENDORSEMENT.

| COMMON POLICY PACKAGE | | APPLICABLE COVERAGE PARTS | |
|---|---|---|---|
| 96555 03-20 | Policyholder Disclosure Notice of Terrorism Insurance Coverage (Right to Purchase Coverage) | CyberEdge, General Liability | Modified |
| IL1201 11-85 | Policy Changes | General Liability | Added |
| IL1209 09-22 | Arizona Policy Changes | General Liability | Added |
| IL0140 09-08 | Connecticut Changes - Civil Union | General Liability | Added |
| IL1204 12-98 | Illinois Policy Changes | General Liability | Added |
| IL1203 04-06 | Louisiana Policy Changes | General Liability | Added |

| COMMERCIAL GENERAL LIABILITY FORMS | | | |
|---|---|---|---|
| PRG142035 10/22 | MOTORSPORTS PARTICIPANTS LIABILITY | | Modified |
| PRG142032 10/22 | MOTORSPORTS MEDICAL PAYMENTS PARTICIPANTS | | Modified |

02-27-23

**RFP Response of Va. Motorsports Park, LLC, et al. 23**

Page 1 of 1

DEF_VMP_FRANKLIN000024

# Lexington Insurance Company
## FORMS SCHEDULE

| POLICY NO: 41-LX-061736200-0 | EFFECTIVE DATE: 01/25/2023 |
|---|---|
| INSURED: PREFERRED MOTOR SPORTS RISK PURCHASING GROUP, LLC | AGENT: SAFEHOLD SPECIAL RISK, INC |

| COMMERCIAL GENERAL LIABILITY FORMS | |
|---|---|
| CG2697 03-06 | Alaska War Liability Exclusion |
| CG0142 07-11 | Arkansas Changes |
| CG3234 01-05 | California Changes |
| CG0118 12-04 | Louisiana Changes - Legal Action Against Us |
| CG0125 03-03 | Louisiana Changes - Insuring Agreement |
| CG0201 12-17 | Maryland Changes |
| CG2605 02-07 | Minnesota Changes |
| CG2681 12-04 | Minnesota Changes - Duties Condition |
| CG2620 10-93 | New Jersey Changes - Loss Information |
| CG0103 06-06 | Texas Changes |
| CG0179 07-10 | Virginia Changes |
| CG0181 05-08 | Washington Changes |
| 78689 07-03 | Fungus Exclusion |
| 56235 03-93 | Radioactive Matter Exclusion |
| 58332 08-07 | Total Lead Exclusion |
| 115924 10-13 | Indiana Amendatory Endorsement |

**RFP Response of Va. Motorsports Park, LLC, et al. 24**

02-12-23

Page 161 of 3

DEF_VMP_FRANKLIN000025

# LEXINGTON INSURANCE COMPANY
### 99 High Street, Boston, MA 02110
### INSTALLMENT PLAN

POLICY NO: 41-LX-061736200-0

**ACCOUNT NUMBER:**
**NAMED INSURED AND MAILING ADDRESS**

PREFERRED MOTOR SPORTS RISK PURCHASING
GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

**AGENCY AND MAILING ADDRESS**          103418

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
CARROLLTON, GA 30117

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS
SHOWN ABOVE.

PREMIUM AMOUNT:

DUE DATE                    PREMIUM DUE
01/25/2023

RFP Response of Va. Motorsports
Park, LLC, et al. 25

Page 1 of 1

02-12-23

DEF_VMP_FRANKLIN000028

## ADDENDUM TO THE DECLARATIONS

By signing below, the President and the Secretary of the Insurer agree on behalf of the Insurer to all the terms of this Policy.



Lou Levinson
PRESIDENT

Tanya Kent
SECRETARY

This policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either below or on the Declarations page of the policy.

Thomas McGrath
AUTHORIZED REPRESENTATIVE

**RFP Response of Va. Motorsports Park, LLC, et al. 26**

PRG 4020 (10-2020)

DEF_VMP_FRANKLIN000027

**ENDORSEMENT**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 41-LX-061736200-0 000

### TERRORISM EXCLUSION – CERTIFIED AND NON-CERTIFIED ACTS ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**I.   Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **certified act of terrorism** as defined in the Terrorism Risk Insurance Act of 2002, as amended (hereinafter, "TRIA") regardless of any other cause or event contributing concurrently or in any sequence with a **certified act of terrorism.**

**Certified act of terrorism** means any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

**A.**   to be an act of terrorism;

**B.**   to be a violent act or an act that is dangerous to:

   **1.**   human life;

   **2.**   property; or

   **3.**   infrastructure;

**C.**   to have resulted in damage within the United States, or outside of the United States in the case of:

   **1.**   an air carrier or vessel [described in TRIA]; or

   **2.**   the premises of a United States mission; and

**D.**   to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**II.   Non-Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **non-certified act of terrorism** regardless of any other cause or event contributing concurrently or in any sequence with a non-certified act of terrorism.

**A.**   **Non-certified act of terrorism** means any act that is not a **certified act of terrorism** as defined herein and:

   **1.**   involves the use of force or violence against person or property; or

# RFP Response of Va. Motorsports Park, LLC, et al. 27

118950 (2/20)                    ©2020 American International Group, Inc.                    Page 1 of 3
                                 All Rights Reserved.

DEF_VMP_FRANKLIN000028

    **2.** Is dangerous to human life or property; or

    **3.** Interferes with or disrupts an electronic or communication system; and

    **4.** Is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

        **a.** a government;

        **b.** the civilian population of a country, state or community; or

        **c.** to disrupt the economy of a country, state or community.

**B.** However, the exclusion provided under Subsection II.A. only applies when one or more of the following are attributed to an incident of a **non-certified act of terrorism**.

    **1.** The **non-certified act of terrorism** involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of:

        **a.** Any nuclear reaction;

        **b.** Radioactive materials or nuclear materials in any form and from any source;

        **c.** Radionuclides;

        **d.** Radiation emitted from any radioactive source whether natural or manmade; and/or

        **e.** Electromagnetic pulses; or

    **2.** The **non-certified act of terrorism** involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of pathogenic or poisonous chemical or biological materials, whether natural, manmade, living or dead; or

    **3.** The total insured industry-wide losses exceed $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Company will include all insured industry-wide loss or damage sustained by all persons and entities affected by the **non-certified act of terrorism**. For the purpose of this provision, insured industry-wide loss or damage means loss or damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

    Multiple incidents of **non-certified acts of terrorism** which occur within a 72-hour period and objectively appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in this Subsection II.B.3. are met.

    **4.** With respect to commercial liability policies, fifty or more persons sustain death or serious physical injury. For purposes of this provision, serious physical injury means:

        **a.** Physical injury that involves substantial risk of death; or

        **b.** Protracted and obvious physical disfigurement; or

        **c.** Protracted loss of or impairment of the function of a bodily member or organ.

# RFP Response of Va. Motorsports Park, LLC, et al. 28

©2020 American International Group, Inc.
All Rights Reserved.

DEF_VMP_FRANKLIN000029

III. With respect to commercial property policies:

A. If a **certified act of terrorism** or **non-certified act of terrorism** (hereinafter, collectively an **act of terrorism**) results in an ensuing fire, this Policy covers such loss or damage caused by such fire following, subject to the Policy's terms and conditions, but only if the covered property insured hereunder is located in a state of the United States, the District of Columbia, Puerto Rico or a territory or possession of the United States that, pursuant to an applicable standard fire policy statute, regulation or other law, prohibits the exclusion of fire following an **act of terrorism**. Such coverage for fire following an **act of terrorism** applies only to direct physical loss or damage to covered property insured hereunder, and to no other coverage provided by the Policy.

B. Notwithstanding Subsection III.A. above, to the extent not prohibited by the law of the jurisdiction to which this Policy is subject, this Policy does not cover fire following an **act of terrorism** that involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of any nuclear reaction; radioactive materials or **nuclear materials** in any form and from any source; radionuclides; radiation emitted from any radioactive source whether natural or manmade; electromagnetic pulses; and/or pathogenic or poisonous chemical or **biological materials**, whether natural, manmade, living or dead.

C. Notwithstanding any other valuation provision of this Policy to the contrary, any covered property insured hereunder that sustains loss or damage due to fire following an **act of terrorism**, covered pursuant to Subsection III.A. above, shall be valued at Actual Cash Value at the time and place of the loss.

IV. **Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Policy, such as losses excluded by a nuclear exclusion, pollution exclusion or war exclusion.

V. **Definitions:** The following definitions apply to this endorsement:

A. **Nuclear materials** means **source material**, **special nuclear material** or **by-product material**. **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

B. **Biological materials** include all microorganisms, viruses, rickettsia, prions, nucleic acids, toxins, toxin-producing agents, and poisons produced by biological organisms.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

# RFP Response of Va. Motorsports Park, LLC, et al. 29

## ENDORSEMENT
**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Policy No: 41-LX-061736200-0

Effective 12:01 a.m.  01/25/2023

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

# RFP Response of Va. Motorsports Park, LLC, et al. 30

89644 6-13

DEF_VMP_FRANKLIN000031

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act:* The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% BEGINNING ON JANUARY 1, 2020 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP. THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

| | |
|---|---|
| | I hereby elect to purchase terrorism coverage for a prospective premium of $__ . |
| X | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____                    _____
Policyholder/Applicant's Printed Name                    Date

# RFP Response of Va. Motorsports Park, LLC, et al. 31

DEF_VMP_FRANKLIN000032

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

# RFP Response of Va. Motorsports Park, LLC, et al. 32

IL 00 03 09 08                    © ISO Properties, Inc., 2007                    Page 1 of 1    □

DEF_VMP_FRANKLIN000033

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# RFP Response of Va. Motorsports Park, LLC, et al. 33

DEF_VMP_FRANKLIN000034

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The Insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:
      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or
      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "Hazardous properties" includes radioactive, toxic or explosive properties.
   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

## RFP Response of Va. Motorsports Park, LLC, et al. 34

© ISO Properties, Inc., 2007

DEF_VMP_FRANKLIN000035

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# RFP Response of Va. Motorsports Park, LLC, et al. 35

IL 02 58 01 20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARIZONA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. The following is added to the **Cancellation** Common Policy Condition (and applies except in situations where **B.**, below, applies):

**7. Cancellation Of Policies In Effect For 60 Days Or More**

If this Policy has been in effect for 60 days or more, or if this Policy is a renewal of a policy we issued, we may cancel this Policy only for one or more of the following reasons:

a. Nonpayment of premium;

b. Your conviction of a crime arising out of acts increasing the hazard insured against;

c. Acts or omissions by you or your representative constituting fraud or material misrepresentation in the procurement of this Policy, in continuing this Policy or in presenting a claim under this Policy;

d. Substantial change in the risk assumed, except to the extent that we should have reasonably foreseen the change or contemplated the risk in writing the contract;

e. Substantial breach of contractual duties or conditions;

f. Loss of reinsurance applicable to the risk insured against resulting from termination of treaty or facultative reinsurance initiated by our reinsurer or reinsurers;

g. Determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state or would jeopardize our solvency; or

h. Acts or omissions by you or your representative which materially increase the hazard insured against.

If we cancel this Policy based on one or more of the above reasons, we will mail by certified mail or by first-class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service to the first Named Insured, and mail to the agent, if any, written notice of cancellation stating the reason(s) for cancellation. We will mail this notice to the last mailing addresses known to us, at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 45 days before the effective date of cancellation if we cancel for any of the other reasons.

# RFP Response of Va. Motorsports Park, LLC, et al. 36

IL 02 58 01 20             © Insurance Services Office, Inc., 2019              Page 1 of 3
                                                                    DEF_VMP_FRANKLIN000037

B. If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item A. above) with respect to cancellation of such coverage:

If this Policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium;

b. Your conviction of a crime arising out of acts increasing the hazard insured against;

c. Acts or omissions by you or your representative constituting fraud or material misrepresentation in obtaining the Policy, continuing the Policy or presenting a claim under the Policy;

d. Discovery of grossly negligent acts or omissions by you substantially increasing any of the hazards insured against;

e. Substantial change in the risk assumed by us, since the Policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

f. A determination by the Director of Insurance that the continuation of the Policy would place us in violation of the insurance laws of this state; or

g. Your failure to take reasonable steps to eliminate or reduce any conditions in or on the insured premises which contributed to a loss in the past or will increase the probability of future losses.

If we cancel this Policy based on one or more of these reasons, we will mail written notice of cancellation, stating the reason(s) for cancellation, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any of the other reasons.

C. The following is added and supersedes any provision to the contrary (and applies except in situations where D., below, applies):

**Nonrenewal**

1. If we elect not to renew this Policy, we will mail by certified mail or by first-class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service to the first Named Insured, and mail to the agent, if any, written notice of nonrenewal. We will mail this notice to the last mailing addresses known to us at least 45 days prior to the expiration of this Policy.

2. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. If either one of the following occurs, we are not required to provide written notice of nonrenewal:

a. We or a company within the same insurance group has offered to issue a renewal policy; or

b. You have obtained replacement coverage or agreed in writing to do so.

4. If written notice of nonrenewal is mailed less than 45 days prior to expiration of this Policy, and neither 3.a. nor 3.b. applies, the coverage shall remain in effect until 45 days after the notice is mailed. Earned premium for any period of coverage that extends beyond the expiration date of this Policy shall be considered pro rata based upon the previous year's rate.

D. If the Commercial Property Coverage Part, Capital Assets Program (Output Policy) Coverage Part or the Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form provides coverage for:

1. Real property which is used predominantly for residential purposes and consists of one through four dwelling units; and/or

2. Personal property (except business or farm personal property) of a person residing in such real property;

the following provisions apply (instead of those provided in Item C. above) with respect to nonrenewal of such coverage:

1. If we elect not to renew, we will mail written notice of nonrenewal, stating the reason(s) for nonrenewal, to the first Named Insured. We will mail this notice to the last mailing address known to us, at least 30 days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

**RFP Response of Va. Motorsports Park, LLC, et al. 37**

© Insurance Services Office, Inc., 2019

IL 02 58 01 20
DEF_VMP_FRANKLIN000038

**2.** If either one of the following occurs, we are not required to provide notice of nonrenewal:

    **a.** You have agreed to nonrenewal; or

    **b.** You have accepted replacement coverage.

**3.** If our nonrenewal is based on the condition of the premises, you will be given 30 days' notice to remedy the identified conditions. If the identified conditions are remedied, coverage will be renewed. If the identified conditions are not remedied to our satisfaction, you will be given an additional 30 days, upon payment of premium, to correct the defective conditions.

**E.** The following condition is added:

**Renewal**

**1.** If we elect to renew this Policy and the renewal is subject to any of the following:

    **a.** Increase in premium;

    **b.** Change in deductible;

    **c.** Reduction in limits of insurance; or

    **d.** Substantial reduction in coverage;

we will mail or deliver written notice of the change(s) to the first Named Insured, at the last mailing address known to us, at least 30 days before the anniversary or expiration date of the Policy.

**2.** If renewal is subject to any condition described in **1.a.** through **1.d.** above, and we fail to provide notice 30 days before the anniversary or expiration date of this Policy, the following procedures apply:

    **a.** The present policy will remain in effect until the earlier of the following:

        **(1)** 30 days after the date of mailing or delivery of the notice; or

        **(2)** The effective date of replacement coverage obtained by the first Named Insured.

    **b.** If the first Named Insured elects not to renew, any earned premium for the period of extension of the terminated policy will be calculated pro rata at the lower of the following rates:

        **(1)** The rates applicable to the terminated policy; or

        **(2)** The rates presently in effect.

    **c.** If the first Named Insured accepts the renewal, the premium increase, if any, and other changes are effective the day following this Policy's anniversary or expiration date.

# RFP Response of Va. Motorsports Park, LLC, et al. 38

IL 01 25 11 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COLORADO CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Colorado law.

**B.** Under the Commercial Automobile Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person related to:

**1.** The Individual Named Insured by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of such Named Insured's household, including a ward or foster child;

**2.** The individual named in the Schedule by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Colorado law, who is a resident of your household, including a ward or foster child.

# RFP Response of Va. Motorsports Park, LLC, et al. 39

IL 01 25 11 13                © Insurance Services Office, Inc., 2013                **Page 1 of 1**

DEF_VMP_FRANKLIN000040

IL 01 49 01 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HAWAII CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or partner to a civil union recognized under Hawaii law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following and supersedes any other provisions to the contrary:

"Family member" means a person:

**1.** Who is a resident of the Individual Named Insured's household and is either:

**a.** Related to such Named Insured by blood, adoption, marriage or civil union recognized under Hawaii law. This includes a ward or foster child; or

**b.** Registered with the Director of Health as a reciprocal beneficiary; or

**2.** Related to the individual named in the Schedule by blood, adoption, marriage or civil union recognized under Hawaii law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individuals endorsement is attached; or

**3.** Related to you by blood, adoption, marriage or civil union recognized under Hawaii law, who is a resident of your household, including a ward or foster child, if the Individual Named Insured endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Hawaii law, who is a resident of your household, including a ward or foster child.

# RFP Response of Va. Motorsports Park, LLC, et al. 40

IL 01 49 01 12          © Insurance Services Office, Inc., 2011          Page 1 of 1    □

DEF_VMP_FRANKLIN000041

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

# RFP Response of Va. Motorsports Park, LLC, et al. 41

IL 01 47 09 11                © Insurance Services Office, Inc., 2011                **Page 1 of 1**

DEF_VMP_FRANKLIN000042

IL 01 62 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section II under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section III under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section A. Coverage under the Legal Liability Coverage Form; and

5. Coverage C – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

Paragraph B. also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

# RFP Response of Va. Motorsports Park, LLC, et al. 42

IL 01 62 10 13

© Insurance Services Office, Inc., 2013

Page 1 of 1

DEF_VMP_FRANKLIN000043

IL 01 58 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INDIANA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROPERTY – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM*
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

\* Under the **Mortgageholders Errors And Omissions Coverage Form,** the following condition applies only to Coverage **C** and Coverage **D.**

The following condition is added:

Notice given by or on behalf of the insured to any of our authorized agents in Indiana, with particulars sufficient to identify the insured, shall be considered to be notice to us.

# RFP Response of Va. Motorsports Park, LLC, et al. 43

IL 02 45 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MINNESOTA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

B. The following provisions apply except when Paragraph **C.** of this endorsement applies:

The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy, subject to the provisions of Paragraph **B.3.** below, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

3. **Policies In Effect**

   a. **Less Than 90 Days**

      If this policy is a new policy and has been in effect for fewer than 90 days, we may cancel for any reason by giving notice at least:

      (1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

      (2) 30 days before the effective date of cancellation, if we cancel for any other reason.

   b. **90 Days Or More**

      If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

      (1) Nonpayment of premium;

      (2) Misrepresentation or fraud made by you or with your knowledge in obtaining the policy or in pursuing a claim under the policy;

      (3) An act or omission by you that substantially increases or changes the risk insured;

      (4) Refusal by you to eliminate known conditions that increase the potential for loss after notification by us that the condition must be removed;

      (5) Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**RFP Response of Va. Motorsports Park, LLC, et al. 44**

IL 02 45 09 08                    © ISO Properties, Inc., 2007                    Page 1 of 3    □

(6) Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured. Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

(7) A determination by the commissioner that the continuation of the policy could place us in violation of the Minnesota insurance laws; or

(8) Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. This provision for cancellation for failure to pay dues shall not be applicable to persons who are retired at 62 years of age or older or who are disabled according to social security standards.

Under this Item B.3.b., we will give notice at least:

(1) 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

(2) 60 days before the effective date, if we cancel for a reason described in Paragraphs B.3.b.(2) through (8) above. The notice of cancellation will state the reason for cancellation.

4. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

5. Proof of mailing of any notice shall be sufficient proof of notice.

C. The following applies with respect to coverage provided under the following:

**FARM COVERAGE PART**

1. **Policies In Effect 60 Days Or More**

   a. If this Coverage Part covers buildings used for residential purposes and has been:

   (1) In effect for at least 60 days, or

   (2) Renewed by us,

   Paragraphs **A.2.** and **A.6.** of the **Cancellation** Common Policy Condition do not apply, and the following is added to the **Cancellation** Common Policy Condition:

   b. We may not cancel this policy, except for:

   (1) Nonpayment of premium;

   (2) Misrepresentation or fraud made by you or with your knowledge:

      (a) In obtaining this policy; or

      (b) In connection with a claim under this policy;

   (3) An act or omission by you that materially increases the risk we originally accepted; or

   (4) A physical change in the Covered Property which:

      (a) Is not corrected or restored within a reasonable time after it occurs; and

      (b) Results in the property becoming uninsurable.

   c. We may cancel this policy by giving the first Named Insured written notice of cancellation at least:

   (1) 20 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for a reason described in Paragraphs **C.1.b.(2)** through **(4)**.

   Such notice will be mailed or delivered to the first Named Insured and will contain the reason for cancellation. Proof of mailing of any notice shall be sufficient proof of notice.

# RFP Response of Va. Motorsports Park, LLC, et al. 45

© ISO Properties, Inc., 2007

IL 02 45 09 08    □
DEF_VMP_FRANKLIN000046

**2. Policies In Effect Less Than 60 Days**

When this Coverage Part covers buildings used for residential purposes and is a new policy which has been in effect fewer than 60 days, cancellation is subject to the terms of the Cancellation Common Policy Condition except for Paragraphs **A.2.** and **A.6.**, and is not subject to Paragraph **B.** or Paragraph **C.1.** of this endorsement. Under this Item, **C.2.**, Paragraphs **A.2.** and **A.6.** of the **Cancellation Common Policy Condition** are replaced by the following:

We may cancel this policy by giving the first Named Insured written notice of cancellation at least 20 days before the effective date of cancellation. Such notice will be mailed or delivered to the first Named Insured. Proof of mailing of any notice shall be sufficient proof of notice.

If we cancel this policy for underwriting considerations, we will inform you of the source from which the information was received.

**D.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we may do so by giving the first Named Insured and any agent written notice of our intent not to renew at least 60 days before the expiration date of this policy. Such notice will be delivered or mailed by first class mail to their last mailing addresses known to us.

Proof of mailing of any notice shall be sufficient proof of notice.

We need not mail or deliver this notice if you have:

**1.** Insured elsewhere;

**2.** Accepted replacement coverage; or

**3.** Agreed not to renew this policy.

# RFP Response of Va. Motorsports Park, LLC, et al. 46

IL 01 41 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under New Jersey law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under New Jersey law, who is a resident of your household, including a ward or foster child.

# RFP Response of Va. Motorsports Park, LLC, et al. 47

IL 01 41 09 08

© Insurance Services Office, Inc., 2008

IL 01 79 10 02

# OKLAHOMA NOTICE

The following statement is added to the policy:

**WARNING:**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy, containing any false, incomplete or misleading information, is guilty of a felony.

RFP Response of Va. Motorsports Park, LLC, et al. 48

IL 01 79 10 02          © ISO Properties, Inc., 2002          Page 1 of 1

IL 01 20 05 11

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

A. The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-Related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

2. Section II – Liability Coverage in Paragraph **A. Coverage** under the Business Auto, Garage and Motor Carrier Coverage Forms;

3. Section **A** – Coverage under the Legal Liability Coverage Form; and

4. Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

B. If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

# RFP Response of Va. Motorsports Park, LLC, et al. 49

DEF_VMP_FRANKLIN000050

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

| Instruction to Policy Writers |
|---|
| Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania. |

# RFP Response of Va. Motorsports Park, LLC, et al. 50

IL 09 10 07 02

© ISO Properties, Inc., 2001

DEF_VMP_FRANKLIN000051

IL 01 68 03 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition:

We will notify the first Named Insured in writing of:

1. An initial offer to settle a claim made or "suit" brought against any insured ("insured") under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured ("insured") under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

**RFP Response of Va. Motorsports Park, LLC, et al. 51**

IL 01 68 03 12                © Insurance Services Office, Inc., 2011                Page 1 of 1

DEF_VMP_FRANKLIN000052

IL 01 23 11 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WASHINGTON CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph B. are added to all Insuring Agreements that set forth a duty to defend under:

1. Section I of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

2. Section II under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

3. Section III under the Auto Dealers and Motor Carrier Coverage Forms;

4. Section A. Coverage under the Legal Liability Coverage Form; and

5. Coverage C – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph B. also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

# RFP Response of Va. Motorsports Park, LLC, et al. 52

© Insurance Services Office, Inc., 2013

IL 01 46 08 10

# WASHINGTON COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

The conditions in this endorsement replace any similar conditions in the policy that are less favorable to the insured.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by notifying us or the insurance producer in one of the following ways:

   a. Written notice by mail, fax or e-mail;

   b. Surrender of the policy or binder; or

   c. Verbal notice.

   Upon receipt of such notice, we will cancel this policy or any binder issued as evidence of coverage, effective on the later of the following:

   a. The date on which notice is received or the policy or binder is surrendered; or

   b. The date of cancellation requested by the first Named Insured.

2. We may cancel this policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for the cancellation, to the last mailing address known to us, at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 45 days before the effective date of cancellation if we cancel for any other reason;

   except as provided in Paragraphs 3. and 4. below.

3. We may cancel the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, if made a part of this policy, by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least five days before the effective date of cancellation for any structure where two or more of the following conditions exist:

   a. Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days, unless the structure is maintained for seasonal occupancy or is under construction or repair;

   b. Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

   c. Because of its physical condition, the structure is in danger of collapse;

   d. Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law;

   e. Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;

   f. Without reasonable explanation, heat, water, sewer and electricity are not furnished for the structure for 60 consecutive days; or

   g. The structure is not maintained in substantial compliance with fire, safety and building codes.

# RFP Response of Va. Motorsports Park, LLC, et al. 53

4. If:

   a. You are an individual;

   b. A covered auto you own is of the "private passenger type"; and

   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

   we may cancel the Commercial Automobile Coverage Part by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation, including the actual reason for cancellation, to the last mailing address known to us:

   a. At least 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. At least 10 days before the effective date of cancellation for any other reason if the policy is in effect less than 30 days; or

   c. At least 20 days before the effective date of cancellation for other than nonpayment if the policy is in effect 30 days or more; or

   d. At least 20 days before the effective date of cancellation if the policy is in effect for 60 days or more or is a renewal or continuation policy, and the reason for cancellation is that your driver's license or that of any driver who customarily uses a covered "auto" has been suspended or revoked during policy period.

5. We will also mail or deliver to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of cancellation, prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph A.3. above, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in Paragraph A.3. above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

6. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund unless the following applies:

   a. For Division Two — Equipment Breakdown, if the first Named Insured cancels, the refund will be at least 75% of the pro rata refund.

   b. If:

      (1) You are an individual;

      (2) A covered auto you own is of the "private passenger type";

      (3) The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards; and

      (4) The first Named Insured cancels;

      the refund will be not less than 90% of any unearned portion not exceeding $100, plus 95% of any unearned portion over $100 but not exceeding $500, and not less than 97% of any unearned portion in excess of $500.

   The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. Changes

   The policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. Examination Of Your Books And Records

   We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. Inspection And Surveys

   1. We have the right to:

      a. Make inspections and surveys at any time;

      b. Give you reports on the conditions we find; and

      c. Recommend changes.

# RFP Response of Va. Motorsports Park, LLC, et al. 54

2. We are not obligated to make any inspections, surveys, reports or recommendations, and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**G. Nonrenewal**

1. We may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured and the first Named Insured's agent or broker, at their last mailing addresses known to us. We will also mail to any mortgage holder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

   a. Expiration of the policy; or

   b. Anniversary date of this policy if this policy has been written for a term of more than one year.

   Otherwise, we will renew this policy unless:

   a. The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's insurance agent or broker, at least 20 days before the expiration date;

   b. Other coverage acceptable to the insured has been procured prior to the expiration date of the policy; or

   c. The policy clearly states that it is not renewable and is for a specific line, subclassification, or type of coverage that is not offered on a renewable basis.

2. If:

   a. You are an individual;

   b. A covered auto you own is of the "private passenger type"; and

   c. The policy does not cover garage, automobile sales agency, repair shop, service station or public parking place operations hazards;

# RFP Response of Va. Motorsports Park, LLC, et al. 55

the following applies to nonrenewal of the Commercial Automobile Coverage Part in place of **G.1.**:

a. We may elect not to renew or continue this policy by mailing or delivering to you and your agent or broker written notice at least 20 days before the end of the policy period, including the actual reason for nonrenewal. If the policy period is more than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

b. We will not refuse to renew Liability Coverage or Collision Coverage solely because an "insured" has submitted claims under Comprehensive Coverage or Towing And Labor Coverage.

c. If we fail to mail or deliver proper notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

# RFP Response of Va. Motorsports Park, LLC, et al. 56

© Insurance Services Office, Inc., 2010

IL 01 46 08 10     ☐

DEF_VMP_FRANKLIN000057

IL 01 98 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

# RFP Response of Va. Motorsports Park, LLC, et al. 57

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

# RFP Response of Va. Motorsports Park, LLC, et al. 58



## CYBER*EDGE* COVERAGE FORM®

Throughout this Coverage Part, the words "you" and "your" refer to the "Named Entity" or the Named Insured shown in Item 1 of the Declarations of this Coverage Part and any other person(s) or organization(s) qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the "Insurer".

Other words and phrases that appear in quotations have special meaning. Refer to DEFINITIONS.

The terms and conditions of the Common Policy Conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this Coverage Part, unless specifically stated otherwise in an endorsement(s) attached hereto.

In consideration of the premium charged, and in reliance upon the statements in the "Application" made a part hereof, it is hereby understood and agreed that this Coverage Part shall provide Cyber Insurance coverage pursuant to the terms and conditions contained in this Coverage Part.

NOTICE:    THIS COVERAGE PART CONTAINS MULTIPLE COVERAGES. CERTAIN COVERAGES ARE LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER AS REQUIRED BY THE TERMS OF THE COVERAGE PART. DEFENSE COSTS SHALL REDUCE THE APPLICABLE LIMITS OF LIABILITY AND ARE SUBJECT TO APPLICABLE RETENTIONS. PLEASE READ THIS COVERAGE PART CAREFULLY AND REVIEW IT WITH YOUR INSURANCE AGENT OR BROKER.

## A. INSURING AGREEMENTS

Subject to all terms, conditions and limitations of this Coverage Part, all coverage granted for "Loss" under the following Insuring Agreements is provided as follows:

### 1. Security and Privacy Insuring Agreement

Solely with respect to "Claims" first made against an "Insured" during the "Policy Period" or the "Extended Reporting Period" (if applicable) and reported to us pursuant to the terms of this Coverage Part, we shall pay on an "Insured's" behalf all "Loss" in excess of the applicable Retention that such "Insured" is legally obligated to pay resulting from a "Claim" alleging a "Security Failure" or a "Privacy Event".

### 2. Event Management Insuring Agreement

Solely with respect to a "Security Failure" or "Privacy Event" first discovered during the "Policy Period" and reported to us pursuant to the terms of this Coverage Part, we shall pay all "Loss", in excess of the applicable Retention, that an "Insured" incurs solely as a result of an alleged "Security Failure" or "Privacy Event" that has actually occurred or is reasonably believed by such "Insured" and us to have occurred.

### 3. Network Interruption Insuring Agreement

Solely with respect to a "Security Failure" first occurring during the "Policy Period" and reported to us pursuant to the terms of this Coverage Part, we shall pay all "Loss" in excess of the "Remaining Retention" that an "Insured" incurs after the "Waiting Hours Period" and solely as a result of a "Security Failure".

| | | |
|---|---|---|
| 123020 (6-19) | ©AIG, Inc., <br> All rights reserved. | Page 1 of 20 |

**RFP Response of Va. Motorsports Park, LLC, et al. 59**

DEF_VMP_FRANKLIN000060

4. **Cyber Extortion Insuring Agreement**

Solely with respect to an "Extortion Threat" first occurring during the "Policy Period" and reported to us pursuant to the terms of this Coverage Part, we shall pay all "Loss" in excess of the applicable Retention that an "Insured" incurs as a result of an "Extortion Threat".

## B. DEFINITIONS

1. "Application" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other statements, information, representations of any "Insured" or documents submitted by any "Insured" in connection with the underwriting of this Coverage Part or the underwriting of any other policy providing the same or similar coverage as this Coverage Part issued by us, or any of our affiliates.

2. "Bodily Injury" means physical injury, sickness or disease sustained by a person, and, solely if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or death at any time.

3. "Claim" means:

   a. a written demand for money, services, non-monetary relief or injunctive relief;

   b. a written request for mediation or arbitration, or to toll or waive an applicable statute of limitations;

   c. a "Suit";

   d. a "Regulatory Action"; or

   e. a "PCI-DSS Assessment".

4. "Company" means the "Named Entity" and any "Subsidiary" thereof.

5. "Computer System" means any computer hardware, software or any components thereof, including wireless and mobile equipment and other devices enabled to electronically send and/or receive information, that are linked together through a network of two or more devices accessible through the Internet, internal network or connected with data storage or other peripheral devices and are under ownership, operation or control of, or leased by, a "Company".

   a. For the *Security and Privacy Insuring Agreement*, *Event Management Insuring Agreement* and *Cyber Extortion Insuring Agreement*, "Computer System" also means "cloud computing" or other hosted computer resources operated by a third party service provider for the use of a "Company" as provided in a written contract between such third party and a "Company".

   b. For the *Network Interruption Insuring Agreement*, "Computer System" also means computer hardware, software or any components thereof that are under the ownership, operation or control of an "Outsource Provider".

6. "Confidential Information" means any of the following in a "Company's" or "Information Holder's" care, custody or control or for which a "Company" or "Information Holder" is legally responsible:

   a. information relating to an identified or identifiable natural person including, without limitation, information from which an individual may be uniquely and reliably identified or contacted; or

   b. any third party's information (including any third party's trade secrets) that is not available to the general public.

7. "Continuity Date" means the date set forth in Item 7 of the Declarations.

| 123020 (6-19) | |
©AIG, Inc.,
All rights reserved.

RFP Response of Va. Motorsports
Park, LLC, et al. 60

DEF_VMP_FRANKLIN000061

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

# RFP Response of Va. Motorsports Park, LLC, et al. 91

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**RFP Response of Va. Motorsports Park, LLC, et al. 92**

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

# RFP Response of Va. Motorsports Park, LLC, et al. 93

CG 00 01 04 13                    © Insurance Services Office, Inc., 2012                    **Page 5 of 16**

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

# RFP Response of Va. Motorsports Park, LLC, et al. 94

© Insurance Services Office, Inc., 2012          CG 00 01 04 13
DEF_VMP_FRANKLIN000095

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

# RFP Response of Va. Motorsports Park, LLC, et al. 95

**COVERAGE C – MEDICAL PAYMENTS**

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

         (a) The accident takes place in the "coverage territory" and during the policy period;

         (b) The expenses are incurred and reported to us within one year of the date of the accident; and

         (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

# RFP Response of Va. Motorsports Park, LLC, et al. 96

DEF_VMP_FRANKLIN000097

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

# RFP Response of Va. Motorsports Park, LLC, et al. 97

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (If you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

# RFP Response of Va. Motorsports Park, LLC, et al. 98

© Insurance Services Office, Inc., 2012          CG 00 01 04 13
DEF_VMP_FRANKLIN000099

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**RFP Response of Va. Motorsports Park, LLC, et al. 99**

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

RFP Response of Va. Motorsports Park, LLC, et al. 100

© Insurance Services Office, Inc., 2012   CG 00 01 04 13

DEF_VMP_FRANKLIN000101

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above;

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

## RFP Response of Va. Motorsports Park, LLC, et al. 101

CG 00 01 04 13

© Insurance Services Office, Inc., 2012

DEF_VMP_FRANKLIN000102

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

# RFP Response of Va. Motorsports Park, LLC, et al. 102

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data

RFP Response of Va. Motorsports Park, LLC, et al. 103

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

# RFP Response of Va. Motorsports Park, LLC, et al. 104

© Insurance Services Office, Inc., 2012    CG 00 01 04 13
DEF_VMP_FRANKLIN000105

COMMERCIAL GENERAL LIABILITY
CG 00 33 04 13

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b. This insurance applies to "injury" only if:

   (1) The "injury" occurs during the policy period in the "coverage territory"; and

   (2) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

d. "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

   (1) Reports all, or any part, of the "injury" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "injury"; or

   (3) Becomes aware by any other means that "injury" has occurred or has begun to occur.

### 2. Exclusions

This insurance does not apply to:

a. **Expected Or Intended Injury**

   "Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Workers' Compensation And Similar Laws**

   Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

## RFP Response of Va. Motorsports Park, LLC, et al. 105

c. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

d. **Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

e. **Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

f. **Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

g. **War**

"Injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

5. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

7. Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

# RFP Response of Va. Motorsports Park, LLC, et al. 106

© Insurance Services Office, Inc., 2012

CG 00 33 04 13

DEF_VMP_FRANKLIN000107

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (a) above; or

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (a) or (b) above.

(2) "Property damage" to property:

(a) Owned or occupied by; or

(b) Rented or loaned;

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

b. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

b. Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

3. Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

SECTION IV – LIQUOR LIABILITY CONDITIONS

1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**RFP Response of Va. Motorsports Park, LLC, et al. 107**

**2. Duties In The Event Of Injury, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "injury" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any "injury".

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

b. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

# RFP Response of Va. Motorsports Park, LLC, et al. 108

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph a. above; or

c. All other parts of the world if the "injury" arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph a. above; or

(2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

3. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

4. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

5. "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

6. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

7. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

9. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

## RFP Response of Va. Motorsports Park, LLC, et al. 109

**10.** "Your product":

    **a.** Means:

      **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

        **(c)** A person or organization whose business or assets you have acquired; and

      **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

# RFP Response of Va. Motorsports Park, LLC, et al. 110

© Insurance Services Office, Inc., 2012
CG 00 33 04 13
DEF_VMP_FRANKLIN000111

POLICY NUMBER:  41-LX-061736200-0

**COMMERCIAL GENERAL LIABILITY**
CG 20 11 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Designation Of Premises (Part Leased To You): |
|---|
| Name Of Person(s) Or Organization(s) (Additional Insured): |
| Additional Premium: |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by you or those acting on your behalf in connection with the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

# RFP Response of Va. Motorsports Park, LLC, et al. 111

CG 20 11 12 19

© Insurance Services Office, Inc., 2018

Page 1 of 1
DEF_VMP_FRANKLIN000112

POLICY NUMBER: 41-LX-061736200-0

**COMMERCIAL GENERAL LIABILITY**
CG 20 26 04 13

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| ANY PERSON OR ORGANIZATION SPONSORING YOUR ACTIVITIES OR EVENTS |
| ANY PERSON OR ORGANIZATION SPONSORING RACING VEHICLES OR SPONSORING RACING VEHICLE DRIVERS |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

# RFP Response of Va. Motorsports Park, LLC, et al. 112

CG 20 26 04 13

© Insurance Services Office, Inc., 2012

Page 1 of 1

DEF_VMP_FRANKLIN000113

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

# RFP Response of Va. Motorsports Park, LLC, et al. 113

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I -- Coverage A -- Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

a. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

b. Testing for a communicable disease;

c. Failure to prevent the spread of the disease; or

d. Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

a. Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

b. Testing for a communicable disease;

c. Failure to prevent the spread of the disease; or

d. Failure to report the disease to authorities.

# RFP Response of Va. Motorsports Park, LLC, et al. 114

POLICY NUMBER: 41-LX-061736200-0

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description And Location Of Premises Or Classification: |
| --- |
| Excluded for All Locations and All Class Codes |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

2. The following is added to Section I – Supplementary Payments:

   **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

**RFP Response of Va. Motorsports Park, LLC, et al. 115**

CG 21 35 10 01

© ISO Properties, Inc., 2000

Page 1 of 1    □

DEF_VMP_FRANKLIN000116

POLICY NUMBER:41-LX-061736200-0

COMMERCIAL GENERAL LIABILITY
CG 21 44 04 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises:** |
| **Project Or Operation:** Motorsports racing events and activities and operations necessary or incidental to the motorsports racing events and activities |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b.** under Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

   **(1)** The "bodily injury" or "property damage":

   **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

   **(b)** Arises out of the project or operation shown in the Schedule;

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section **II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2. Paragraph **1.b.** under Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

   **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

   **(1)** The offense arises out of your business:

   **(a)** Performed on the premises shown in the Schedule; or

# RFP Response of Va. Motorsports Park, LLC, et al. 116

CG 21 44 04 17

© Insurance Services Office, Inc., 2016

Page 1 of 3

DEF_VMP_FRANKLIN000117

(b) In connection with the project or operation shown in the Schedule; and

(2) The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

(1) False arrest, detention or imprisonment; or

(2) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

3. Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

a. We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

(1) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

(2) Arises out of the project or operation shown in the Schedule;

provided that:

(a) The accident takes place during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

B. If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02**, the provisions under this Paragraph **B.** apply:

1. Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

b. This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

(1) The "bodily injury" or "property damage":

(a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

(b) Arises out of the project or operation shown in the Schedule;

(2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

(3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V – Extended Reporting Periods.**

2. Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

b. This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

(1) The offense arises out of your business:

(a) Performed on the premises shown in the Schedule; or

(b) In connection with the project or operation shown in the Schedule;

(2) The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

# RFP Response of Va. Motorsports Park, LLC, et al. 117

(3) A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph 1.c. of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section V — Extended Reporting Periods.

However, with respect to Paragraph 1.b.(1)(a) of this Insuring Agreement, if the "personal and advertising injury" is caused by:

(1) False arrest, detention or imprisonment; or

(2) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

3. Paragraph 1.a. under **Section I — Coverage C — Medical Payments** is replaced by the following:

a. We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

(1) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

(2) Arises out of the project or operation shown in the Schedule;

provided that:

(a) The accident takes place during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

# RFP Response of Va. Motorsports Park, LLC, et al. 118

CG 21 44 04 17 © Insurance Services Office, Inc., 2016 Page 3 of 3

DEF_VMP_FRANKLIN000119

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of Section **I** – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of Section **I** – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

# RFP Response of Va. Motorsports Park, LLC, et al. 119

DEF_VMP_FRANKLIN000120

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

**RFP Response of Va. Motorsports Park, LLC, et al. 120**

COMMERCIAL GENERAL LIABILITY
CG 40 10 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CROSS SUITS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverages – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

**Cross Suits**

Any claim made or "suit" brought by any Named Insured under this Policy against another Named Insured under this Policy for damages because of "bodily injury" or "property damage".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverages – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Cross Suits**

Any claim made or "suit" brought by any Named Insured under this Policy against another Named Insured under this Policy for damages because of "personal and advertising injury".

# RFP Response of Va. Motorsports Park, LLC, et al. 121

© Insurance Services Office, Inc., 2018

DEF_VMP_FRANKLIN000122

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.: **41-LX-061736200-0 000**

# MOTORSPORTS PARTICIPANTS LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

| SCHEDULE | |
|---|---|
| Participants Liability Limit | $ 1,000,000 Each Occurrence |

1.  Except as provided under Paragraph 2. of this endorsement, below, this insurance does not apply to "bodily injury" to any person while trying out, practicing or rehearsing for, or participating in any sport or athletic contest or exhibition.

2.  **Participant Liability Coverage**

    We will pay for "bodily injury" to a "participant" in any contest or exhibition of an athletic or sports nature.

    The Participants Liability Each Occurrence Limit shown in the Schedule of this endorsement is the most we will pay under this coverage for each claim or "suit" arising out of one "occurrence". This Participants Liability Limit is subject to the General Aggregate Limit shown in the Declarations of this policy.

3.  For the purpose of this endorsement, **SECTION V – DEFINITIONS** is amended by the addition of the following:

    "Participant" means any person while trying out, practicing or rehearsing for, or participating in any sport or athletic contest or exhibition, including any person permitted to enter any "restricted area" of competition while occupied by competitors.

    "Restricted area" means any area where access by the general public is prohibited.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

# RFP Response of Va. Motorsports Park, LLC, et al. 122

PRG 142035 10-22    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

DEF_VMP_FRANKLIN000123

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:  **41-LX-061736200-0 000**

# MOTORSPORTS
# MEDICAL PAYMENTS - PARTICIPANTS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| | |
|---|---|
| Participant Medical Payments Each Occurrence Limit Of Insurance – Each Participant | $ |
| Description of Event or Activity: | |
| Date(s) and Location of Event or Activity: | |

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A.  Under **SECTION I – COVERAGES, COVERAGE C – MEDICAL PAYMENTS**, under Paragraph **2. Exclusions**, Sub-Paragraph **e. Athletic Activities** is deleted in its entirety and is replaced by the following:

   **e. Athletic Activities**

   To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   This exclusion does not apply to "participants" injured while participating in the event or activity specifically described in the Schedule of this endorsement.  We will pay an injured "participant's" "medical expenses" that are not also paid by any health insurance, health coverage, no fault accident coverage, or other no fault coverage available to the injured "participant". The coverage available under this exception is excess over any valid and collectible insurance available to the "participant" except for copays or deductibles paid directly by the injured "participant". In no event will the coverage provided by this exception require us to make any payment to any insurer, or pay any amounts already paid by any insurer to an injured "participant".

B.  **Exclusions**

   1.  Only with respect to coverage provided under this endorsement, under **SECTION I – COVERAGES, Coverage C – Medical Payments**, the following additional exclusions are added under Paragraph **2.:**

      This insurance does not apply to:

      a.  Loss or injury that occurs while the "participant" is legally intoxicated or while under the influence of narcotics, unless administered under the advice and consent of a licensed physician.

      b.  Illness, disease or any bacterial infection other than bacterial infection occurring as a consequence of an accidental cut or wound occurring during an event covered hereunder.

      c.  Injury to a "participant" resulting from the "participant's" willful violation of competition rules. Willful violation includes, but is not limited to, competing without required protective clothing, helmets or gloves, or competing in a racing car that violates competition rules.

      d.  Injury to any person other than a "participant".

   2.  Only with respect to coverage provided under this endorsement, under **SECTION I – COVERAGES, Coverage A – Bodily Injury and Property Damage Liability**, Paragraph **2., Exclusions:**

PRG 142032 10-22          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

DEF_VMP_FRANKLIN000124

    a. Exclusion **h., Mobile Equipment,** is deleted in its entirety.

    b. Exclusion **g., Aircraft, Auto, or Watercraft** is amended to include the following:

       This exclusion does not apply to:

       "Bodily injury" arising out of the operation of any "auto", but only while such "auto" is practicing for, competing or participating in, or being demonstrated or exhibited at the event or activity specifically described in the Schedule of this endorsement.

       For the purposes of this endorsement, "auto" includes any vehicle, motorbike or kart built or designed for racing.

**C. Limits Of Insurance**

  1. The Sublimits shown below are the most we will pay for all described expenses covered under each Sublimit resulting from injuries to any one "participant" in any one "occurrence".

    $       For loss of life

    $       For loss of sight in one or both eyes, loss of one or more limbs, or loss of a thumb and finger of the same hand

    $       For psychiatric treatment by a physician, therapist or counselor

    $       Each week for disability up to _____ weeks, subject to a one week waiting period if an injured "participant", due to a covered accident, is under the regular care of a licensed physician and is unable to perform all essential acts and duties of his/her regular occupation or, if not employed, the normal and customary activities that he or she was able to perform prior to the accident. We will not pay for any disability of a duration of less than one week; however, if the duration of the disability exceeds one week, the waiting period will be waived, and we will pay from the first day of the disability.

  2. Only with respect to coverage provided under this endorsement, in addition to the Sublimits indicated in 1., above, the Participant Medical Payments Each Occurrence Limit of Insurance – Each Participant limit is the most we will pay in any one "occurrence" for all other "medical expenses" resulting from injuries to any one "participant" in any one "occurrence".

  3. The Sub-limits above are part of and not in addition to the General Aggregate Limit of Insurance shown on the Declarations.

**D. Additional Condition**

Only with respect to coverage provided under this endorsement, the following Condition is added:

**Payment of Medical Expense Benefits**

"Medical expense" benefits may be paid at our option to the injured "participant" or the person or organization providing medical services or products for which such benefits are due. In the event of death of the injured "participant", any amounts payable under this coverage, but unpaid prior to death, are payable to the injured "participant's" surviving spouse or domestic partner, or if there is no surviving spouse or domestic partner, to his or her surviving children. If there is no surviving spouse, domestic partner, or child, then benefits are payable to the injured "participant's" estate.

**E. Additional Definitions**

"**Participant**" means individuals who are trying out for, or have registered to and actually do engage in the event described in the Schedule to this endorsement, including athletes, team members, managers, coaches, assistants, referees and officials. If the event described in the Schedule is a motor racing event, "participant" includes drivers, crew members, mechanics, pitmen, race officials, flagmen, announcers, ambulance crews, newsmen, photographers, gate workers, and all other persons bearing duly and officially assigned credentials for the event.

"**Medical Expenses**" means:

  1. First aid administered at the time of an accident;

  2. Necessary medical, surgical, x-ray and dental services, including prosthetic devices;

  3. Necessary ground ambulance, hospital, and professional nursing services; and

  4. Expenses as described in Paragraph C.1. above with respect to loss of life.

"**Medical Expenses**" do not include:

RFP Response of Va. Motorsports Park, LLC, et al. 124

1. Medical or dental care provided by any person other than a licensed medical practitioner, or in the case of psychiatric treatment, by anyone other than a physician, therapist or counselor who is not a family member and who is licensed or certified to provide such treatment; or

2. Air transportation services, including air ambulance services.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park LLC, et al. 125**

DEF_VMP_FRANKLIN000126

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# GENERAL AGGREGATE LIMIT
# (PER OPERATION, DESIGNATED EVENT, OR PREMISES)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

> **Designated Covered Event, Operations, or Premises:**
>
> Designated Covered Event is defined to mean a single day's activities as part of a motor sports event.
>
>
> Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Coverage A **(Section I)**, and for all medical expenses caused by accidents under Coverage C **(Section I)**, which can be attributed only to a single designated event, operation or premises shown in the Schedule above:

   1. A separate Designated Event, Operation, or Premises General Aggregate Limit applies to each designated event, operation, or premises, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

   2. The Designated Event, Operation, or Premises General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

      a. Insureds;

      b. Claims made or "suits" brought; or

      c. Persons or organizations making claims or bringing "suits".

   3. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Event, Operation, or Premises General Aggregate Limit for that designated Event, Operation, or Premises. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Event, Operation, or Premises General Aggregate Limit for any other designated Event, Operations, or Premises shown in the Schedule above.

   4. The limits shown in the Declarations for Each Occurrence and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Event, Operation, or Premises General Aggregate Limit.

**RFP Response of Va. Motorsports Park, LLC, et al. 126**

DEF_VMP_FRANKLIN000127

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under **Section I – Coverage A**, and for all medical expenses caused by accidents under **Section I – Coverage C**, which cannot be attributed only to operations at a single designated event, operation or premises shown in the Schedule above:

   **1.** Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

   **2.** Such payments shall not reduce any Designated Event, Operation or Premises General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Event, Operation or Premises General Aggregate Limit.

**D.** The provisions of Section III – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al.**

DEF_VMP_FRANKLIN000128

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. Under **SECTION II – WHO IS AN INSURED** Paragraph 2, Subparagraph **a. (1) (d)** is deleted in its entirety and is replaced with the following:

   **(d)** Arising out of his or her providing or failing to provide professional health care services, except for "bodily injury" arising out of "Incidental Medical Malpractice Injury" by any physician, dentist, nurse, emergency medical technician, paramedic or other medical practitioner employed or retained by you and acting within the scope of his or her duties. The insurance provided hereunder to such persons shall not apply to liability arising out of services performed outside of the scope of their duties as your "employees" or "volunteer workers". Any series of continuous, repeated or related acts will be treated as a single "occurrence" of a "Incidental Medical Malpractice Injury".

2. Under **SECTION V – DEFINITIONS**, the following definition is added:

   "Incidental Medical Malpractice Injury" means "bodily injury" arising out of the rendering of or failure to render the following services:

   **a.** Medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

   **b.** The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

The coverage provided by this endorsement does not apply if you are engaged in the business of providing any of the services described in the definition of "Incidental Medical Malpractice Injury."

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 128**

PRG 142031 10-22    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

DEF_VMP_FRANKLIN000129

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# MOTORSPORTS ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

SCHEDULE

| | | |
|---|---|---|
| Motorsports Errors and Omissions Limit Of Insurance | $ 250,000 | Each Occurrence |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**1. COVERAGE**

We will pay those sums that the insured becomes legally obligated to pay as damages resulting from the rendering or failure to render professional services of or relating to the technical inspection of vehicles or scoring of races at covered events.

**2. LIMIT OF INSURANCE**

The Limit of Insurance for coverage provided by this endorsement is shown in the Schedule of this endorsement. This Each Occurrence Limit is included in and not in addition to the Each Occurrence Limit shown in the Declarations.

**3. ADDITIONAL EXCLUSIONS**

With respect to coverage provided by this endorsement, the following additional exclusions apply to coverage provided by this endorsement:

This insurance does not apply to:

a. Damages caused by or resulting from dishonest, fraudulent, criminal or malicious acts or omissions of you or your "employees."

b. "Bodily injury," "property damage," "personal injury," or "advertising injury."

c. Events not reported in accordance with the terms of this policy.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

PRG 142033 10-22    Includes copyrighted material of Insurance Services Office, Inc. with its permission.    Page 1 of 1

**RFP Response of Va. Motorsports Park, LLC, et al. 129**

DEF_VMP_FRANKLIN000130

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# NON-OWNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Under **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2.,** Exclusions, Exclusion **g.,** Aircraft, Auto Or Watercraft is amended to add the following:

This exclusion does not apply to:

Liability arising out of the use of any non-owned aircraft, but only for the purpose of providing emergency transportation after a medical incident at an event covered under this policy.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 130**

PRG 142034 10-22    Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

DEF_VMP_FRANKLIN000131

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# RACING ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. Under **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2.** Exclusions, Exclusion **g.** Aircraft, Auto or Watercraft is amended to include the following:

   This exclusion does not apply to:

   "Bodily injury" or "property damage" arising out of the operation of any "auto" but only while such "auto" is competing, practicing for, participating in, being exhibited on, or demonstrated at a motorsports event on premises owned or occupied by, or rented or loaned to you.

   For the purposes of this endorsement, "auto" includes any vehicle, motorbike or kart built or designed for racing.

2. Under **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph 2. Exclusions, sub-paragraph (2) under Exclusion h. Mobile Equipment is deleted.

3. Under **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Paragraph **2.**, Exclusions, Exclusion **f.** Pollution does not apply to "bodily injury" or "property damage" that results from the emission, discharge, release or escape of any fuels, lubricants, fluids, exhaust gasses, smoke, vapor or fumes that are needed for or result from the normal electrical, hydraulic or mechanical functioning of any "auto" or "mobile equipment" but only:

   **a.** if the emission, discharge, release or escape takes place while such "auto" or "mobile equipment" is competing, practicing for, participating in, being exhibited on, or demonstrated at a motorsports event on premises owned or occupied by, or rented or loaned to you; and

   **b.** if the emission, discharge, release or escape which allegedly caused the "bodily injury" or "property damage" commences during this policy period; and

   **c.** if the "bodily injury" or "property damage" is reported to us within two years of the commencement of the emission, discharge, release or escape which allegedly caused the "bodily injury" or "property damage."

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et. al. 131**

PRG 142036 10-22    Includes copyrighted material of Insurance Services Office, Inc., Page 1 of 1 with its permission.

DEF_VMP_FRANKLIN000132

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# PERSONAL AND ADVERTISING INJURY – WRONGFUL EVICTION – MOTOR RACING EVENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| SCHEDULE | |
|---|---|
| Each Wrongful Eviction Offense Limit Of Insurance | $100,000 |

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

1. Under **SECTION V – DEFINITONS**, Paragraph **14.**, "Personal and Advertising Injury" is amended to add the following:

   **h.** A loss that results in monetary damages to a natural person as a result of a refusal of

   (1) Admission or entry to a motor racing event; or

   (2) Permission to participate in a motor racing event;

   but only if the loss is the result of that person being denied entry as outlined in h.(1) or h.(2) due to their mental or physical limitations that will prevent that person from participating in an NHRA event in accordance to the safety rules of NHRA..

   This provision does not apply to any claim that would violate the public policy of the state where the discrimination takes place.

2. For the purposes of this endorsement only, the following additional exclusion applies:

   This insurance does not apply to:

   Class action claims or "suits" arising out of a loss covered by this endorsement, including claims or "suits" alleging that the insured has engaged in discrimination against a class of persons whose individual claims are alleged to:

   **a.** Be similar to those of each other, and

   **b.** Arise out of a common nucleus of operative facts.

3. **Section III – Limits of Insurance** is amended to include the following additional paragraph:

   Subject to Paragraph **4.**, the Each Wrongful Entry Offense Limit of Insurance is the most we will pay under Coverage B for the sum of all damages covered under this endorsement arising out of any one offense. This Wrongful Act Offense Limit of Insurance is subject to the Personal and Advertising Injury Limit of Insurance.

RFP Response of Va. Motorsports Park, LLC, et al. 132

PRG 142045 11-22       Includes copyrighted material of Insurance Services Office, Inc. Page 1 of 1
with its permission.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 133**

PRG 142045 11-22     Includes copyrighted material of Insurance Services Office, Inc., with its permission.

DEF_VMP_FRANKLIN000134

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# AMENDMENT OF EMPLOYEE DEFINITION (TEMPORARY EMPLOYEE)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The definition of "Employee" in the **Definitions** Section is deleted in its entirety and replaced by the following:

"Employee" includes a "leased worker" or a "temporary worker".

All other terms and conditions of the policy remain the same.

Authorized Representative

**RFP Response of Va. Motorsports**

| PRG 142095 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 1 of 1 |

**Park, LLC, et al. 134**

DEF_VMP_FRANKLIN000135

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EXCLUSION – DESIGNATED ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Description Of Designated Activities: |
|---|
| |
| **Specified Location (If Applicable):** |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the activities described in the Schedule of this endorsement, regardless of whether such activities are conducted by you or on your behalf or whether the activities are conducted for you or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such activities are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described activities conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**RFP Response of Va. Motorsports**

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc. with its permission. | Page 1 of 2 |
|---|---|---|

**Park, LLC, et al. 135**

DEF_VMP_FRANKLIN000136

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports**

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 2 of 2 |
|---|---|---|

**Park, LLC, et al. 136**

DEF_VMP_FRANKLIN000137

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EXCLUSION – DESIGNATED ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Description Of Designated Activities:** <br><br> **Any pyrotechnic or fireworks display unless specifically endorsed hereon, unless performed by a licensed independent contractor, or unless such display occurs solely in connection with starting or closing ceremonies or at the conclusion of racing events.** |
| **Specified Location (If Applicable):** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and to Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the activities described in the Schedule of this endorsement, regardless of whether such activities are conducted by you or on your behalf or whether the activities are conducted for you or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such activities are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described activities conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**RFP Response of Va. Motorsports Park, LLC, et al. 137**

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc. with its permission. | Page 1 of 2 |
|---|---|---|

DEF_VMP_FRANKLIN000138

All other terms and conditions of the policy remain the same.

_____

Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 138**

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 2 of 2 |
|---|---|---|

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EXCLUSION – DESIGNATED ACTIVITIES OR OPERATIONS – WITH SCHEDULED EXCEPTIONS - MOTORSPORTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

| SCHEDULE | |
|---|---|
| This Exclusion does not apply to the following Designated Activity(ies) or Operation(s): | |

Under **SECTION I – COVERAGES**, Paragraph **2.** of **Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2.** of **Coverage B - Personal And Advertising Injury Coverage**, the following is added:

1. **Amusement Devices**

   Any amusement device whether owned, operated, maintained or used by you, any other insured or any other person or entity.

   For the purpose of this exclusion, amusement device means any device or equipment a person rides for enjoyment, including, but not limited to, any mechanical or non- mechanical ride, slide, water slide (including any ski or tow when used in connection with a water slide), moonwalk, moon bounce or other inflatables, bungee operation or equipment. Amusement device also includes any vertical device or equipment used for climbing, either permanently affixed or temporarily erected.

   Amusement device does not include any video arcade or computer game.

2. **Concerts**

   This exclusion applies only if a separate admission charge is made.

3. **Explosions**

   Displays of simulated or real explosions or any such similar stunts.

4. **Fighting Events**

   Including, but not limited to boxing, cage fight matches, martial arts, and wrestling.

5. **Helicopter Rides**

   Any helicopter rides provided by you, any other insured or any other person or entity.

6. **Jet Powered Vehicles**

   Any and all jet powered vehicles.

   However, this exclusion does not apply to jet propelled vehicles that:

   a. Meet NHRA or IHRA technical regulations; and

   b. Do not carry passengers.

RFP Response of Va. Motorsports Park, LLC, et al. 139

DEF_VMP_FRANKLIN000140

**7. Monster Trucks**

Monster truck events or exhibitions.

**8. Parachuting**

Any parachuting act or exhibition.

**9. Stunt Performances**

Any stunt performances, including but not limited to, human cannonball, human bomb acts, flying acts or high wire acts.

**10. Vehicle Jumping**

Any and all types of vehicle jumping.

This exclusion also applies to any setup, preparation, dismantling and teardown of the above activities and operations.

However, this exclusion does not apply to any designated activities or operations described in the Schedule of this endorsement.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 140**

| PRG 142100 (01/23) | Includes copyrighted material of Insurance Services Office, Inc. with its permission. |
|---|---|

DEF_VMP_FRANKLIN000141

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EXCLUSION -
# NUCLEAR OR ROCKET PROPELLED VEHICLES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SECTION I – COVERAGES** is amended to add the following exclusion to Paragraph **2., Exclusions** under each of **Coverage A, Coverage B,** and **Coverage C:**

This insurance does not apply to "bodily injury", "property damage", medical payments, or "personal and advertising injury" arising out of nuclear or rocket propelled vehicle racing or exhibitions.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports**

| PRG 142101 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 1 of 1 |

**Park, LLC, et al. 141**

DEF_VMP_FRANKLIN000142

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EXCLUSION - RETURN ROAD AND RACING SURFACE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SECTION I – COVERAGES** is amended to add the following exclusion to Paragraph **2., Exclusions** under each of **Coverage A, Coverage B,** and **Coverage C:**

This insurance does not apply to "bodily injury", "property damage", medical payments, and "personal and advertising injury" arising out of any event that allows racing vehicles to travel on a return road while other racing vehicles are practicing or competing.

However, this exclusion does not apply if the return road is physically separated from the racing surface by a double guardrail or concrete barrier.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 142**

| PRG 142102 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 1 of 1 |
|---|---|---|

DEF_VMP_FRANKLIN000143

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EVENT REPORTING AND EARNED PREMIUM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

SCHEDULE

| Event Reporting Options | |
|---|---|
| ☐ | Annual |
| ☐ | Monthly |

1. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, is amended to adding the following:**

   **DUTY TO REPORT AN "EVENT"**

   a. All "events" must be reported to the company. If you selected the:

   (1) Annual option: Your premium is based on your schedule of "events" as of inception of this policy. A final list of all "events" which occurred during the policy term must be reported to the company's authorized agent within 30 days of policy expiration. Any premium adjustment will be payable at that time.

   (2) Monthly option: Each "event" must be reported separately on the form provided to you. The full "event" premium for each "event", at the rates reflected on the form provided, must be paid to the company's authorized agent no later than 15 days following the end of the month in which the "event" was conducted.

   You will be subject to additional premium if we determine that any events have not been reported or have been reported at incorrect rates.

   b. If the "event" is held, the "event" premium is fully earned.

   c. If more than one-half of the "event" was held before being cancelled, 100% of the "event" premium is fully earned.

   d. If the "event" is cancelled prior to being held and is cancelled before any motorized vehicles are in the "competition area", the "event" premium will be refunded and no coverage is provided for the cancelled "event".

   e. If the "event" is cancelled prior to being held, but motorized vehicles are in the "competition area" before such "event" is cancelled, 25% of the "event" premium is fully earned. Coverage is provided until cancellation of the "event".

**RFP Response of Va. Motorsports Park, LLC, et al 143**

| PRG 142114 (01/23) | Includes copyrighted material of Insurance Services Office, Inc. with its permission. | Page 1 of 2 |
|---|---|---|

DEF_VMP_FRANKLIN000144

2. For the purpose of this endorsement, **SECTION V – DEFINITIONS** is amended by adding the following:

"Event" means any practice, competition, participation, exhibition, or demonstration of motorized vehicles in the "competition area".

"Competition area" means an area that is used for the presentation or performance of an "event", and where access by the general public is prohibited.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports**

| PRG 142114 (01/23) | Includes copyrighted material of Insurance Services Office, Inc. with its permission. | Page 2 of 2 |

**Park, LLC, et al 144**

DEF_VMP_FRANKLIN000145

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# EXCLUSION – UNMANNED AIRCRAFT WITH LIMITED EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

Your liability arising out of the use of any non-owned "unmanned aircraft" by an additional insured named in this policy. However, coverage does not apply to the additional insured.

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(e)** "Bodily injury" or "property damage" aris...

RFP Response of Va. Motorsports Park, LLC, et al. 145

| PRG 142138 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 1 of 2 |
|---|---|---|

DEF_VMP_FRANKLIN000146

       (i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

      (ii) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Coverage **B – Personal And Advertising Injury Liability:**

    **2. Exclusions**

    This insurance does not apply to:

    **Unmanned Aircraft**

    "Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

    This exclusion does not apply to:

    a. The use of another's advertising idea in your "advertisement";

    b. Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

    c. Your liability arising out of the use of any non-owned "unmanned aircraft" by an additional insured named in this policy. However, coverage does not apply to the additional insured.

**C.** The following definition is added to the **Definitions** section:

    "Unmanned aircraft" means an aircraft that is not:

    **1.** Designed;

    **2.** Manufactured; or

    **3.** Modified after manufacture;

    to be controlled directly by a person from within or on the aircraft.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 146**

| PRG 142138 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 2 of 2 |
| --- | --- | --- |

DEF_VMP_FRANKLIN000147

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# LIMITED COVERAGE – DAMAGE TO PROPERTY IN RESTRICTED AREA AT A MOTOR RACING EVENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| SCHEDULE | | |
|---|---|---|
| Limit Of Insurance: | $ 50,000 | Each Occurrence |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

The Each Occurrence Limit shown in the Schedule of this endorsement is the most we will pay for "property damage" to racing vehicles or trailers owned, rented or occupied by racing vehicle drivers or their crew at events covered under this policy, but only while such property is located in a "restricted area".

The Limit of Insurance shown in the Schedule above is subject to the Each Occurrence Limit shown on the Declarations.

Only for the purpose of this endorsement, the following Definition is added: "Restricted area" means any area where access to the general public is prohibited.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 147**

DEF_VMP_FRANKLIN000148

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.: 01/25/2023
Forms a part of Policy No.: 41-LX-061736200-0

# EXCLUSION – DESIGNATED ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Description Of Designated Activities: |
| --- |
| |
| **Specified Location (If Applicable):** |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and to Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the activities described in the Schedule of this endorsement, regardless of whether such activities are conducted by you or on your behalf or whether the activities are conducted for you or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such activities are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described activities conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**RFP Response of Va. Motorsports**

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 1 of 2 |
| --- | --- | --- |

**Park, LLC, et al. 148**

DEF_VMP_FRANKLIN000149

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports**

| PRG 142096 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 2 of 2 |
|---|---|---|

**Park, LLC, et al. 149**

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.: 01/25/2023
Forms a part of Policy No.: 41-LX-061736200-0

# LIMITED COVERAGE – DAMAGE TO PROPERTY IN RESTRICTED AREA AT A MOTOR RACING EVENT - DRAG STRIPS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Limit Of Insurance: | $100,000    Each Occurrence |
| --- | --- |

(Information required to complete this Schedule, if not shown above, will be shown in the Declarations.)

The Each Occurrence Limit shown in the Schedule of this endorsement is the most we will pay for "property damage" to racing vehicles or trailers owned, rented or occupied by racing vehicle drivers or their crew at events covered under this policy, but only while such property is located in a "restricted area".

This Occurrence Limit of Insurance is subject to the General Aggregate Limit of Insurance shown on the Declarations.

Only for the purpose of this endorsement, the following Definition is added: "Restricted area" means any area where access to the general public is prohibited.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 150**

DEF_VMP_FRANKLIN000151

COMMERCIAL GENERAL LIABILITY
CG 21 30 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALASKA RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion q. under Paragraph **2. Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

B. Exclusion p. under Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

# RFP Response of Va. Motorsports Park, LLC, et al. 151

CG 21 30 04 13    © Insurance Services Office, Inc., 2012    Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 26 70 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALASKA CHANGES – DEFINITION OF METATAG

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to **Section V – Definitions:**

"Metatag" means hidden or embedded text or code that is not seen by persons viewing the web site, but that operates to attract search engines to that site.

**B.** Exclusion **l.** under Paragraph **2.** of **Section I – Coverage B – Personal And Advertising Injury** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or "metatag", or any other similar tactics to mislead another's potential customers.

**RFP Response of Va. Motorsports Park, LLC, et al. 152**

CG 26 70 10 01                     © ISO Properties, Inc., 2001                     Page 1 of 1    ☐
DEF_VMP_FRANKLIN000153

COMMERCIAL GENERAL LIABILITY
CG 26 97 03 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALASKA WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** Exclusion **o.** under Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**o. War**

"Personal and advertising injury", however caused, arising out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions of Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

**RFP Response of Va. Motorsports Park, LLC, et al. 153**

CG 26 97 03 06      © ISO Properties, Inc., 2005      Page 1 of 1   ☐

COMMERCIAL GENERAL LIABILITY
CG 01 42 07 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Pursuant to Arkansas Code Section 23-79-155:

**A.** The definition of "occurrence" includes faulty workmanship; and

**B.** The definition of "occurrence" required by this section of Arkansas law does not serve to limit or restrict the applicability of any exclusion for "bodily injury" or "property damage" under this Coverage Part.

# RFP Response of Va. Motorsports Park, LLC, et al. 154

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under Califor-
nia law.

**RFP Response of Va. Motorsports
Park, LLC, et al. 155**

CG 32 34 01 05      © ISO Properties, Inc., 2004      Page 1 of 1

DEF_VMP_FRANKLIN000156

COMMERCIAL GENERAL LIABILITY
CG 01 18 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The **Legal Action Against Us** Condition (Section **IV** – Conditions) is replaced by the following.

**Legal Action Against Us**

A person or organization may bring a "suit" against us including, but not limited to, a "suit" to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

# RFP Response of Va. Motorsports Park, LLC, et al. 156

CG 01 18 12 04                    © ISO Properties, Inc., 2003                    Page 1 of 1    ☐

DEF_VMP_FRANKLIN000157

COMMERCIAL GENERAL LIABILITY
CG 01 25 03 03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOUISIANA CHANGES – INSURING AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1.a. of Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability** is replaced with the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**B.** Paragraph **1.a. of Section I – Coverages, Coverage B – Personal And Advertising Injury Liability** is replaced with the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C. However, using up the Medical Expense Limit does not end our right and duty to defend.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

# RFP Response of Va. Motorsports Park, LLC, et al. 157

CG 01 25 03 03                    © ISO Properties, Inc., 2002                    Page 1 of 1        □

DEF_VMP_FRANKLIN000158

COMMERCIAL GENERAL LIABILITY
CG 02 01 12 17

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MARYLAND CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

2. When this Policy has been in effect for 45 days or less and is not a renewal policy, we may cancel this Coverage Part by mailing to the first Named Insured, at the last mailing address known to us, written notice of cancellation, stating the reason for cancellation, at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

b. 15 days before the effective date of cancellation if we cancel because the risk does not meet our underwriting standards.

3. When this Policy has been in effect for more than 45 days or is a renewal policy, we may cancel this Policy by mailing to the first Named Insured, at the last mailing address known to us, written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

b. 45 days before the effective date of cancellation if we cancel for a permissible reason other than nonpayment of premium, stating the reason for cancellation. Under this Paragraph **b.,** we may cancel only for one or more of the following reasons:

(1) When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a claim.

(2) A change in the condition of the risk that results in an increase in the hazard insured against.

(3) A matter or issue related to the risk that constitutes a threat to public safety.

If we cancel pursuant to Paragraph **3.b.,** you may request additional information on the reason for cancellation within 30 days from the date of our notice.

B. Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due.

a. The refund will be pro rata if:

(1) We cancel; or

(2) The Policy is not a renewal policy, and the first Named Insured cancels upon receiving written notice that we recalculated the premium based on the discovery of a material risk factor during the first 45 days the Policy has been in effect.

b. If the first Named Insured cancels, other than the cancellation described in Paragraph **a.(2),** the refund will be calculated as follows:

(1) **Policies Written For One Year Or Less**

We will refund 90% of the pro rata unearned premium.

(2) **Policies Written For More Than One Year**

(a) If the Policy is cancelled in the first year, we will refund 90% of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

(b) If the Policy is cancelled after the first year, we will refund the pro rata unearned premium.

RFP Response — Ace Motorsports Park, LLC, et al. 158

CG 02 01 12 17

© Insurance Services Office, Inc., 2017

Page 1 of 2

DEF_VMP_FRANKLIN000159

**(3) Continuous And Annual Premium Payment Policies**

We will refund 90% of the pro rata unearned premium for the year in which the Policy is cancelled.

We will retain the minimum premium, except if the Policy is cancelled as of the inception date.

However, if this Policy is financed by a premium finance company and we or the premium finance company or the first Named Insured cancels the Policy, the refund will consist of the gross unearned premium computed pro rata, excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

The cancellation will be effective even if we have not made or offered a refund.

**C.** Paragraph **6.** of the **Cancellation** Common Policy Condition is replaced by the following:

**6.** We will send notice of cancellation to the first Named Insured by a "first-class mail tracking method" if:

**a.** We cancel for nonpayment of premium; or

**b.** This Policy is not a renewal of a policy we issued and has been in effect for 45 days or less.

We will send notice to the first Named Insured by a "first-class mail tracking method" or by commercial mail delivery service if we cancel for a reason other than nonpayment of premium and this Policy:

**a.** Is a renewal of a policy we issued; or

**b.** Has been in effect for more than 45 days.

We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**D.** The following condition is added and supersedes any provisions to the contrary:

**When We Do Not Renew**

**1.** We may elect not to renew this Policy by mailing notice of nonrenewal to the first Named Insured at the last mailing address known to us at least 45 days before the expiration date of this Policy.

**2.** We will send notice of nonrenewal to the first Named Insured by a "first-class mail tracking method" or by commercial mail delivery service. We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

**3.** When we elect not to renew a policy that has been in effect for more than 45 days for a reason other than nonpayment of premium, we will provide a written statement of the actual reason for the refusal to renew. You may request additional information within 30 days from the date of our notice.

**4.** If we offer to renew at least 45 days before the renewal date and you fail to make the required premium payment by the renewal date, the Policy will terminate on the renewal date for nonpayment of premium.

**E.** The following definition is added:

"First-class mail tracking method" means a method that provides evidence of the date that a piece of first-class mail was accepted for mailing by the United States Postal Service, including a certificate of mail and an electronic mail tracking system used by the United States Postal Service.

"First-class mail tracking method" does not include a certificate of bulk mailing.

# RFP Response of Va. Motorsports Park, LLC, et al. 159

© Insurance Services Office, Inc., 2017          CG 02 01 12 17
DEF_VMP_FRANKLIN000160

COMMERCIAL GENERAL LIABILITY
CG 26 05 02 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The **Examination Of Your Books And Records** Common Policy Condition is replaced by the following:

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to one year afterward.

B. Paragraph **1. Bankruptcy** under **Section IV – Commercial General Liability Conditions** is replaced by the following:

**1. Bankruptcy**

Bankruptcy, insolvency or dissolution of the insured or of the insured's estate will not relieve us of our obligation under this Coverage Part, and in case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this Coverage Part against the company to the same extent that the insured would have, had the insured paid the final judgment.

C. The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** Condition under **Section IV – Commercial General Liability Conditions:**

Our rights do not apply against any person or organization insured, under this or any other Coverage Part we issue, with respect to the same "occurrence".

**RFP Response of Va. Motorsports Park, LLC, et al. 160**

CG 26 05 02 07

© ISO Properties, Inc., 2006

Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 26 81 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA CHANGES – DUTIES CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE **CG 04 35**
LIMITED PRODUCT WITHDRAWAL EXPENSE ENDORSEMENT **CG 04 36**
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PERSONAL INJURY LIABILITY ENDORSEMENT **CG 28 05**
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The following is added to the Duties Condition:

The requirement to notify us can be satisfied by notifying our agent. Notice can be by any means of communication.

**RFP Response of Va. Motorsports Park, LLC, et al. 161**

COMMERCIAL GENERAL LIABILITY
CG 26 20 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES – LOSS INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART ("OCCURRENCE" VERSION)

The following Condition is added TO COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

**10. Your Right to Loss Information**

We will provide the first Named Insured shown in the Declarations the following loss information relating to this and any preceding general liability Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "occurrence" of which we were notified in accordance with paragraph **2.a.** of the Duties in the Event of Occurrence, Offense, Claim or Suit Condition in this Section. We will include a brief description of the "occurrence" and information on whether any claim arising out of the "occurrence" is open or closed.

b. A summary by policy year, of payments made and amounts reserved, stated separately under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

We will provide this information only if we receive a written request from the first Named Insured during the policy period. We will provide this information within 45 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers or others to whom this information is furnished by or on behalf of any insured.

**RFP Response of Va. Motorsports Park, LLC, et al. 162**

CG 26 20 10 93                 Copyright, Insurance Services Office, Inc., 1992                 Page 1 of 1    □
DEF_VMP_FRANKLIN000163

COMMERCIAL GENERAL LIABILITY
CG 01 03 06 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the Insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

**RFP Response of Va. Motorsports Park, LLC, et al. 163**

CG 01 03 06 06                    © ISO Properties, Inc., 2005                    Page 1 of 1    □

DEF_VMP_FRANKLIN000164

COMMERCIAL GENERAL LIABILITY
CG 01 79 07 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **f.(1)(a)(i)** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

(i) "Bodily injury" or "property damage" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

# RFP Response of Va. Motorsports Park, LLC, et al. 164

CG 01 79 07 10    © Insurance Services Office, Inc., 2010    Page 1 of 1

DEF_VMP_FRANKLIN000165

COMMERCIAL GENERAL LIABILITY
CG 01 81 05 08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WASHINGTON CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **e.** of Coverage **A** – Bodily Injury And Property Damage Liability (Section I – Coverages) applies only to "bodily injury" to any "employee" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Exclusion **e.** is replaced with the following:

This insurance does not apply to:

1. "Bodily injury" to an "employee" of the insured arising out of and in the course of:

   a. Employment by the insured; or

   b. Performing duties related to the conduct of the insured's business; or

2. Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

B. Paragraphs **2.a.(1)(a)**, **(b)** and **(c)** of Section II – Who Is An Insured apply only to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, the reference to "volunteer workers" is removed from Paragraph **2.(a)** of Section II – Who Is An Insured and Paragraph **2.a.(1)** of Section II is replaced with the following:

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal and advertising injury":

          (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

          (b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** above; or

          (c) Arising out of his or her providing or failing to provide professional health care services.

# RFP Response of Va. Motorsports Park, LLC, et al. 165

© ISO Properties, Inc., 2007

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Policy No: 41-LX-061736200-0 000

Effective 12:01 a.m. 01/25/2023

## RADIOACTIVE MATTER EXCLUSION

This policy does not apply to:

1) "Bodily Injury" or "Property Damage" arising out of any actual, alleged or threatened exposure to any radioactive matter, including, but not limited to, Radon;

2) Any loss, cost or expense arising out of any:

   a) request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of any radioactive matter, including, but not limited to, Radon; or

   b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any my responding to or assessing the effects of any radioactive matter, including, but not limited to, Radon.

---

AUTHORIZED REPRESENTATIVE

**RFP Response of Va. Motorsports Park, LLC, et al. 166**

56235 (3/93)

DEF_VMP_FRANKLIN000167

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 A.M.,  01/25/2023
Forms a part of Policy No.: 41-LX-061736200-0  000

## SERVICE OF SUIT CONDITION

This endorsement modifies insurance provided under the policy:

The following condition is added to this policy and, if applicable, supersedes any Service of Suit Condition currently provided therein:

> In the event of our failure to pay any amount claimed to be due hereunder, we, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed  that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 99 High Street, Boston, Massachusetts 02110 or his or her representative, and that in any suit instituted against us upon this Policy, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

> Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

# RFP Response of Va. Motorsports Park, LLC, et al. 167

PRG 2023 (5/14)

DEF_VMP_FRANKLIN000168

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY

Policy No: 41-LX-061736200-0 000
Effective 12:01 a.m. 01/25/2023

TOTAL LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY

This insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost or expense arising out of the presence, ingestion, inhalation, or absorption of or exposure to lead in any form or products containing lead.

_____
AUTHORIZED REPRESENTATIVE

**RFP Response of Va. Motorsports Park, LLC, et al. 168**

58332 (08/07)

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Policy No: 41-LX-061736200-0 000
Effective 12:01 a.m. 01/25/2023

### CRISIS RESPONSE COVERAGE EXTENSION ENDORSEMENT - Minnesota
### (INCLUDING ACTS OF NATURE)

THIS COVERAGE EXTENSION ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR "CRISIS RESPONSE COSTS" AND "CRISIS MANAGEMENT LOSS" IN THE EVENT OF A "CRISIS EVENT" AS DEFINED HEREIN. THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY.

#### Schedule

CRISIS RESPONSE NOTIFICATION TELEPHONE NUMBER: 877-244-3100

| Crisis Response Coverage Extension | Limits of Insurance | |
|---|---|---|
| Crisis Response Aggregate Limit | $250,000 | |
| Each Crisis Response Costs Limit | $250,000 | Each "Crisis Event" |
| Each Crisis Management Loss Limit | $50,000 | Each "Crisis Event" |

Notwithstanding any provisions to the contrary in the policy to which this Coverage Extension is attached, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this Coverage Extension, the policy is extended to provide "crisis response costs" and "crisis management loss" resulting from a "crisis event".

SECTION I. - CRISIS RESPONSE COVERAGE EXTENSION

A. We will reimburse you or pay on your behalf reasonable and necessary "crisis response costs" and/or "crisis management loss" arising out of:

   1. "Bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct"; or

   2. An imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct";

   But only with respect to a "crisis event" to which this Coverage Extension applies.

   The amount we will reimburse you or pay on your behalf for such "crisis response costs" and/or "crisis management loss" is limited as described in SECTION III - CRISIS RESPONSE LIMITS OF INSURANCE. No self-insured retention or deductible shall apply to this Coverage Extension.

B. We will reimburse you or pay on your behalf "crisis response costs" and/or "crisis management loss" arising out of a "crisis event" only if:

   1. The "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" or an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" takes place in the "coverage territory";

   2. The "crisis event" commences to occur during the policy period, and

**RFP Response of Va. Motorsports Park, LLC, et al. 169**

| 118457 (02/15) | ©All rights reserved. | Page 1 of 5 |

DEF_VMP_FRANKLIN000170

3. Such "crisis response costs" and/or "crisis management loss" are incurred within thirty (30) days after the commencement date of the "crisis event". The end of the policy period will not cut short this thirty (30) day period.

All related or interrelated "crisis events" shall be treated as one "crisis event" and shall be deemed to have occurred in their entirety when the first of such "crisis events" occurs.

## SECTION II. - EXCLUSIONS

If this Coverage Extension is attached to a Commercial General Liability Coverage Form, the exclusions of the policy also apply to this Coverage Extension, except for the following Exclusions, which do not apply to this Coverage Extension: Expected or Intended Injury; Liquor Liability; Workers' Compensation And Similar Laws; Employer's Liability; Pollution; Aircraft, Auto or Watercraft; Mobile Equipment; Damage To Property; Damage to Your Product; Damage to Your Work; Damage To Impaired Property Or Property Not Physically Injured; and Recall Of Products, Work Or Impaired Property.

If this Coverage Extension is attached to a Professional Liability or Professional Errors and Omissions Policy, the exclusions of the policy also apply to this Coverage Extension, except for the following Exclusions, which do not apply to this Coverage Extensions: Bodily Injury; Property Damage; Personal and Advertising Injury; Dishonest, Fraudulent or Criminal Acts; Workers' Compensation And Similar Laws; Employer's Liability; Pollution; Aircraft, Auto or Watercraft; Prior Knowledge; Misappropriation of Funds; or Unfair Trade Practices.

## SECTION III. - CRISIS RESPONSE LIMITS OF INSURANCE

A. The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for "crisis response costs" and "crisis management loss" regardless of the number of Insureds, "crisis events", or "affected persons".

B. The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all "crisis response costs" and "crisis management loss" under this Coverage Extension.

C. Subject to Paragraph B. above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all "crisis response costs" arising out of any one "crisis event".

D. Subject to Paragraph B. above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all "crisis management loss" arising out of any one "crisis event".

All "crisis events" or all related or interrelated "crisis events" will be deemed to be one "crisis event".

## SECTION IV. - DEFINITIONS

The definitions of the policy apply to this Coverage Extension. However, the following additional definitions applicable to this coverage Extension supersede any similar definitions in the policy.

You and your refer to the Named Insured and we, us and our refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning as follows:

A. "Affected persons" means those individuals, including your employees, who suffer direct "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" or directly experience an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct".

B. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

C. "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico and Canada. "Coverage territory" shall also include "crisis events" occurring anywhere

RFP Response of Va. Motorsports Park, LLC, et al 170

| 118457 (02/15) | ©All rights reserved. | Page 2 of 5 |

DEF_VMP_FRANKLIN000171

in the world if such "crisis event" occurs during an event officially sponsored, organized and controlled by you or during travel thereto or returning there-from.

D. "Crisis event" means:

1. A man-made emergency situation or an emergency situation caused by an act of nature that involves "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" or an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct", sustained by an "affected person(s)", including, but not limited to:

   a. arson;

   b. an explosion or bombing;

   c. the taking of hostages;

   d. a mass shooting;

   e. terrorism (if covered under the policy only);

   f. intentional contamination of food, drink, or pharmaceuticals;

   g. a building, structure or forest fire;

   h. a building, structure or equipment collapse;

   i. an automobile, watercraft or aircraft accident;

   j. an avalanche;

   k. flood;

   l. earthquake;

   m. any event that results in dismemberment, permanent paralysis or traumatic brain injury to an individual

   n. mud slide; or

   o. a drowning, in a natural or man-made body of water

2. Adverse media coverage of any kind which first occurs during the policy period and results from an emergency situation described in Subparagraph 1. above, regardless of when such emergency situation occurs.

E. "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing that is hired by you to perform services of the type covered under "crisis management loss" in connection with a "crisis event".

F. "Crisis management loss" means reasonable and necessary fees and expenses charged by a "crisis management firm" or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk. This does not include the salaries of your employees.

"Crisis management loss" shall not include "crisis response costs" or "defense costs".

G. "Crisis response costs" means:

**RFP Response of Va. Motorsports Park, LLC, et al 171**

| 118457 (02/15) | ©All rights reserved. | Page 1 of 5 |

DEF_VMP_FRANKLIN000172

1. Reasonable and necessary "emergency transport expenses", "emergency psychology expenses", funeral expenses, travel expenses, and temporary living expenses incurred by you to provide relief and/or support to "affected persons" and the immediate family members of such "affected persons";

2. Expenses incurred by you to secure the scene of a "crisis event"; and

3. Any other expenses pre-approved by the Company

"Crisis response costs" shall not include "defense costs" or "crisis management loss".

H.  "Defense costs" means legal fees and expenses incurred by you for legal advice or services sought in anticipation of, or upon actual receipt of, a claim alleging liability and seeking damages for "bodily injury", "property damage" ", "personal and advertising injury" or "sexual misconduct" or an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct".

I.  "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event", to transport an "affected person" sustaining "bodily injury" or "sexual misconduct" in a "crisis event" to a medical treatment facility.

J.  "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons" and incurred within the first fourteen (14) days of a "crisis event".  This does not include the costs or expenses of any medications or hospitalizations.  Such psychology or counseling services must be approved by the "crisis management firm".

K.  "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "crisis event" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media including cloud stored data which are used with electronically controlled equipment.

L.  "Sexual misconduct" means any sexual act (even if consensual) including, but not limited to, sexual abuse, sexual molestation, sexual harassment, sexual misconduct, sexual assault, sexual victimization, sexual intimacy, sexual contact, sexual advances, sexual exploitation, requests for sexual favors, verbal or physical conduct of a sexual nature, coercion to engage in sexual activities and licentious or immoral misconduct.

SECTION V. - CONDITIONS

The general and/or common conditions of the policy apply to this Coverage Extension.  However, the following conditions applicable to this Coverage Extension supersede any similar conditions in the policy to the contrary.

A.  Insured's Duties in the Event of a "Crisis Event"

1. You must see to it that we are notified by telephone within twenty-four (24) hours of a "crisis event" which may result in "crisis response costs" and treated as "crisis"

118457 (02/15)                    ©All rights reserved.                    Page 4 of 5

RPI Response Management as Motorsports
Park, LLC, et al 172

DEF_VMP_FRANKLIN000173

be made to the phone number indicated in the Schedule of this Coverage Extension. If necessary, we will provide you with an approved "crisis management firm" unless we agree to accept a "crisis management firm" that you have selected.

2. Thereafter you must provide oral or written notice, as soon as practicable. To the extent possible, this oral or written notice should include:

   a. How, when and where the "crisis event" took place;

   b. The names and addresses of any "affected parties" and witnesses; and

   c. The nature and location of any injury or damage arising out of the "crisis event".

3. If reimbursement is sought directly by you, you must submit a claim for reimbursement of "crisis response costs" and "crisis management loss" within ninety (90) days after incurring such "crisis response costs" or "crisis management loss". Such claim(s) must include invoices and/or receipts supporting such "crisis response costs" or "crisis management loss" for each and every expense in excess of fifty (50) dollars.

4. Written notice and claim submission as required in Paragraphs 2. and 3. of this section, respectively, shall be mailed or delivered to:

   Attn: Crisis Response Dept
   1271 Ave of the Americas FL 37,
   New York, NY 10020

**B. Anti-Stacking Provision**

If "crisis response costs" and/or "crisis management loss" provided by this Coverage Extension are also provided by any other insurance issued to you by us or any of our affiliated companies (whether or not such costs or loss are referred to using these same terms), the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically intended to apply as excess insurance over this Coverage Extension.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al, 173**

DEF_VMP_FRANKLIN000174

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

Policy No: 41-LX-061736200-0 000
Effective 12:01 a.m. 01/25/2023

**FUNGUS EXCLUSION**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost or expense, including but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

a.  Any "fungus(i)", "mold(s)", mildew or yeast, or
b.  Any "spore(s)" or toxins created or produced by or emanating from such "fungus(i)", "mold(s)", mildew or yeast, or
c.  Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or
d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including "mold(s)", rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and "fungi" that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its other endorsements, the provisions of this exclusion will supercede.

**ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.**

_____
Authorized Representative

# RFP Response of Va. Motorsports Park, LLC, et al. 174

78689 (7/03)                    Page 1 of 1

DEF_VMP_FRANKLIN000175

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 a.m.:
Forms a part of Policy No.:

# DELUXE COMMERCIAL LIABILITY
# BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## SCHEDULE – EXTENSIONS OF COVERAGE

| Coverages | |
|---|---|
| Additional Insured | Fire, Explosion, Sprinkler Leakage Or Lightning Legal Liability Coverage |
| Additional Insured – Vendors | Incidental Medical Services Coverage |
| Blanket Waiver Of Subrogation | Liberalization |
| Broadened Bodily Injury | Non-owned Watercraft Coverage |
| Broadened Named Insured | |
| Duties In The Event Of An Occurrence, Offense, Claim Or Suit | Supplementary Payments – Increased Limits |
| Expected Or Intended Injury | Unintentional Failure To Disclose Hazards |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Coverage extensions under this section only apply in the event that no other specific coverage for these extensions is provided under this policy. If such specific coverage applies, the terms, conditions and limits of that coverage are the sole and exclusive coverage applicable under this policy, unless otherwise noted in this endorsement.

1. **Additional Insured**

   Paragraph 2. of **Section II – Who Is An Insured** is amended by the addition of the following:

   e. Any person or organization is included as an additional insured, but only to the extent such person or organization is held liable for "bodily injury", "property damage" or "personal and advertising injury" caused by your acts or omissions. With respect to the insurance afforded to such insured, all of the following additional provisions apply:

      (1) You and such person or organization have agreed in a written "insured contract" that such person or organization be added as an additional insured under this policy;

      (2) The "bodily injury", "property damage" or "personal and advertising injury" for which such person or organization is held liable occurs subsequent to the execution of such "insured contract";

| PRG 142124 (01/23) | Includes copyrighted material of Insurance Services Office, Inc. with its permission. | Page 1 of 6 |

Ref: Pennington v. VanWyk Motorsports Park, LLC et al. 175

(3) The most we will pay is the lesser of either the Limits of Insurance shown in the Declarations or the Limits of Insurance required by the "insured contract";

(4) Such person or organization is an insured only with respect to:

(a) Their ownership, maintenance, or use of that part of the premises, or land, owned by, rented to, or leased to you, except such person or organization is not an insured with respect to structural alterations, new construction or demolition operations performed by or on behalf of such person or organization;

(b) Your ongoing operations performed for that insured;

(c) Their financial control of you, except such person or organization is not an insured with respect to structural alterations, new construction or demolition operations performed by or on behalf of such person or organization;

(d) The maintenance, operation or use by you of equipment leased to you by such person or organization;

(e) Operations performed by you or on your behalf and for which a state or political subdivision has issued a permit, provided such operations are not performed for such state or political subdivision, and are not included within the "products-completed operations hazard";

(5) This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", "occurrence" or offense:

(a) Which takes place at a particular premises after you cease to be a tenant of that premises;

(b) Which takes place after all work, including materials, parts or equipment furnished in connection with such work to be performed by or on behalf of the additional insured at the site of the covered operations, has been completed;

(c) Which takes place after that portion of "your work" out of which the injury or damage arises has been put to its intended use by any other person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project;

(d) Which takes place after the expiration of any equipment lease to which (4)(d) above applies;

(6) With respect to architects, engineers or surveyors, coverage does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:

(a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

(b) Supervisory, inspection, architectural or engineering services.

However, if an Additional Insured endorsement is attached to this policy that specifically names a person or organization as an insured, then this subsection 2.e. does not apply to such person or organization.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance; whichever is less.

This endorsement shall not increase the applicable limits of insurance.

2. **Additional Insured – Vendors**

Unless the "products-completed operations hazard" is excluded from this policy, paragraph 2. of **Section II – Who Is An Insured** is amended by the addition of the following:

f. Any vendor of yours is included as an additional insured, but only with respect to "bodily injury" or "property damage" caused by "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

R.P. Response of Va. Motorsports Park, LLC, et al. 176

| PRG 142124 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 6 of 8 |
| --- | --- | --- |

(1) The insurance afforded to the vendor does not apply to:

(a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b) Any express warranty unauthorized by you;

(c) Any physical or chemical change in the product made intentionally by the vendor;

(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing or repair operations, except such operations performed by the vendor in full compliance with the manufacturer's written instructions at the vendor's premises in connection with the sale of the product;

(g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

(h) "Bodily injury" or "property damage" arising out of the liability of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf.

(2) This insurance does not apply to any insured person or organization from whom you have acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

However, if an Additional Insured – Vendors endorsement is attached to this policy that specifically names a person or organization as an insured, then this subsection 2.f. does not apply to that person or organization.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance; whichever is less.

This endorsement shall not increase the applicable limits of insurance.

3. **Blanket Waiver Of Subrogation**

Paragraph 8. **Transfer Of Rights Of Recovery Against Others To Us** of Section IV – Commercial General Liability Conditions and Section IV – Products/Completed Operations Liability Conditions is deleted in its entirety and replaced by the following:

**Transfer Of Rights Of Recovery Against Others To Us And Blanket Waiver Of Subrogation**

a. If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after the loss to impair those rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

b. If required by a written "insured contract" executed prior to the "occurrence" or offense, we waive any right of recovery we may have against any person or organization named in such "insured contract", because of payments we make for injury or damage arising out of your operations or "your work" for that person or organization.

4. **Broadened Named Insured**

Paragraph 3. of Section II – Who Is An Insured is deleted in its entirety and replaced by the following:

REP Response of Van Motorsports Park, LLC, et al. 177

| PRG 142124 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 3 of 6 |

DEF_VMP_FRANKLIN000178

Any organization that you own at the inception of this policy, or newly acquire or form, other than a partnership, joint venture or limited liability company, during the policy period, and over which you maintain during the policy period majority ownership or majority interest, will qualify as a Named Insured if:

a. There is no other similar insurance available to that organization;

b. The first Named Insured shown in the Declarations has the responsibility of placing insurance for that organization; and

c. That organization is incorporated or organized under the laws of the United States of

America. However:

a. Coverage under this provision is afforded only until the next occurring annual anniversary of the beginning of the policy period shown in the Declarations, or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

The final paragraph of **Section II – Who Is An Insured** is replaced by the following:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

5. **Broadened Bodily Injury**

Paragraph 3. of **Section V – Definitions** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

6. **Duties In The Event Of An Occurrence, Offense, Claim Or Suit**

Paragraph 2.a. of **Section IV – Commercial General Liability Conditions** is deleted in its entirety and replaced by the following:

a. You must see to it that we or any licensed agent of ours are notified of a general liability "occurrence" or offense which may result in a claim as soon as practicable after it becomes known to:

   (1) You, if you are an individual;

   (2) Your partner or member, if you are a partnership or joint venture;

   (3) Your member, if you are a limited liability company;

   (4) Your executive officer if you are an organization other than a partnership, joint venture or limited liability company; or

   (5) Your authorized representative or insurance manager.

   Knowledge of an "occurrence" or offense by persons other than those listed above does not imply that those listed above also have such knowledge.

b. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

7. **Expected Or Intended Injury**

Paragraph 2.a. **Expected Or Intended Injury** of the Exclusions provision of **Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

**Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**RFP Response of Va. Motorsports Park, LLC, et al. 178**

DEF_VMP_FRANKLIN000179

8. **Fire, Explosion, Sprinkler Leakage Or Lightning Legal Liability Coverage**

The final paragraph of the **Exclusions** provision of **Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by fire, explosion, sprinkler leakage or lightning to premises while:

(1) Rented to you;

(2) Temporarily occupied by you with the permission of the owner; or

(3) Managed by you under a written agreement with the owner.

A separate limit of insurance applies to this coverage as described in **Section III – Limits Of Insurance.**

Paragraph **6.** of **Section III – Limits Of Insurance** is deleted in its entirety and replaced by the following:

Subject to paragraph **5.** above, the Damage to Premises Rented To You Limit shown in the Declarations, is the most we will pay under Coverage A for damages because of "property damage" to any one premises while rented to you, or in the case of damage by fire, explosion, sprinkler leakage, or lightning while rented to you, temporarily occupied by you with the permission of the owner, or managed by you under a written agreement with the owner, is the greater of:

a. $1,000,000 Any One Premises; or

b. The Damage To Premises Rented To You Limit shown in the Declarations.

Subsections **4.b.(1)(a)(ii)** and **4.b.(1)(a)(iii)** of paragraph **4.b. Excess Insurance** of the **Other Insurance** condition of **Section IV – Commercial General Liability Conditions** is deleted in its entirety and replaced by the following:

(ii) That is Fire, Explosion, Sprinkler Leakage, or Lightning insurance for premises while rented to you, temporarily occupied by you with permission of the owner, or managed by you under a written agreement with the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you, temporarily occupied by you with the permission of the owner, or managed by you under a written agreement with the owner;

Paragraph **9.a.** of **Section V – Definitions** is deleted in its entirety and replaced by the following:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, explosion, sprinkler leakage, or lightning to premises while rented to you, temporarily occupied by you with permission of the owner, or managed by you under a written agreement with the owner, is not an "insured contract";

9. **Incidental Medical Services Coverage**

**Section I – Coverages** is amended to include the following additional coverage:

We will pay for "bodily injury" arising out of the rendering of or failure to render the following treatment or services by an "employee" or "volunteer worker" for an accident occurring during the policy period:

a. First aid treatment including cardiopulmonary resuscitation (CPR); and

b. Medical, surgical, dental, x-ray, or nursing service or treatment, or the furnishing of food or beverages in connection therewith; and the furnishing or dispensing of drugs, or medical, dental, or surgical supplies or appliances.

However, this coverage does not apply to any insured or to any entity engaged in the business or occupation of providing the services or treatments described in **a.** and **b.** above.

10. **Liberalization**

**Section IV – Commercial General Liability Conditions** is amended by the addition of the following condition:

**Liberalization**

If we revise this endorsement to provide more coverage without additional premium charge, we will automatically provide the additional coverage to all endorsement holders as of the day the revision is effective in your state.

11. Non-owned Watercraft Coverage Extended

**RFP Response of Va. Motorsports Park, LLC, et al. 179**

| PRG 142124 (01/23) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 5 of 6 |
|---|---|---|

DEF_VMP_FRANKLIN000180

Paragraph **2.g.(2)** of the **Aircraft, Auto Or Watercraft** exclusion of **Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

This exclusion does not apply to:

(1) A watercraft you do not own that is:

(a) Less than 50 feet long; and

(b) Not being used to carry persons or property for a charge;

12. **Supplementary Payments – Increased Limits**

Paragraphs **1.b.**, **1.d.**, and **1.e.** of **Supplementary Payments – Coverages A and B of Section I – Coverages** are deleted in their entirety and replaced by the following:

b. The cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including substantiated loss of earnings up to $500 a day because of time off from work.

13. **Unintentional Failure To Disclose Hazards**

Paragraph **6. Representations** of **Section IV – Commercial General Liability Conditions** is amended by the addition of the following:

d. If you unintentionally fail to disclose any hazards existing at the inception date of this policy, we will not deny coverage under this Coverage Form because of such failure.

However, this provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

**RFP Response of Va. Motorsports**

**Park, LLC, et al. 180**

DEF_VMP_FRANKLIN000181

# EXHIBIT 4

| SUBSCRIBING MEMBER'S CERTIFICATE |
|---|

| THIS SUBSCRIBING MEMBER'S CERTIFICATE FORMS A PART OF THE MASTER POLICY FOR: | 29-UD-019919981-0 |
|---|---|
| | Master Policy Number: |
| | Term: 01/25/2023 to 01/25/2025 |

**Preferred Motor Sports Risk Purchasing Group, LLC**
4300 Market Pointe Drive, Suite 600, Minneapolis, MN 55435 and
Additional Named Insureds, as evidenced on this Subscribing Member's Certificate and as on file with the company.

Subscribing Member's Certificate Number:  NH - 104

Renewal of Number:

### Insurer Affording Coverage:

National Union Fire Insurance Company
1271 Ave of the Americas FL 37
New York, NY 10020-1304

| Item 1. Subscribing Member Named Insured & Mailing Address | Agent Name and Address |
|---|---|
| Va Motorsports Park, LLC dba Virginia Motorsports Park<br>8018 Boydton Plank Road<br>N. Dinwiddie        VA              23803 | Safehold Special Risk, Inc<br>2050 W Sam Houston Parkway South, Ste 1500<br>Houston, TX 77042 |

Item 2. Certificate Coverage Period:

From:            3/1/2023            To:            3/1/2024
At 12:01 AM Standard Time at the Mailing Address shown above.

3. Form of Business            LLC

Item 4. Description of Business:            Motorsports

Locations of All Premises You Own, Rent or Occupy:        8018 Boydton Plank Road, N. Dinwiddie, VA 23803

Terrorism Coverage:

| | |
|---|---|
| ☐ | If this box is checked, the Named Insured Member has accepted coverage for certified acts of terrorism; coverage is **included** per applicable forms attached to this certificate. |
| ☑ | If this box is checked, the Named Insured Member has rejected coverage for certified acts of terrorism; coverage is **excluded** per applicable forms attached to this certificate. |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS CERTIFICATE AND THE MASTER POLICY, WE AGREE WITH YOU TO PROVIDE THE COVERAGE(S) FOR WHICH PREMIUM IS SHOWN. THE PREMIUMS SHOWN MAY BE SUBJECT TO ADJUSTMENT.

| Estimated Umbrella Liability Premium: | |
|---|---|
| State Tax or Surcharge (if applicable): | N/A |
| Terrorism Premium, | REJECTED |
| Estimated Total Memb | |
| Depo | EXHIBIT 4 |
| Pa | Quarterly |

| RG 142085 (12/22) | Includes copyrighted ma... of Insurance ...ices Office, Inc., with its ...age... permission. |
|---|---|

**RFP Response of Va Motorsports Park, LLC, et al. 181**

DEF_VMP_FRANKLIN000182

**5. Coverage(s) and Limit(s) of Insurance**

| COMMERCIAL UMBRELLA LIABILITY | COVERAGE SPECIFICATIONS: YOUR POLICY CONSISTS OF THE FOLLOWING COVERAGE(S) WHEN A LIMIT OF INSURANCE IS INDICATED BELOW. IF A LIMIT OF LIABILITY IS NOT SHOWN, THERE IS NO COVERAGE PROVIDED. |
|---|---|

| LIMITS AND DEDUCTIBLES | |
|---|---|
| EACH OCCURRENCE LIMIT | $4,000,000 |
| AGGREGATE LIMIT | $4,000,000 |

**Item 6. Underlying Coverages**

| General Liability | 41-LX-061736200-0    NH    107 | $ | 1,000,000 | Each Occurrence Limit |
|---|---|---|---|---|
| | | $ | 5,000,000 | General Aggregate Limit |
| | | $ | 5,000,000 | Products-Completed Ops Aggregate Limit |
| Auto Liability | | | Not Covered | Combined Single Limit |
| Employer's Liability | | | Not Covered | Bodily Injury By Accident -- Each Accident |
| | | | Not Covered | Bodily Injury By Disease -- Policy Limit |
| | | | Not Covered | Bodily Injury By Disease -- Peach Employee |
| | | | | |

**Item 7. Endorsements Attached to This Policy: As listed On The Master Policy And Any Additional Forms Listed Here (if applicable)**

| | | |
|---|---|---|
| | | |
| | | |

March 2, 2023
Issued Date

Authorized Representative

THIS IS TO CERTIFY THAT THE COVERAGE OF INSURANCE LISTED ABOVE HAS BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE COVERAGE PERIOD INDICATED. THESE CERTIFICATE AND DECLARATIONS OF THE RISK PURCHASING GROUP, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.
THE INSURANCE AFFORDED BY THE POLICY DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF THE MASTER POLICY AND ANY ENDORSEMENTS LISTED ABOVE.

| PRG 142085 (12/22) | Includes copyrighted material of Insurance Services Office, Inc., with its permission. | Page 2 of 3 |
|---|---|---|

Response of Va. Motorsports Park, LLC, et al. 182

DEF_VMP_FRANKLIN000183

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

**RFP Response of Va. Motorsports Park, LLC, et al. 183**

91222 (9/16)

DEF_VMP_FRANKLIN000184

**POLICYHOLDER NOTICE**

**Taxes, Assessments and/or Surcharges**

The taxes, assessments and/or surcharges shown on the declarations page or any premium schedule are collected on behalf of the applicable State(s) and in accordance with such State's laws and regulations. The payment of these taxes, assessments and/or surcharges is the responsibility of the Named Insured. In the event the applicable State implements a new tax, assessment and/or surcharge or increases such tax, assessment and/or surcharge during the term of this policy, the Named Insured shall remain responsible for the payment of all amounts due under the policy, including those newly implemented or increased taxes, assessments and/or surcharges.

Any newly implemented or increased taxes, assessments and/or surcharges shall apply on the effective date dictated by the applicable State regardless:

1. Of when the Insurance Company implements the new or increased tax, assessment or surcharge into its systems; or
2. If the Insurance Company recalculates the Named Insured's premium in accordance with the policy's terms and conditions as part of a premium audit after the end of the policy period.

118477 (3/15)

**RFP Response of Va. Motorsports Park, LLC, et al. 184**

DEF_VMP_FRANKLIN000185

# __Notification__

## __CHANGE TO INSURER'S ADDRESS__

Please be advised that all references to the address 175 Water St, New York, NY 10038 contained in the Policy, Policy Declarations, riders, endorsements, and Policy notices are hereby deleted in their entirety and replaced with the following: 1271 Ave of the Americas FL 37, New York, NY 10020-1304

All other terms and conditions of the Policy remain the same.

141636 (5/21)

**RFP Response of Va. Motorsports Park, LLC, et al. 185**

DEF_VMP_FRANKLIN000186



## Umbrella Prime ®
## Commercial Umbrella Liability Policy With CrisisResponse ®

### DECLARATION

The company issuing this policy is indicated by an "X" in the box to the left of the company's name.

☐ AIG Property Casualty Company
☐ American Home Assurance Company
☐ AIG Assurance Company
☐ Commerce & Industry Insurance Company
☐ Granite State Insurance Company

☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pittsburg, Pa.
☐ New Hampshire Insurance Company
☐ The Insurance Company of the State of Pennsylvania

(each of the above being a capital stock company)
Administrative / Mailing Address: 1271 Ave of the Americas FL 37, New York, NY 10020
Telephone No. 212-458-5000

**POLICY NUMBER:**   29-UD-019919981-0                    **RENEWAL OF:**

**ITEM 1.**   **NAMED INSURED:**   PREFERRED MOTOR SPORTS RISK PURCHASING GROUP, LLC

   **MAILING ADDRESS:**   4300 MARKETPOINTE DR., SUITE 600, MINNEAPOLIS, MN 55435

**ITEM 2.**   **POLICY PERIOD:**   **FROM:**   01/25/2023    **TO:**   01/25/2025

(At 12:01 A.M. standard time, at the address of the Named Insured stated above.)

**ITEM 3.**   **LIMITS OF INSURANCE:**    * **REFER TO SUBSCRIBING MEMBER CERTIFICATE(S)**

The Limits of Insurance, subject to all the terms of this policy, are:

| A. | * | Each Occurrence |
|---|---|---|
| B. | * | General Aggregate (in accordance with Section IV. Limits of Insurance) |
| C. | * | Products-Completed Operations Aggregate (in accordance with Section IV. Limits of Insurance) |
| D. | Excluded | CrisisResponse Sublimit of Insurance |
| E. | Excluded | Excess Casualty CrisisFund Limit of Insurance |

**ITEM 4.**   **SCHEDULED UNDERLYING INSURANCE:** See Schedule of Underlying Insurance

**ITEM 5.**   **SELF-INSURED RETENTION: $0 Each Occurrence**

**ITEM 6.**   **PREMIUM AND PREMIUM COMPUTATION**          **REFER TO SUBSCRIBING MEMBER CERTIFICATE(S)**

| ESTIMATED TOTAL ANNUAL EXPOSURE | NOT APPLICABLE |
|---|---|
| RATE PER | FLAT |
| MINIMUM PREMIUM | |
| ADVANCE PREMIUM | |

**ITEM 7.**   **THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE:** <u>SEE ATTACHED SCHEDULE</u>

**PRODUCER NAME:**   SAFEHOLD SPECIAL RISK, INC
**ADDRESS:**   100 GLEN EAGLES COURT, CARROLLTON, GA 30117-0000

# RFP Response of Va. Motorsports Park, LLC, et al. 186

# National Union Fire Insurance Company

1271 Ave of the Americas FL 37, New York, NY 10020

## EXTENDED NAME SCHEDULE

POLICY NO: 29-UD-019 91 9981-0

**ACCOUNT NUMBER:**
**NAMED INSURED AND MAILING ADDRESS**

PREFERRED MOTOR SPORTS RISK PURCHASING
GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

**AGENCY AND MAILING ADDRESS**          103418

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
Carrollton, GA 30117-0000

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

Preferred Motor Sports Risk Purchasing Group, LLC and its Subscribing Members
Certificate(s) on File with the Company.  This Policy Applies to Each Subscribing Member
Per the Subscribing Member's Certificate, as if a Separate Policy were issued for Each

COUNTERSIGNED AT: _____     BY: _____

AUTHORIZED REPRESENTATIVE

02-12-23

# RFP Response of Va. Motorsports Park, LLC, et al. Page 187

DEF_VMP_FRANKLIN000188

# NATIONAL UNION FIRE INSURANCE COMPANY

1271 Ave of the Americas FL 37, New York, NY 10020

## INSTALLMENT PLAN

POLICY NO: 29-UD-019919981-0

**ACCOUNT NUMBER:**
**NAMED INSURED AND MAILING ADDRESS**

PREFERRED MOTOR SPORTS RISK PURCHASING
GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

**AGENCY AND MAILING ADDRESS**          103418

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
CARROLLTON, GA 30117-0000

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

**PREMIUM AMOUNT:**

DUE DATE               PREMIUM DUE
01/25/2023

REFER TO SUBSCRIBING MEMBER CERTIFICATE(S) FOR PREMIUM AMOUNT

**RFP Response of Va. Motorsports Park, LLC, et al. 188**

Page 1 of 1

02-12-23

DEF_VMP_FRANKLIN000189

**ADDENDUM TO THE DECLARATIONS**

By signing below, the President and the Secretary of the Insurer agree on behalf of the Insurer to all the terms of this Policy.

Michael Price
PRESIDENT

Tanya Kent
SECRETARY

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurance Company, either below or on the Declarations page of the Policy.

Thomas McGrath
AUTHORIZED COMPANY REPRESENTATIVE

Granite State Insurance Company
The Insurance Company of the State of Pennsylvania
Illinois National Insurance Co.
New Hampshire Insurance Company
American Home Assurance Company
National Union Fire Insurance Company of Pittsburgh, Pa.
Commerce and Industry Insurance Company

_____
COUNTERSIGNATURE
(only where required by law)

_____          _____
COUNTERSIGNATURE DATE                     COUNTERSIGNED AT

# RFP Response of Va. Motorsports Park, LLC, et al. 189

78711 (10-2020)

DEF_VMP_FRANKLIN000190

## SCHEDULE OF UNDERLYING INSURANCE

Issued to:   Preferred Motor Sports Risk Purchasing Group,    Policy Number:    29-UD-019919981-0 000
             LLC
    By:      National Union Fire Insurance Company

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO. AND POLICY PERIOD | LIMITS | |
|---|---|---|---|
| General Liability | Lexington Insurance Company | $1,000,000 | Each Occurrence |
| | | $5,000,000 | General Aggregate |
| | | $5,000,000 | Products/Completed Operations Aggregate |
| | | ☒ | Defense Expenses are in addition to the limit |

**REFER TO SUBSCRIBING MEMBER CERTIFICATE(S) FOR SCHEDULE OF UNDERLYING INSURANCE**

AUTHORIZED REPRESENTATIVE

# RFP Response of Va. Motorsports Park, LLC, et al. 190

| UNDSCH (5/99) | ©All rights reserved. | Page 1 of 1 |
|---|---|---|

DEF_VMP_FRANKLIN000191

# NATIONAL UNION FIRE INSURANCE COMPANY
## COMMERCIAL UMBRELLA POLICY

### FORMS SCHEDULE

| POLICY NO: | 29-UD-019919981-0 000 |
|---|---|

**ACCOUNT NUMBER:**

| NAMED INSURED AND MAILING ADDRESS | AGENCY AND MAILING ADDRESS |
|---|---|
| PREFERRED MOTOR SPORTS RISK PURCHASING GROUP, LLC<br>4300 MARRETPOINTE DR., SUITE 600<br>MINNEAPOLIS, MN 55435 | SAFEHOLD SPECIAL RISK, INC<br>100 GLEN EAGLES COURT<br>CARROLLTON, GA 30117-0000 |

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

| COMMON POLICY FORMS | | APPLICABLE COVERAGE PARTS |
|---|---|---|
| 118950 0220 | Terrorism Exclusion Certified and Non-Certified Acts Endorsement | Commercial Umbrella |
| 89644  0613 | Economic Sanctions Endorsement | Commercial Umbrella |
| 96555 0320 | Policyholder Disclosure Notice of Terrorism Insurance Coverage (Right to Purchase Coverage) | Commercial Umbrella |
| 76587  0909 | Minnesota Amendatory Endorsement | Commercial Umbrella |

| COMMERCIAL UMBRELLA FORMS | | APPLICABLE COVERAGE PARTS |
|---|---|---|
| 113512 0313 | Physical Abuse, Sexual Abuse or Molestation Exclusion Endorsement | Commercial Umbrella |
| 117617 0914 | CrisisResponse Exclusion | Commercial Umbrella |
| 121317 0216 | Violation of Communication or Information Law Exclusion Amendatory Endorsement | Commercial Umbrella |
| 80391 0110 | Additional Named Insured(s) | Commercial Umbrella |
| 80399 0702 | Automobile Liability Exclusion | Commercial Umbrella |
| 80417 0702 | Directors and Officers Liability Exclusion | Commercial Umbrella |
| 80419 0702 | Employee Benefits Liability Exclusion | Commercial Umbrella |
| 80479 0203 | Silica Exclusion Endorsement | Commercial Umbrella |
| 83070 0903 | Employers' Liability  Exclusion Endorsement | Commercial Umbrella |
| 83093 0505 | Professional Liability Exclusion Endorsement | Commercial Umbrella |
| 83094 0903 | Radioactive Matter Exclusion Endorsement | Commercial Umbrella |
| 86471 0206 | Lead Exclusion Endorsement | Commercial Umbrella |
| 90996 0506 | Fungus Exclusion With Edible Good Or Product Consumption Exception Endorsement | Commercial Umbrella |
| 99497 0608 | Violation of Economic or Trade Sanctions Condition Amendment Endorsement | Commercial Umbrella |
| 80394 0903 | Anti-Stacking Endorsement | Commercial Umbrella |
| 80411 0104 | Cross Suits Exclusion | Commercial Umbrella |
| 118632 0115 | Access or Disclosure of Confidential or Personal Information Exclusion Endorsement | Commercial Umbrella |
| 80517 1109 | Umbrella Prime Commercial Umbrella Liability Policy With CrisisResponse | Commercial Umbrella |

# RFP Response of Va. Motorsports Park, LLC, et al. 191

| FORMS SCHEDULE | | Page 1 of 1 |
|---|---|---|

# NATIONAL UNION FIRE INSURANCE COMPANY
## COMMERCIAL UMBRELLA POLICY

### FORMS SCHEDULE

| POLICY NO: | 29-UD-019919981-0 001 |
|---|---|

**ACCOUNT NUMBER:**
**NAMED INSURED AND MAILING ADDRESS**

PREFERRED MOTOR SPORTS RISK PURCHASING
GROUP, LLC
4300 MARKETPOINTE DR., SUITE 600
MINNEAPOLIS, MN 55435

**AGENCY AND MAILING ADDRESS**

SAFEHOLD SPECIAL RISK, INC
100 GLEN EAGLES COURT
CARROLLTON, GA 30117-0000

**POLICY PERIOD:** FROM 01/25/2023 TO 01/25/2025 AT 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

| COMMON POLICY FORMS | | APPLICABLE COVERAGE PARTS |
|---|---|---|
| 96555 0320 | Policyholder Disclosure Notice of Terrorism Insurance Coverage (Right to Purchase Coverage) | Commercial Umbrella Modified |

| COMMERCIAL UMBRELLA FORMS | | APPLICABLE COVERAGE PARTS |
|---|---|---|
| 119847 1016 | Policy Changes | Commercial Umbrella Added |
| 83060 0903 | Communicable Disease Exclusion Endorsement | Commercial Umbrella Added |

# RFP Response of Va. Motorsports Park, LLC, et al. 192

| FORMS SCHEDULE | | | Page 1 of 1 |
|---|---|---|---|

**Endorsement**

**This endorsement effective 12:01 a.m.,** 01/25/2023
**Forms a part of Policy No.:** 29-UD-019919981-0 001

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Communicable Disease Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Communicable Disease**

This insurance does not apply to:

1.    Any liability arising out of any **Communicable Disease;** or

2.    Any loss, cost or expense relating to the monitoring, clean-up, removal, containment, treatment, disposal, replacement or rehabilitation of real or personal property due to actual or suspected contamination by infectious bacteria or viral organisms capable of transmitting a **Communicable Disease.**

**Section VII. DEFINITIONS** is amended to include the following additional definition:

**Communicable Disease** means any infectious or contagious disease that can be transmitted, directly or indirectly, by any means, from person-to-person, animal-to-person, or animal-to-animal including but not limited to severe acute respiratory syndrome, acquired immune deficiency syndrome, hepatitis, herpes virus, venereal disease or sexually transmitted illness or condition.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative or
Countersignature (Where Applicable)

# RFP Response of Va. Motorsports Park, LLC, et al. 193

83060 (09/03)

DEF_VMP_FRANKLIN000194

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.:  29-UD-019919981-0 000

**Commercial Umbrella Liability Policy with CrisisResponse®**

**PHYSICAL ABUSE, SEXUAL ABUSE OR MOLESTATION EXCLUSION
ENDORSEMENT**

This endorsement modifies insurance provided under the following:
Commercial Umbrella Liability Policy with CrisisResponse®

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Physical Abuse, Sexual Abuse or Molestation**

This insurance does not apply to any liability of any person by any person, arising out of:

1.     Any actual, threatened or alleged, sexual abuse, sexual molestation, sexual harassment, sexual misconduct, physical abuse, mental abuse, physical assault, sexual assault, sexual victimization, sexual intimacy (even if consensual), sexual contact, sexual advances, sexual exploitation, requests for sexual favors, verbal or physical conduct of a sexual nature, coercion to engage in sexual activities, licentious or immoral misconduct, and any resulting mental or emotional injury; or

2.     The negligent employment, investigation, supervision, reporting to the proper authorities or failure to so report, or the retention of any person for whom any **Insured** is or has ever been legally responsible and whose conduct would be excluded by Paragraph 1. above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature  (Where Applicable)

| 113512 (3/13) | Includes copyrighted material of Insurance Services Office, Inc., | Page 1 of 1 |
|---|---|---|

RFP Response of Va. Motorsports
Park, LLC, et al. 194

DEF_VMP_FRANKLIN000195

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**CRISISRESPONSE® EXCLUSION**

This endorsement modifies insurance provided under the following:

Commercial Umbrella Liability Policy with CrisisResponse®

This policy is amended by removing CrisisResponse® coverage as follows:

A. **SECTION II. INSURING AGREEMENT – CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®** is deleted in its entirety.

B. **SECTION IV. LIMITS OF INSURANCE** is amended by deleting paragraphs I., J. and K.

C. **SECTION VII. DEFINITIONS** is amended by deleting paragraphs D., E., F., G., H., I. and J.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

| 117617 (9/14) | ©All rights reserved. | Page 1 of 1 |
|---|---|---|

**RFP Response of Va. Motorsports Park, LLC, et al. 195**

DEF_VMP_FRANKLIN000196

**ENDORSEMENT**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

## TERRORISM EXCLUSION – CERTIFIED AND NON-CERTIFIED ACTS ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

I.   **Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **certified act of terrorism** as defined in the Terrorism Risk Insurance Act of 2002, as amended (hereinafter, "TRIA") regardless of any other cause or event contributing concurrently or in any sequence with a **certified act of terrorism.**

**Certified act of terrorism** means any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

A.   to be an act of terrorism;

B.   to be a violent act or an act that is dangerous to:

  1.   human life;

  2.   property; or

  3.   infrastructure;

C.   to have resulted in damage within the United States, or outside of the United States in the case of:

  1.   an air carrier or vessel [described in TRIA]; or

  2.   the premises of a United States mission; and

D.   to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

II.   **Non-Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **non-certified act of terrorism** regardless of any other cause or event contributing concurrently or in any sequence with a **non-certified act of terrorism.**

A.   **Non-certified act of terrorism** means any act that is not a **certified act of terrorism** as defined herein and:

  1.   involves the use of force or violence against person or property; or

**RFP Response of Va. Motorsports Park, LLC, et al. 196**

118950 (2/20)     ©2020 American International Group, Inc.
All Rights Reserved.     Page 1 of 3

DEF_VMP_FRANKLIN000197

2. is dangerous to human life or property; or

3. interferes with or disrupts an electronic or communication system; and

4. is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

   a. a government;

   b. the civilian population of a country, state or community; or

   c. to disrupt the economy of a country, state or community.

B. However, the exclusion provided under Subsection II.A. only applies when one or more of the following are attributed to an incident of a non-certified act of terrorism.

1. The non-certified act of terrorism involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of:

   a. Any nuclear reaction;

   b. Radioactive materials or nuclear materials in any form and from any source;

   c. Radionuclides;

   d. Radiation emitted from any radioactive source whether natural or manmade; and/or

   e. Electromagnetic pulses; or

2. The non-certified act of terrorism involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of pathogenic or poisonous chemical or biological materials, whether natural, manmade, living or dead; or

3. The total insured industry-wide losses exceed $25,000,000. In determining whether the $25,000,000 threshold is exceeded, the Company will include all insured industry-wide loss or damage sustained by all persons and entities affected by the non-certified act of terrorism. For the purpose of this provision, insured industry-wide loss or damage means loss or damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

   Multiple incidents of non-certified acts of terrorism which occur within a 72-hour period and objectively appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in this Subsection II.B.3. are met.

4. With respect to commercial liability policies, fifty or more persons sustain death or serious physical injury. For purposes of this provision, serious physical injury means:

   a. Physical injury that involves substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

# RFP Response of Va. Motorsports Park, LLC, et al. 197

118950 (2/20)    ©2020 American International Group, Inc.   Page 2 of 3<br>All Rights Reserved.

DEF_VMP_FRANKLIN000198

**III. With respect to commercial property policies:**

A.  If a certified act of terrorism or non-certified act of terrorism (hereinafter, collectively an **act of terrorism**) results in an ensuing fire, this Policy covers such loss or damage caused by such fire following, subject to the Policy's terms and conditions, <u>but only if</u> the covered property insured hereunder is located in a state of the United States, the District of Columbia, Puerto Rico or a territory or possession of the United States that, pursuant to an applicable standard fire policy statute, regulation or other law, prohibits the exclusion of fire following an **act of terrorism**. Such coverage for fire following an **act of terrorism** applies only to direct physical loss or damage to covered property insured hereunder, and to no other coverage provided by the Policy.

B.  Notwithstanding Subsection III.A. above, to the extent not prohibited by the law of the jurisdiction to which this Policy is subject, this Policy does not cover fire following an **act of terrorism** that involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of any nuclear reaction; radioactive materials or nuclear materials in any form and from any source; radionuclides; radiation emitted from any radioactive source whether natural or manmade; electromagnetic pulses; and/or pathogenic or poisonous chemical or biological materials, whether natural, manmade, living or dead.

C.  Notwithstanding any other valuation provision of this Policy to the contrary, any covered property insured hereunder that sustains loss or damage due to fire following an **act of terrorism**, covered pursuant to Subsection III.A. above, shall be valued at Actual Cash Value at the time and place of the loss.

**IV. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Policy, such as losses excluded by a nuclear exclusion, pollution exclusion or war exclusion.

**V. Definitions:** The following definitions apply to this endorsement:

A.  **Nuclear materials** means source material, special nuclear material or by-product material. Source material, special nuclear material, and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

B.  **Biological materials** include all microorganisms, viruses, rickettsia, prions, nucleic acids, toxins, toxin-producing agents, and poisons produced by biological organisms.

All other terms and conditions of the Policy remain the same.

---

Authorized Representative

**RFP Response of Va. Motorsports Park, LLC, et al. 198**

DEF_VMP_FRANKLIN000199

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**VIOLATION OF COMMUNICATION OR INFORMATION LAW EXCLUSION**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

Commercial Umbrella Liability Policy with CrisisResponse®

**TO THE EXTENT ANY PROVISION OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OR ANY OF THE POLICY'S OTHER ENDORSEMENTS CONFLICT WITH THE PROVISIONS OF THIS ENDORSEMENT, THE PROVISIONS OF THIS ENDORSEMENT SHALL SUPERSEDE.**

This policy is amended as follows:

**Section V. EXCLUSIONS,** Paragraph W. is deleted in its entirety and replaced by the following:

**W.     Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, which addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

| 121317 (2/16) | | |
|---|---|---|

All rights reserved

**REP Response of Va. Motorsports Park, LLC, et al. 199**

DEF_VMP_FRANKLIN000200

ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

Commercial Umbrella Liability Policy with CrisisResponse℠

Additional Named Insured(s)

This policy is amended as follows:

**DECLARATIONS, Item 1** is amended by adding the following as **Named Insured(s)** under this policy:
Preferred Motor Sports Risk Purchasing Group, LLC and its Subscribing Members Certificate(s) on File
with the Company.  This Policy Applies to Each Subscribing Member Per the Subscribing Member's
Certificate, as if a Separate Policy were issued for Each

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

RFP Response of Va. Motorsports
Park, LLC, et al. 200

| | | |
|---|---|---|
| 80391 (1/10) | ©All rights reserved. | Page 1 of 1 |

DEF_VMP_FRANKLIN000201

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**REFER TO SUBSCRIBING MEMBER CERTIFICATE(S)**
**AUTOMOBILE LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

Commercial Umbrella Liability Policy with CrisisResponse®

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Automobile Liability**

This insurance does not apply to any liability arising out of the ownership, maintenance, use or entrustment to others of any **Auto** owned or operated by or rented or loaned to any **Insured**. Use includes operation and loading and unloading.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative
or Countersignature
(Where Applicable)

| 80399 (7/02) | | |
|---|---|---|

RFP Response of Va. Motorsports
Park, LLC, et al. 201

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**DIRECTORS AND OFFICERS LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

Commercial Umbrella Liability Policy with CrisisResponse®

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Directors and Officers Liability**

This insurance does not apply to any liability of the **Named Insured** or of a director or officer of the **Named Insured** arising out of any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such directors or officers in their respective capacities as such, or any matter claimed against them solely by reason of their status or capacity as directors or officers of the **Named Insured.**

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature
(in States Where Applicable)

| | |
|---|---|
| 80417 (7/02) | |

**RFP Response of Va. Motorsports Park, LLC, et al. 202**

DEF_VMP_FRANKLIN000203

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**EMPLOYEE BENEFITS LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

Commercial Umbrella Liability Policy with CrisisResponse®

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employee Benefits Liability**

This insurance does not apply to any liability arising out of:

1. any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

   a. giving counsel to employees with respect to a **plan**;

   b. interpreting a **plan**;

   c. handling of records in connection with a **plan**;

   d. effecting enrollment, termination or cancellation of employees under a **plan**; or

   e. any claim against an **Insured** solely by reason of his, her or its status as an administrator, the **plan** or you as sponsor of the **plan**.

**ERISA** as used in this endorsement means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **plan** is subject.

**Plan** as used in this endorsement means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

| 80419 (7/02) | | RFP Response of Va. Motorsports Park, LLC, et al. 203 |
| --- | --- | --- |

DEF_VMP_FRANKLIN000204

1. a welfare plan, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. a pension plan as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits; or

3. a combination of 1. or 2. above.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative or Countersignature
(Where Applicable)

| 80419 (7/02) | |
|---|---|

REP Response of Va. Motorsports Park, LLC, et al. 204

DEF_VMP_FRANKLIN000205

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Silica Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

Any liability arising out of **Silica**, **Silica** fiber(s) or **Silica Dust** or any product(s) containing **Silica**, **Silica** fiber(s) or **Silica Dust**.

**Section VII. DEFINITIONS** is amended to include the following additional definitions:

**Silica** means:

1.    The substance commonly known as **Silica**; and

2.    Any substance or product which has the same or substantially similar chemical formulation, structure or function as **Silica**, by whatever name manufactured, formulated, structured, sold or distributed.

**Silica Dust** means:

1.    Dust comprising of **Silica** only; and

2.    Dust comprising of **Silica** mixed with other dust or fiber(s) including, but not limited to, asbestos fibers.

**IT IS UNDERSTOOD THAT TO THE EXTENT ANY COVERAGE MAY OTHERWISE BE PROVIDED UNDER THIS POLICY OR ANY OF ITS ENDORSEMENTS, THE PROVISIONS OF THIS EXCLUSION WILL SUPERCEDE.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

| 80479 (2/03) | |
|---|---|

RFP Response of Va. Motorsports
Park, LLC, et al. 205

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**REFER TO SUBSCRIBING MEMBER CERTIFICATE(S)**

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Employers' Liability Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Employers' Liability**

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative or Countersignature (Where Applicable)

| 83070 (9/03) | ©All rights reserved. | Page 1 of 1 |

**RFP Response of Va. Motorsports Park, LLC, et al. 206**

DEF_VMP_FRANKLIN000207

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Professional Liability Exclusion Endorsement**

This policy is amended as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

**Professional Liability**

This insurance does not apply to any liability arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

It is understood this exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

| 83093 (5/05) | |
|---|---|

All rights reserved

Page 1 of 1

**RFP Response of Va. Motorsports Park, LLC, et al. 207**

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.,  01/25/2023
Forms a part of Policy No.:  29-UD-019919981-0 000

**RADIOACTIVE MATTER EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:
Commercial Umbrella Liability Policy with CrisisResponse®

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Radioactive Matter**

This insurance does not apply to any liability arising out of radioactive matter or any form of radiation.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

RFP Response of Va. Motorsports Park, LLC, et al. 208

DEF_VMP_FRANKLIN00209

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.:  29-UO-019919981-0 000

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Lead Exclusion Endorsement**

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Lead**

This insurance does not apply to any liability arising out of lead or the lead content of products.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

| 86471 (2/06) | |
|---|---|

RFP Response of Va. Motorsports Park, LLC, et al. 209

DEF_VMP_FRANKLIN000210

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Policy No: 29-UD-019919981-0

Effective 12:01 a.m. 01/25/2023

**ECONOMIC SANCTIONS ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

# RFP Response of Va. Motorsports Park, LLC, et al. 210

89644 6-13

DEF_VMP_FRANKLIN000211

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**FUNGUS EXCLUSION WITH EDIBLE GOOD OR PRODUCT CONSUMPTION EXCEPTION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

Commercial Umbrella Liability Policy with Crisis Response®

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

This insurance does not apply to:

**Bodily Injury, Property Damage or Personal Injury and Advertising Injury** or any other loss, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    a.  Any **Fungus(i)**, **Molds(s)**, mildew or yeast; or

    b.  Any **Spore(s)** or toxins created or produced by or emanating from such **Fungus(i)**, **Mold(s)**, mildew or yeast; or

    c.  Any substance, vapor , gas, or other emission or organic or inorganic body or substance produced by or arising out of any **Fungus(i)**, **Mold(s)**, mildew or yeast; or

    d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **Fungus(i)**, **Mold(s)**, mildew, yeast, or **Spore(s)** or toxins emanating therefrom.

Paragraphs a., b., c. and d. above apply regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

Notwithstanding the foregoing, this exclusion shall not apply to **Bodily Injury** or **Property Damage** caused by any **Fungus(i)** that are, are on, or contained in, an edible good or edible product intended for human or animal consumption.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its endorsements, the provisions of this exclusion will supersede.

| 90996 (5/06) | © All rights reserved. | Page 1 of 2 |

RFP Response of Va. Motorsports Park, LLC, et al. 211

DEF_VMP_FRANKLIN000212

Section VII. DEFINITIONS is amended to include the following additional definitions:

**Fungus(i)** includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

**Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

**Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **Fungus(i)**, **Mold(s)**, mildew, plants, organisms or microorganisms.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
or Countersignature (Where Applicable)

| 90996 (5/06) | ©All rights reserved. | Page 2 of 2 |

RFP Response of Va. Motorsports Park, LLC, et al. 212

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% BEGINNING ON JANUARY 1, 2020 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

|   | I hereby elect to purchase terrorism coverage for a prospective premium of $_. |
|---|---|
| X | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____          _____
Policyholder/Applicant's Printed Name          Date

96555 (3/20)
© 2020 National Association of Insurance Commissioners

# RFP Response of Va. Motorsports
# Park, LLC, et al. 213

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**Commercial Umbrella Liability Policy With CrisisResponse®**

**Violation of Economic or Trade Sanctions Condition Amendment Endorsement**

This policy is amended as follows:

**Section VI. CONDITIONS, Paragraph R. Violation of Economic or Trade Sanctions** is deleted in its entirety.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____

Authorized Representative or
Countersignature (Where Applicable)

| 99497 (6/08) | | ©All Rights Reserved |
|---|---|---|

**RFP Response of Va. Motorsports Park, LLC, et al. 214**

**Umbrella Prime®**
**Commercial Umbrella Liability Policy With**
**CrisisResponse®**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word Insured means any person or organization qualifying as such under Section VII. Definitions. Except

for headings, words that appear in bold print have special meaning. See Section VII. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

| I.    INSURING AGREEMENT - COMMERCIAL UMBRELLA LIABILITY |

A.  We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies or because of Bodily Injury or Property Damage to which this insurance applies assumed by the Insured under an Insured Contract.

   The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.  This policy applies, only if:

   1.  the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period; and

   2.  the Personal Injury and Advertising Injury is caused by an Occurrence that takes place anywhere arising out of your business, but only if the Occurrence was committed during the Policy Period.

C.  1.  This policy applies to Bodily Injury or Property Damage, only if prior to the Policy Period, no Insured listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., no executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. and no employee authorized by you to give or receive notice of an Occurrence, claim or Suit, knew that the Bodily Injury or Property Damage had occurred, in whole or in part. If such an Insured or authorized employee knew, prior to the Policy Period, that the Bodily Injury or Property Damage had occurred, then any continuation, change or resumption of such Bodily Injury or Property Damage during or after the Policy Period will be deemed to have been known prior to the Policy Period.

   2.  Bodily Injury or Property Damage which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any Insured listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII., any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee authorized by you to give or receive notice of an Occurrence or claim, includes any continuation, change or resumption of that Bodily Injury or Property Damage after the end of the Policy Period.

D.  Bodily Injury or Property Damage will be deemed to have been known to have occurred at the earliest time when any Insured listed under subparagraphs 2a., 2b., 2c. or 2e. of Paragraph M. of Section VII, any executive officer or director listed under subparagraph 2d. of Paragraph M. of Section VII. or any employee who was authorized by you to give or receive notice of an Occurrence, claim or Suit:

**RFP Response of Va. Motorsports Park, LLC, et al. 215**

1. reports all, or any part, of the Bodily Injury or Property Damage to us or any other insurer;

2. receives a written or verbal demand or claim for damages because of the Bodily Injury or Property Damage; or

3. becomes aware by any other means that Bodily Injury or Property Damage has occurred or has begun to occur.

E. Damages because of Bodily Injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the Bodily Injury.

F. If we are prevented by law or statute from paying damages covered by this policy on behalf of the Insured, then we will indemnify the Insured for those sums in excess of the Retained Limit.

---

## II. INSURING AGREEMENT-CRISISRESPONSE® AND EXCESS CASUALTY CRISISFUND®

A. CrisisResponse

We will advance CrisisResponse Costs directly to third parties on behalf of the Named Insured, regardless of fault, arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the CrisisResponse Sublimit of Insurance.

B. Excess Casualty CrisisFund

We will pay Crisis Management Loss on behalf of the Named Insured arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the Excess Casualty CrisisFund Limit of Insurance.

C. A Crisis Management Event will first commence at the time during the Policy Period when a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event and will end when we determine that a crisis no longer exists or when the CrisisResponse Sublimit of Insurance has been exhausted, whichever occurs first.

D. There will be no Retained Limit applicable to CrisisResponse Costs or Crisis Management Loss.

E. Any advancement of CrisisResponse Costs or payment of Crisis Management Loss that we make under the coverage provided by this Section II. will not be a determination of our obligations under this policy, nor create any duty to defend any Suit under any other part of this policy.

---

## III. DEFENSE PROVISIONS

A. We will have the right and duty to defend any Suit against the Insured that seeks damages for Bodily Injury, Property Damage or Personal Injury and Advertising Injury covered by this policy, even if the Suit is groundless, false or fraudulent when:

1. the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss to which this policy applies and the total applicable limits of Other Insurance have been exhausted; or

2. the damages sought because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury would not be covered by Scheduled Underlying Insurance or any applicable Other Insurance, even if the total applicable limits of either the Scheduled Underlying Insurance or any applicable Other Insurance had not been exhausted by the payment of Loss.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

# RFP Response of Va. Motorsports Park, LLC, et al. 216

B.  We will have no duty to defend the Insured against any Suit seeking damages for **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

C.  When we assume the defense of any Suit against the Insured that seeks damages covered by this policy, we will:

1.  investigate, negotiate and settle the Suit as we deem expedient; and

2.  pay the following supplementary payments to the extent that such payments are not covered by **Scheduled Underlying Insurance** or any applicable **Other Insurance**:

    a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    b.  premiums on appeal bonds required by law to appeal a judgment in a Suit for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    c.  all court costs taxed against the Insured in the Suit;

    d.  pre-judgment interest awarded against the Insured on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest accruing after we make such offer;

    e.  post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    f.  the Insured's expenses incurred at our request or with our consent.

D.  Except as provided in Paragraph A. above, we will have no duty to defend any Suit against the Insured. We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

E.  We will not defend any Suit, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of Loss and we will have the right to withdraw from the further defense of such Suit by tendering control of said defense to the Insured.

| IV. LIMITS OF INSURANCE |
| --- |

A.  The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all damages under this policy regardless of the number of:

1.  Insureds;

2.  claims made or Suits brought;

3.  persons or organizations making claims or bringing Suits; or

4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3. of the Declarations is the most we will pay for all damages under this policy, except for:

1.  damages included within the Products-Completed Operations Hazard; and

2.  damages because of **Bodily Injury** or **Property Damage** to which this policy applies, caused by an **Occurrence** and resulting from the ownership, maintenance or use of an **Auto** covered under **Scheduled Underlying Insurance**.

# RFP Response of Va. Motorsports Park, LLC, et al. 217

80517 (11/09)

© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission

DEF_VMP_FRANKLIN000218

C.  The Products-Completed Operations Aggregate Limit stated in Item 3C. of the Declarations is the most we will pay  for all damages included in the Products-Completed Operations Hazard.

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3A. of the Declarations is the most we will pay for the sum of all damages arising out of any one Occurrence.

E.  Subject to Paragraphs B. and C. above, the most we will pay for damages under this policy on behalf of any person  or organization to whom you are obligated by written Insured Contract to provide insurance such as is afforded by  this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written Insured Contract.

F.  This policy applies only in excess of the Retained Limit. If however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

   1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount of valid and collectible insurance; or

   2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

G.  If the total applicable limits of Scheduled Underlying Insurance are reduced or exhausted by the payment of Loss to which this policy applies and the total applicable limits of applicable Other Insurance are reduced or exhausted, we will:

   1.  in the event of reduction, pay excess of the remaining total applicable limits of Scheduled Underlying Insurance and any applicable Other Insurance; and

   2.  in the event of exhaustion, continue in force as underlying insurance.

H.  Expenses incurred to defend any Suit or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy. Provided, however, that if such expenses reduce the applicable limits of Scheduled Underlying Insurance, then such expenses will reduce the applicable Limits of Insurance of this policy.

I.  The CrisisResponse Sublimit of Insurance is the most we will pay for all CrisisResponse Costs under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This CrisisResponse Sublimit of Insurance will be part of, not in addition to, the applicable Limit of Insurance.

J.  The Excess Casualty CrisisFund Limit of Insurance is the most we will pay for all Crisis Management Loss under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This Excess Casualty CrisisFund Limit of Insurance will be in addition to the applicable Limit of Insurance.

K.  We will have no obligation to advance CrisisResponse Costs when we determine that a Crisis Management Event has ended or when the CrisisResponse Sublimit of Insurance has been exhausted, whichever occurs first.

L.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

M.  We will not make any payment under this policy unless and until:

   1.  the total applicable limits of Scheduled Underlying Insurance have been exhausted by the payment of Loss  to which this policy applies and any applicable, Other Insurance have been exhausted by the payment of Loss; or

# RFP Response of Va. Motorsports Park, LLC, et al. 218

Includes copyrighted material of Insurance Services Office, Inc. with its permission DEF_VMP_FRANKLIN000219

2. the total applicable Self-Insured Retention has been satisfied by the payment of Loss to which this policy applies.

When the amount of Loss has been determined by an agreed settlement or a final judgment, we will promptly pay on behalf of the Insured the amount of such Loss falling within the terms of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

## V. EXCLUSIONS

A. Aircraft and Watercraft

This insurance does not apply to Bodily Injury or Property Damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and loading and unloading.

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the Occurrence which caused the Bodily Injury or Property Damage involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to a watercraft you do not own that is:

1. less than 26 feet long; and

2. not being used to carry persons or property for a charge.

B. Asbestos

This insurance does not apply to any liability arising out of:

1. the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos containing products or materials, asbestos fibers or asbestos dust;

2. any obligation of the Insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3. any obligation to defend any Suit or claim against the Insured that seeks damages if such Suit or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

C. Contractual Liability

This insurance does not apply to any liability for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. that the Insured would have in the absence of a contract or agreement; or

2. assumed in an Insured Contract, provided Bodily Injury or Property Damage occurs subsequent to the execution of the Insured Contract. Solely for the purposes of liability assumed in an Insured Contract, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of Bodily Injury or Property Damage and included in the Limits of Insurance of this policy, provided:

a. liability to such party for, or for the cost of, that party's defense has also been assumed in the same Insured Contract; and

# RFP Response of Va. Motorsports Park, LLC, et al. 219

DEF_VMP_FRANKLIN000220

b. such attorney fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this policy applies are alleged.

D. **Damage to Impaired Property or Property Not Physically Injured**

This insurance does not apply to Property Damage to Impaired Property or property that has not been physically injured, arising out of:

1. a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or

2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use.

E. **Damage to Property**

This insurance does not apply to Property Damage to:

1. property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

2. premises you sell, give away or abandon, if the Property Damage arises out of any part of those premises;

3. property loaned to you;

4. personal property in the care, custody or control of the Insured;

5. that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the Property Damage arises out of those operations; or

6. that particular part of any property that must be restored, repaired or replaced because Your Work was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are Your Work and were never occupied, rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6. of this exclusion does not apply to Property Damage included in the Products-Completed Operations Hazard.

F. **Damage to Your Product**

This insurance does not apply to Property Damage to Your Product arising out of it or any part of it.

G. **Damage to Your Work**

This insurance does not apply to Property Damage to Your Work arising out of it or any part of it and included in the Products-Completed Operations Hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

H. **Electronic Chatrooms or Bulletin Boards and Electronic Data**

# RFP Response of Va. Motorsports Park, LLC, et al. 220

This insurance does not apply to Personal Injury and Advertising Injury arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control. Additionally, this insurance does not apply to damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I.  **Employees and Volunteers**

This insurance does not apply to liability of any employee or volunteer qualifying as an Insured under this policy arising out of Bodily Injury, Property Damage or Personal Injury and Advertising Injury:

1.  to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to an employee of yours while in the course of his or her employment or performing duties related to the conduct of your business, or to another volunteer of yours while performing duties related to the conduct of your business;

2.  to the spouse, child, parent, brother or sister of such injured employee or volunteer as a consequence of subparagraph 1. above;

3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in subparagraphs 1. or 2. above; or

4.  arising out of his or her providing or failing to provide professional health care services.

Paragraphs 1., 2. and 3. shall not apply to any liability arising out of Bodily Injury or Personal Injury and Advertising Injury if such coverage is provided by Scheduled Underlying Insurance. Coverage under this policy for Bodily Injury or Personal Injury and Advertising Injury will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

J.  **Employment Practices**

This insurance does not apply to any liability arising out of:

1.  failure to hire any prospective employee or any applicant for employment;

2.  dismissal, discharge or termination of any employee;

3.  failure to promote or advance any employee; or

4.  employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective employee, including, but not limited to:

    a.  coercion, harassment, humiliation or discrimination;
    b.  demotion, evaluation, reassignment, discipline, or retaliation;
    c.  libel, slander, humiliation, defamation, or invasion of privacy; or
    d.  violation of civil rights.

This exclusion applies:

1.  whether the Insured may be liable as an employer or in any other capacity; and

2.  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

# RFP Response of Va. Motorsports Park, LLC, et al. 221

80517 (11/09)

DEF_VMP_FRANKLIN000222

K. **Expected or Intended Injury**

This insurance does not apply to Bodily Injury and Property Damage expected or intended from the standpoint of the Insured. However, this exclusion does not apply to Bodily Injury or Property Damage resulting from the use of reasonable force to protect persons or property.

L. **Infringement of Copyright, Patent, Trademark or Trade Secret**

This insurance does not apply to Personal Injury and Advertising Injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your Advertisement, of copyright, trade dress or slogan.

M. **Liquor Liability**

This insurance does not apply to Bodily Injury or Property Damage for which any Insured may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, this exclusion will not apply if coverage is provided for such Bodily Injury or Property Damage by Scheduled Underlying Insurance.

Coverage under this policy for such Bodily Injury or Property Damage will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

N. **Media and Internet Type Businesses**

This insurance does not apply to Personal Injury and Advertising Injury committed by any Insured whose business is:

1. advertising, broadcasting, publishing or telecasting;

2. designing or determining content of web-sites for others; or

3. an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs U1., U2. and U3. of Section VII.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

O. **"No-Fault," "Uninsured Motorist" or "Underinsured Motorist" Laws**

This insurance does not apply to any obligation of the Insured under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law, or any similar law.

P. **Nuclear Liability**

This insurance does not apply to:

1. any liability:

**RFP Response of Va. Motorsports Park, LLC, et al. 222**

a.  with respect to which the Insured is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability;

b.  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendment or revision thereto, or any similar law, (2) the Insured is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.  for **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material if:

    i)   the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured**'s behalf or (2) has been discharged or dispensed therefrom;

    ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured**'s behalf; or

    iii) the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories  or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

2.  As used in this exclusion:

    a.  "hazardous properties" includes radioactive, toxic or explosive properties;

    b.  "nuclear material" means source material, special nuclear material or by-product material;

    c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in  the Atomic Energy Act of 1954 or any amendment or revision thereto ;

    d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

    f.  "nuclear facility" means:

        i)   any nuclear reactor;

        ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

        iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

        iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and

        includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

# RFP Response of Va. Motorsports Park, LLC, et al. 223

© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

DEF_VMP_FRANKLIN000224

g. "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h. **Property Damage** includes all forms of radioactive contamination of property.

Q. **Pollution**

This insurance does not apply to:

1. Any **Bodily Injury, Property Damage** or **Personal Injury** and **Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

However, Paragraph 1 of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance**:

1) **Products-Completed Operations Hazard**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

a) discarded, dumped, abandoned, thrown away; or

b) transported, handled, stored, treated, disposed of or processed as waste;

by anyone.

2) **Hostile Fire**

Paragraph 1. of this exclusion does not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3) **Equipment to Cool, Dehumidify, or Heat the Building and Contractor/Lessee Operations**

Paragraph 1. of this exclusion does not apply to:

a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment used to heat water for personal use, by the building's occupants or their guests;

b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment**

Paragraph 1. of this exclusion does not apply to:

# RFP Response of Va. Motorsports Park, LLC, et al. 224

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
DEF_VMP_FRANKLIN000225

a) Bodily Injury or Property Damage arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of Mobile Equipment or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the Bodily Injury or Property Damage arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

b) Bodily Injury or Property Damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) Fuels, Lubricants, Fluids, etc. – Auto

Paragraph 1. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar Pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an Auto covered by Scheduled Underlying Insurance or its parts, if:

a) the Pollutants escape, seep, migrate, or are discharged, dispersed or released directly from an Auto part designed by its manufacturer to hold, store, receive or dispose of such Pollutants; and

b) the Bodily Injury or Property Damage does not arise out of the operation of any equipment shown in Paragraphs 6b and 6c of the definition of Mobile Equipment.

6) Upset, Overturn or Damage of an Auto

Paragraph 1. of this exclusion does not apply to Occurrences that take place away from premises owned by or rented to an Insured with respect to Pollutants not in or upon an Auto covered by Scheduled Underlying Insurance if:

a) the Pollutants or any property in which the Pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an Auto covered by Scheduled Underlying Insurance; and

b) the discharge, dispersal, seepage, migration, release or escape of the Pollutants is caused directly by such upset, overturn or damage.

Coverage under this policy for such Bodily Injury or Property Damage as is described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

R.  Recall of Your Product, Your Work or Impaired Property

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  Your Product;

2.  Your Work; or

3.  Impaired Property;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

S.  Securities

# RFP Response of Va. Motorsports Park, LLC, et al. 225

© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
DEF_VMP_FRANKLIN000226

This insurance does not apply to any liability arising out of:

1. any violation of any securities law or similar law or any regulation promulgated thereunder;

2. the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

3. any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

4. any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

T. **Unauthorized Use of Another's Name or Product**

This insurance does not apply to Personal Injury and Advertising Injury arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

U. **Various Personal Injury and Advertising Injury**

This insurance does not apply to Personal Injury and Advertising Injury:

1. caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict Personal Injury and Advertising Injury;

2. arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any Insured with knowledge of its falsity;

3. arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the Policy Period;

4. arising out of a criminal act committed by or at the direction of the Insured;

5. for which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement;

6. arising out of a breach of contract, except an implied contract to use another's advertising idea in your Advertisement;

7. arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your Advertisement; or

8. arising out of the wrong description of the price of goods, products or services stated in your Advertisement.

V. **Various Laws**

This insurance does not apply to any obligation of the Insured under any of the following:

1. the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or

2. any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

W. **Violation of Communication or Information Law**

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

**RFP Response of Va. Motorsports Park, LLC, et al. 226**

© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

DEF_VMP_FRANKLIN000227

X. War

This insurance does not apply to Loss, costs, injury, damage, claim, dispute and/or or suit arising therefrom, caused directly or indirectly, in whole or in part, as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes:

1. Civil war; or

2. Armed conflict between two or more nations, armed conflict between military forces of any origin, or warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## VI. CONDITIONS

A. Appeals

If the Insured or the Insured's underlying insurers do not appeal a judgment in excess of the total applicable limits of Scheduled Underlying Insurance, we may elect to do so. If we appeal, we will be liable for, in addition to the applicable Limits of Insurance of this policy, all court costs, expenses incurred and interest on that amount of any judgment which does not exceed the applicable Limits of Insurance of this policy incidental to such an appeal.

B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C. Bankruptcy or Insolvency

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of Loss covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under Scheduled Underlying Insurance.

D. Cancellation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3. The Policy Period will end on the day and hour stated in the cancellation notice.

4. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 6. of the Declarations.

5. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 6 of the Declarations.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check

RFP Response of Va. Motorsports Park, LLC, et al. 227

or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

7. The first **Named Insured** in Item 1. of the Declarations will act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8. Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.  **Change In Control**

If during the **Policy Period:**

1. the first **Named Insured** designated in Item 1. of the Declarations consolidates with or merges into, or sells all or substantially all of its assets to any person or entity; or

2. any person or entity acquires an amount of the outstanding ownership interests representing more than 50% of the voting or designation power for the election of directors of the first **Named Insured** designated in Item 1. of the Declarations, or acquires the voting or designation rights of such an amount of ownership interests;

this policy will continue in full force and effect as to **Bodily Injury** and **Property Damage** that occur prior to the effective date of such transaction and **Personal Injury** and **Advertising Injury** caused by an **Occurrence** that takes place prior to the effective date of such transaction.

Coverage will be afforded by this policy for **Bodily Injury** or **Property Damage** that occurs on or after the effective date of such transaction and **Personal Injury** and **Advertising Injury** caused by an **Occurrence** that takes place on or after the effective date of such transaction if the **Named Insured** notifies us of the transaction no later than ninety (90) days after the effective date of the transaction.

If the **Named Insured** fails to notify us within ninety (90) days of the effective date of such transaction coverage afforded by this policy will cease on the ninetieth (90th) day after the effective date of such transaction at 12:01 am standard time of the address of the **Named Insured** shown in Item 1. of the Declarations or the end of the **Policy Period,** whichever is earlier.

The provisions of paragraph E. shall only apply to transactions with third parties not under control or ownership of the **Named Insured** on the inception date of this policy.

F.  **Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

G.  **Duties in the Event of an Occurrence, Claim or Suit**

1. You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

   a.  how, when and where the **Occurrence** took place;

   b.  the names and addresses of any injured persons and any witnesses; and

   c.  the nature and location of any injury or damage arising out of the **Occurrence.**

2. If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.

Written notice should be mailed, delivered, faxed or emailed to:

# RFP Response of Va. Motorsports Park, LLC, et al. 228

© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission. DEF_VMP_FRANKLIN000228

AIG Claims, Inc.
Excess Casualty Claims Department Segmentation Unit
1271 Ave of the Americas FL 37,
New York, NY 10020
Fax: (866) 743-4376
Email: excessfnol@AIG.com

3. You and any other involved Insured must:

   a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or Suit;

   b. authorize us to obtain records and other information;

   c. cooperate with us in the investigation, settlement or defense of the claim or Suit; and

   d. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the Insured because of injury or damage to which this insurance may also apply.

4. No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

H. Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

I. Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

J. Legal Actions Against Us

No person or organization has a right under this policy:

   1. to join us as a party or otherwise bring us into a Suit asking for damages from an Insured; or

   2. to sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured; but we will not be liable for damages that are not payable under this policy or that are in excess of the applicable Limits of Insurance of this policy. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

K. Maintenance of Scheduled Underlying Insurance

You agree that during the Policy Period:

   1. you will keep Scheduled Underlying Insurance in full force and effect;

   2. the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance will not materially change;

**RFP Response of Va. Motorsports Park, LLC, et al. 229**

80517 (11/09)
Page 15 of 24
© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission. DEF_VMP_FRANKLIN000230

3. the total applicable limits of Scheduled Underlying Insurance will not decrease, except for any reduction or exhaustion of aggregate limits by payment of Loss to which this policy applies; and

4. any renewals or replacements of Scheduled Underlying Insurance will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have, had you fully complied with these requirements.

L. **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the Other Insurance. However, this provision will not apply if the Other Insurance is specifically written to be excess of this policy.

M. **Premium**

The first Named Insured designated in Item 1. of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item 6. of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 6. of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we will retain the Minimum Premium as shown in Item 6. of the Declarations for each twelve months of the **Policy Period**.

N. **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first Named Insured designated in Item 1. of the Declarations, this insurance applies:

1. as if each Named Insured were the only Named Insured; and

2. separately to each Insured against whom claim is made or Suit is brought.

O. **Transfer of Rights of Recovery**

1. If any Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after loss to impair these rights and must help us enforce them.

2. Any recoveries will be applied as follows:

   a. any person or organization, including the Insured, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b. we then will be reimbursed up to the amount we have paid; and

   c. lastly, any person or organization, including the Insured that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery will be apportioned among the persons or organizations, including the Insured, in the ratio of their respective recoveries as finally settled.

# RFP Response of Va. Motorsports Park, LLC, et al. 230

© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission. DEF_VMP_FRANKLIN000231

3.  If, prior to the time of an Occurrence, you waive any right of recovery against a specific person or organization for injury or damage as required under an Insured Contract, we will also waive any rights we may have against such person or organization

P.  **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.  **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R.  **Violation of Economic or Trade Sanctions**

If coverage for a claim or Suit under this Policy is in violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or Suit will be null and void.

## VII. DEFINITIONS

A.  **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

1.  notices that are published include material placed on the Internet or on similar electronic means of communication; and

2.  regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

B.  **Auto** means:

1.  a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

2.  any other land vehicle that is subject to a compulsory or financial responsibility law in the state where it is licensed or principally garaged.

However, **Auto** does not include Mobile Equipment.

C.  **Bodily Injury** means bodily injury, sickness or disease sustained by any person, including death, mental anguish, mental injury, shock or humiliation resulting from any of these at any time.

D.  **Crisis Management Event** means an Occurrence that in the good faith opinion of a Key Executive of the Named Insured, in the absence of Crisis Management Services, has or may result in:

1.  damages covered by this policy that are in excess of the total applicable limits of Scheduled Underlying Insurance or the Self-Insured Retention; and

2.  significant adverse regional or national media coverage.

**RFP Response of Va. Motorsports Park, LLC, et al. 231**

Crisis Management Event will include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that any damages arising out of any of the aforementioned must be covered under this policy.

E.   **Crisis Management Firm** means any firm that is shown in Schedule A, Approved Crisis Management Firms attached to and forming part of this policy, which is hired by you to perform **Crisis Management Services** in connection with a **Crisis Management Event.**

F.   **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event:**

   1.   amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event;** and

   2.   amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm,** solely arising from a covered **Crisis Management Event.**

G.   **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured.**

H.   **CrisisResponse Costs** means the following reasonable and necessary  expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event,** provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

   1.   medical expenses;

   2.   funeral expenses;

   3.   psychological counseling;

   4.   travel expenses;

   5.   temporary living expenses;

   6.   expenses to secure the scene of a **Crisis Management Event;** and

   7.   any other expenses pre-approved by the Company.

   **CrisisResponse Costs** does not include defense costs or **Crisis Management Loss.**

I.   **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 3D. of the Declarations.

J.   **Excess Casualty CrisisFund Limit of Insurance** means the Excess Casualty CrisisFund Limit of Insurance shown in Item 3E of the Declarations.

K.   **Hostile Fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

L.   **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

   1.   it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   2.   you have failed to fulfill the terms of a contract or agreement;

# RFP Response of Va. Motorsports Park, LLC, et al. 232

80517 (11/09)

Page 18 of 24
© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

DEF_VMP_FRANKLIN000233

if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of Your Product or Your Work; or

2.  your fulfilling the terms of the contract or agreement.

M.  **Insured** means:

1.  the Named Insured;

2.  if you are designated in the declarations as:

    a.  an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner;

    b.  a partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  a limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers;

    d.  an organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders;

    e.  a trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees;

3.  your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

4.  your volunteer workers only while performing duties related to the conduct of your business;

5.  any person (other than your employee or volunteer worker) or organization while acting as your real estate manager;

6.  your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

7.  any person or organization, other than the Named Insured, included as an additional insured under Scheduled Underlying Insurance, but not for broader coverage than would be afforded by such Scheduled Underlying Insurance.

Notwithstanding any of the above:

    a.  no person or organization is an Insured with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a Named Insured in Item 1 of the Declarations; and

    b.  no person or organization is an Insured under this policy who is not an Insured under applicable Scheduled Underlying Insurance. This provision shall not apply to any organization set forth in the definition of Named Insured in Paragraph R. 2 and 3.

N.  **Insured Contract** means that part of any contract or agreement pertaining to your business under which any Insured assumes the tort liability of another party to pay for Bodily Injury or Property Damage to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**RFP Response of Va. Motorsports Park, LLC, et al. 233**

Insured Contract does not include that part of any contract or agreement:

1. that indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

2. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

3. under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those shown in subparagraph 2. above and supervisory, inspection, architectural or engineering activities.

O. **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the Named Insured is a sole proprietorship). A Key Executive also means any other person holding a title designated by you and approved by us, which title is shown in Schedule B, Additional Key Executives attached to and forming part of this policy.

P. **Loss** means those sums actually paid as judgments or settlements, provided, however, that if expenses incurred to defend a Suit or to investigate a claim reduce the applicable limits of **Scheduled Underlying Insurance**, then Loss shall include such expenses.

Q. **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers;

5. vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. cherry pickers and similar devices used to raise or lower workers;

6. vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment, but will be considered Autos:

   a. equipment designed primarily for:

# RFP Response of Va. Motorsports Park, LLC, et al. 234

i)   snow removal;

ii)  road maintenance, but not construction or resurfacing; or

iii) street cleaning;

b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **Mobile Equipment** does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law are considered **Autos**.

R.  **Named Insured** means:

1.  any person or organization designated in Item 1. of the Declarations;

2.  as of the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, in which **you** maintain an interest of more than fifty percent (50%) as of the effective date of this policy, provided that coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before **you** acquired or formed such organization or after **you** ceased to maintain an interest of more than fifty percent (50%) in such organization; and

3.  after the inception date of this policy, any organization, except for a partnership, joint venture or limited liability company, that **you** acquire or form during the **Policy Period** in which **you** maintain an interest of more than fifty percent (50%), provided that:

a.  coverage provided to such organization under this paragraph does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury and Advertising Injury** that was caused by an **Occurrence** that was committed before **you** acquired or formed such organization or after **you** ceased to maintain an interest of more than fifty percent (50%) in such organization; and

b.  **you** give **us** prompt notice after **you** acquire or form such organization.

Subject to the provisions of Paragraphs 3a. and 3b. above, a partnership, joint venture or limited liability company that **you** acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that **we** make a part of this policy.

**We** may, at **our** option, make an additional premium charge for any organization that **you** acquire or form during the **Policy Period**.

**You** agree that any organization to which paragraphs 2. and 3. above apply, will be required to be included as an **Insured** under applicable **Scheduled Underlying Insurance**. If **you** fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an **Insured**, under the highest applicable limit of **Scheduled Underlying Insurance**.

S.  **Occurrence** means:

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of **your** business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious

**RFP Response of Va. Motorsports Park, LLC, et al. 235**

      2.  the existence of tools, uninstalled equipment or abandoned or unused materials.

Y.   **Property Damage** means:

      1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

      2.  loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the Occurrence that caused it.

    For the purposes of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Z.   **Retained Limit** means:

      1.  the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**; or

      2.  the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured**.

AA.  **Scheduled Underlying Insurance** means:

      1.  the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

      2.  automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

    **Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

BB.  **Self-Insured Retention** means the amount that is shown in Item 5. of the Declarations.

CC.  **Suit** means a civil proceeding in which damages because of **Bodily Injury**, **Property Damage**, or **Personal Injury and Advertising Injury** to which this policy applies are alleged. **Suit** includes:

      1.  an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

      2.  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

DD.  **Your Product** means:

      1.  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         a.  you;

         b.  others trading under your name; or

         c.  a person or organization whose business or assets you have acquired; and

      2.  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or

**RFP Response of Va. Motorsports Park, LLC, et al. 237**

© 2001
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
DEF_VMP_FRANKLIN000238

products.

**Your Product includes:**

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Product; and

2. the providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

EE. **Your Work means:**

1 work or operations performed by you or on your behalf; and

2. materials, parts or equipment furnished in connection with such work or operations.

**Your Work includes:**

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of Your Work; and

2. the providing of or failure to provide warnings or instructions.


IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative.


SECRETARY                                          PRESIDENT

This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the Insurer.


———————————————————
Authorized Representative


# RFP Response of Va. Motorsports
# Park, LLC, et al. 238

80517 (11/09)                          Page 24 of 24
                                       © 2001
                Includes copyrighted material of Insurance Services Office, Inc. with its permission DEF_VMP_FRANKLIN000239

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**ACCESS OR DISCLOSURE OF CONFIDENTIAL OR
PERSONAL INFORMATION EXCLUSION
ENDORSEMENT**

This endorsement modifies insurance provided under the following:

Commercial Umbrella Liability Policy with CrisisResponse®

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following additional exclusion:

**Access or Disclosure of Confidential or Personal Information**

This insurance does not apply to any liability arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described above.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or
Countersignature (Where Applicable)

| 118632 (1/15) | ©All rights reserved. | Page 1 of 1 |
|---|---|---|

**RFP Response of Va. Motorsports Park, LLC, et al. 239**

DEF_VMP_FRANKLIN000240

## MINNESOTA AMENDATORY ENDORSEMENT

Policy No: 29-UD-019919981-0 000
Effective 12:01 a.m. 01/25/2023

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, Named Insured, Named Entity or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following is added and supersedes any provision to the contrary:

A.     No Insurer may cancel a policy of commercial liability and/or property insurance that has been in effect for ninety (90) days or more, except for one or more of the following reasons:

     (1)     nonpayment of premium;

     (2)     misrepresentation or fraud made by or with the knowledge of the Insured or Other Insured(s) in obtaining the policy or in pursuing a claim under the policy;

     (3)     actions by the Insured or Other Insured(s) that have substantially increased or substantially changed the risk insured;

     (4)     refusal of the Insured or Other Insured(s) to eliminate known conditions that increase the potential for loss after notification by the Insurer that the condition must be removed;

     (5)     substantial change in the risk assumed, except to the extent that the Insurer should reasonably have foreseen the change or contemplated the risk in writing the contract;

     (6)     loss of reinsurance by the Insurer which provided coverage to the Insurer for a significant amount of the underlying risk insured. A notice of cancellation under this clause shall advise the Insured that the Insured has ten (10) days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within thirty (30) business days after receipt of the appeal;

     (7)     a determination by the commissioner that the continuation of the policy could place the Insurer in violation of the insurance laws of this state; or

     (8)     nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing the insurance. This provision for cancellation for failure to pay dues does not apply to

76587 (09/09)

**RFP Response of Va. Motorsports Park, LLC, et al. 240**

DEF_VMP_FRANKLIN000241

persons who are retired at 62 years of age or older or who are disabled according to social security standards.

B.    Cancellation for the reasons identified in paragraphs A.(2) through A.(8), above, shall not be effective before sixty (60) days after notice to the Insured. The notice of cancellation shall contain a specific reason for cancellation.

A policy shall not be cancelled for nonpayment of premium pursuant to paragraph A.(1), above, unless the Insurer, at least ten (10) days before the effective cancellation date, has given notice to the Insured of the amount of premium due and the due date. The notice shall state the effect of nonpayment by the due date. No cancellation for nonpayment of premium shall be effective if payment of the amount due is made before the effective date in the notice.

C.    NEW POLICIES – The provisions of paragraphs A., and B., above, do not apply to any insurance policy that has not been previously renewed if the policy has been in effect less than ninety (90) days at the time the notice of cancellation is mailed or delivered. No cancellation under this paragraph C. is effective until at least ten (10) days after the written notice to the Insured.

D.    LONGER TERM POLICIES - A policy may be issued for a term longer than one year or for an indefinite term with a clause providing for cancellation by the Insurer for the reasons stated in paragraph A., above, by giving notice as required by paragraph B., at least sixty (60) days before any anniversary. A new policy will be issued at least once every five (5) years.

E.    NONRENEWAL (NOTICE REQUIRED) - At least sixty (60) days before the date of expiration provided in the policy, a notice of intention not to renew the policy beyond the agreed expiration date must be made to the Insured by the Insurer. If the notice is not given at least sixty (60) days before the date of expiration provided in the policy, the policy shall continue in force until sixty (60) days after a notice of intent not to renew is received by the Insured.

F.    EXCEPTIONS – Paragraph E., above, does not apply if the Insured has insured elsewhere, has accepted replacement coverage, or has requested or agreed to nonrenewal.

G.    The notice of cancellation or nonrenewal will be mailed or delivered to the Insured at the last mailing address known to the Insurer and will contain the reason for cancellation or nonrenewal. Unless otherwise specifically required, proof of mailing of any notice shall be sufficient proof of notice.

All other terms, conditions and exclusions of this policy shall remain the same.

_____
Authorized Representative

# RFP Response of Va. Motorsports Park, LLC, et al. 241

76587 (09/09)

DEF_VMP_FRANKLIN000242

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

**Commercial Umbrella Liability Policy with CrisisResponse®**

**Anti-Stacking Endorsement**

This policy is amended as follows:

**Section VI. CONDITIONS** is amended to include the following additional condition:

> If this insurance and any **Other Insurance** provided by us or any of our affiliated companies will apply to the same claim, **Suit** or **Occurrence**, the maximum limit of insurance under all insurance available will not exceed the highest applicable limit of insurance available under any one policy.  However, this condition will not apply if the insurance is specifically written to be excess of this policy.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or Countersignature
(Where Applicable)

| | |
|---|---|
| 80394 (9/03) | All rights reserved |

**RFP Response of Va. Motorsports Park, LLC, et al. 242**

DEF_VMP_FRANKLIN000243

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M., 01/25/2023
Forms a part of Policy No.: 29-UD-019919981-0 000

Commercial Umbrella Liability Policy with CrisisResponse[SM]

Cross Suits Exclusion

This policy is amended as follows:

**Section V. EXCLUSIONS** is amended to include the following exclusion:

**Cross Suits**

This insurance does not apply to **Bodily Injury, Property Damage, or Personal Injury and Advertising Injury** to a **Named Insured** that is caused, in whole or in part, by any other **Named Insured.**

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_____
Authorized Representative or Countersignature
(in States Where Applicable)

| 80411 (1/04) | |
|---|---|

**RFP Response of Va. Motorsports Park, LLC, et al. 243**

DEF_VMP_FRANKLIN000244

# EXHIBIT 5

# VIRGINIA MOTORSPORTS PARK TRACK RENTAL AGREEMENT

## 2023 MOTORSPORTS SEASON

This document shall constitute an Agreement between Virginia Motor Sport Club (referred to herein as COMPANY), a Virginia establishment and Virginia Motorsports Park, a Virginia establishment (referred to herein as TRACK). The purpose of this Agreement is for producing multiple autocross events (referred to herein as EVENT) at the Virginia Motorsports Park facility on the days of April 1, April 9, June 17, August 5, September 15, November 5, and December 2, 2023.

The TRACK is the operator of the racetrack known as Virginia Motorsports Park, located in Dinwiddie, Virginia.

## TERM

The term of this Agreement shall be one year in length and be from January 1, 2023, through December 31, 2023. This agreement may be terminated by either party by providing a written request for termination within ninety (90) days following each event, each year. If no termination request is submitted by either party within the ninety (90) day period, then the Agreement will have the first right of refusal for the following calendar year.

## GRANT

During the term of this agreement, the TRACK hereby grants an exclusive track rental to EVENT for an autocross event, with one day of events, setup, and teardown in the same day. The EVENT is to pay a rental payment to TRACK for the completion of each event day. The TRACK reserves the right to conduct normal track business during the set-up and tear-down hours, not to unreasonably interfere with the operations of the Event.

## RENTAL PAYMENT

The TRACK shall rent its facilities to EVENT for a total of one thousand, five hundred dollars ($1500.00). In addition to the rental consideration, EVENT shall pay to TRACK specific approved expense ("Estimated Budget") paid by the TRACK for services rendered during the Event as outlined in "Exhibit A" attached hereto.

For this rental payment, the TRACK will be required to provide the following:

- A well-groomed and clean facility
- A functional and well-maintained control tower
- Adequate facility lighting
- Clean and well-maintained restroom and/or port-a-johns with all necessary supplies and services
- Clean and well-maintained pit and spectator parking areas
- Water, electricity, adequate sewage and/or septic service.

1


EXHIBIT 5
Blumberg No. 5117

## POSTPONEMENT & CANCELLATIONS

If the occurrence of rain, snow, fog, windstorm, inclement weather, Act of God, global pandemic or natural disaster causes the scheduled Event to be postponed or cancelled, the TRACK will work with EVENT to mitigate the situation. The Track will provide EVENT with a "rain date" if requested by EVENT. If a mutually acceptable date cannot, despite the good faith efforts of each party, be agreed upon, said Event shall be cancelled. The TRACK and EVENT agree to honor select ticket types for a future EVENT produced Event. In the event of a cancellation the base track rent payment will be prorated to reflect the number of days the facility is actually utilized for promotion and revenue generation.

If the Event is postponed or cancelled due to the actions or decisions of the management of the TRACK (examples – facility renovation, track resurface), then the TRACK agrees to reimburse EVENT for the actual "receipted expenses" incurred in the promotion and production of the Event. The term "receipted expenses" shall include only those expenses which had already been purchased or contractually obligated prior to the postponement or cancellation. These items may include, but not limited to, the cost of advertising, tickets, non-refundable travel expenses, awards and any other event-related expenses, fees or costs.

EVENT retains the right to cancel said event due to Act of God, Natural Disaster, Global Pandemic, Act of Terrorism, or any other catastrophic event without any financial responsibility if notice is received at least sixty (60) days prior to the Event.

## SETTLEMENT

Settlement payment for this Event shall be calculated within ten (10) days immediately following the close of the Event. All track operating expenses or any other expenses related to this Event are to be receipted and these receipts shall become part and parcel of the Event settlement; any approved expenses for which documentation cannot be provided for inspection on settlement day will be reimbursed by EVENT to the TRACK upon receipt by EVENT of the appropriate expense documentation, to be received no later than ten (10) days after settlement day. The TRACK agrees to fully cooperate with EVENT in order that EVENT will receive as quickly as possible all revenues and any requested expense documentation related to the event. The TRACK further agrees to fully cooperate with all accounting and audits of revenue and expenses related to the event as requested or needed. If EVENT requests on-location settlement at the conclusion of Event, EVENT must have all documented expenses in hand during the settlement process as TRACK expenses will be configured during the event. Such request for on-location settlement must be made within seven (7) days of the event date.

## PUBLICITY RIGHTS

The TRACK agrees that all television, film, print, audio and video rights from the Event are the sole possession of the EVENT. The TRACK requests that any official photographer provide a disc/jump drive for future promotional abilities.

## EVENT HOURS

Event hours will be determined by EVENT and shall be published in EVENT advertising and brochures, including gate opening and closing times. The schedule for the Event shall be at the sole discretion of EVENT with agreement and consultation from the TRACK. The hours are subject to change and rescheduling by EVENT in the event of rain, fog, windstorm or any other inclement weather  or Act of God, global pandemic or any other natural disaster that

2

disrupts the scheduled Event. Under any circumstance, Event hours shall comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK.

## FACILITIES

During the period of the Event, EVENT shall have full control of the operation of the track except as specifically provided in this Agreement. All racing activities shall be conducted in conformity with NHRA rules and regulations. EVENT's control shall extend over the participant parking areas, grandstands, infield, etc. During the weekend of the Event, there shall be no other activities taking place at the track except as specifically allowed in this Agreement. Under any circumstance, all racetrack activities shall comply with all laws, ordinances, permits and agreements affecting the operation of the TRACK.

## CONFIDENTIALITY

During the term of this Agreement and for two (2) years thereafter, the TRACK agrees that it shall both protect, maintain and keep in strict confidence and not disclose or use directly or indirectly any financial information, business information or trade secrets concerning EVENT or the Event. This confidentiality provision shall not apply to information obtained subsequently through non-confidential sources. However, the TRACK will not use information obtained confidentially from EVENT to act upon, confirm or deny information obtained subsequently through non-confidential sources.

## INDEMNITY

The TRACK and EVENT hereby agree to indemnify, hold the other harmless and agree to defend the other party, its respective sponsors, successors, licensees, assigns, officers, directors, employees, representatives and those acting on its behalf from and against any and all suits, claims, actions, damages, liability, loss and expense, including attorney's fees reasonably incurred in connection with or arising out of any claim, action, suit, proceeding or appeal therein (such expense to include the cost of reasonable settlements made with a view to curtailment of costs of litigation, which is consented to by the indemnitor), including but not limited to loss of life, bodily injury, damage to business, damage to property, and/or any other liability, including but not limited to damages resulting from any breach or alleged breach of any of the warranties, representations or arrangements contained in this Agreement, occasioned wholly or in part by any act or omission of the indemnitor, its officers, directors, agents, servants, contractors, invitees, licensees, employees or others under the control of the indemnitor. In the event that any person shall make any claim which would be subject to this indemnification provision, the indemnitee shall give prompt written notice of same and the indemnitor shall undertake at its own cost and expense for the defense thereof and shall supply competent and experienced counsel to defend any such claim, suit, action, proceeding or appeal therein. The indemnitees shall not settle or compromise any such claim, suit, action, proceeding, or appeal therein without prior written approval of the indemnitor, which approval shall not be unreasonably withheld. This indemnification shall survive the expiration or termination of this Agreement.

## MODIFICATION OR AMENDMENTS

No amendment, change or modification of this Agreement shall be valid unless in writing and signed by all parties hereto

3

## SUCCESSORS AND ASSIGNS

The TRACK shall not assign or sublease its rights or obligations under this Agreement without the prior written consent of EVENT, which such consent shall not be unreasonably withheld. EVENT shall not assign its rights or obligations hereunder without the prior written consent of TRACK, which such consent shall not be unreasonably withheld.

## NUMBER AND GENDER

In this Agreement, masculine, feminine, or neuter gender and the singular or plural number shall each be deemed to include the others whenever the context so requires.

## EXHIBITS

All exhibits attached hereto and referred to herein are hereby incorporated herein as though set forth at length.

## SEPARATE COUNTERPARTS

This document may be executed in one or more separate counterparts, each of which, when so executed, shall be deemed to be an original. Such counterparts shall together constitute and be one and the same instrument.

## ENTIRE AGREEMENT

This document constitutes the entire understanding and agreement of the parties, and any and all prior agreements, understandings or representations are hereby terminated and canceled in their entirety and are of no force or effect.

## HEADINGS

The headings appearing at the commencement of the paragraphs hereof are descriptive only and for convenience in reference. Should there be any conflict between any such heading and the paragraph, then the paragraph and not such heading shall control and govern in the construction of the document.

4

## GOVERNING LAW, SEVERABILITY, VENUE

This Agreement is entered into in the State of Virginia. In the event that any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, void or voidable, the remaining portions of this Agreement shall remain in full force and effect. In any legal proceedings arising out of or relating to this Agreement, the Agreement shall be governed and construed in accordable with the laws of the State of Virginia. Each party hereto consents to the exclusive jurisdiction of the Federal and State courts of Virginia located in Dinwiddie County, Virginia.

By signing below, both parties, EVENT and the TRACK, have agreed to the terms and the conditions of this Agreement.

FOR:   EVENT

By: _____

Print:   Representative

Title:   Virginia Motor Sport Club

Date:   1 - 18 - 2023

FOR:   TRACK

By: _____

Print:   Tyler Crossnoe

Title:   Vice President, Virginia Motorsports Park

Date:   January 18, 2023

5

# EXHIBIT 6

VIRGINIA:

IN THE CIRCUIT COURT FOR THE COUNTY OF DINWIDDIE

TIMOTHY KLABUNDE,

    Plaintiff,

v.                                Case No. CL25000168-00

RICKY ARNOLD MCNELLY, et al.,

    Defendants.

**DEFENDANT VIRGINIA MOTOR SPORT CLUB'S**
**RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSION**

Defendant Virginia Motor Sport Club ("VMSC"), by counsel, provides the following

Responses to Plaintiff's First Request for Admission:

Requests

1.    Admit that on April 1, 2023, Virginia Motor Sport Club was sponsoring an

autocross event at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.

    **RESPONSE**: **Admitted.**

2.    Admit that on April 1, 2023, Virginia Motor Sport Club was sponsoring an

autocross event with racing vehicles at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.

    **RESPONSE**: **Admitted.**

3.    Admit that on April 1, 2023, Virginia Motor Sport Club was sponsoring an

autocross event with racing vehicles on premises owned by Va Motorsports Park, LLC d/b/a

Virginia Motorsports Park, located at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.


EXHIBIT 6

**RESPONSE**: Admitted that Virginia Motor Sport Club was sponsoring an autocross event. Otherwise, denied. It is understood that Virginia Motorsports Park, L.C. owned the premises and leased it to The Franklin Companies.

4.    Admit that on April 1, 2023, Virginia Motor Sport Club was sponsoring an autocross event with racing vehicles on premises leased by Va Motorsports Park, LLC d/b/a Virginia Motorsports Park, located at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.

**RESPONSE**: Admitted that Virginia Motor Sport Club was sponsoring an autocross event. Otherwise, denied. It is understood that Virginia Motorsports Park, L.C. owned the premises and leased it to The Franklin Companies.

5.    Admit that on April 1, 2023, at approximately 1:50 p.m., Ricky (Rick) McNelly was a participant in an autocross event at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.

**RESPONSE**: Admitted.

6.    Admit that on April 1, 2023, at approximately 1:50 p.m., Ricky (Rick) McNelly was participating in an autocross event at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803, by racing his vehicle on the autocross course at that location.

**RESPONSE**: Admitted.

7.    Admit that on April 1, 2023, at approximately 1:50 p.m., Ricky (Rick) McNelly was permitted to enter into the restricted area of competition as a competitor during the autocross event at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.

**RESPONSE**: Admitted.

8.    Admit that on April 1, 2023, at approximately 1:50 p.m., Tim Klabunde was a participant in an autocross event at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.

**RESPONSE**: Admitted.

2

9.    Admit that on April 1, 2023, at approximately 1:50 p.m., Tim Klabunde was participating in the autocross event at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803, by serving as a station worker on the autocross course at that location.

**RESPONSE**: **Admitted.**

10.    Admit that on April 1, 2023 at approximately 1:50 p.m., Tim Klabunde was permitted to enter into the restricted area of competition while occupied by competitors at 8018 Boydton Plank Road, Dinwiddie, Virginia 23803.

**RESPONSE**: **Admitted.**

**VIRGINIA MOTOR SPORT CLUB**

By Counsel

James R. Jebo (VSB No. 48418)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
swellman@hccw.com
jjebo@hccw.com

## CERTIFICATE

I hereby certify that a true copy of the foregoing was sent via email this 14th day of May, 2025 to:

Richard C. Armstrong, Esq. (VSB No. 46053)
Kari J. La Fratta, Esq. (VSB No. 87658)
Allen, Allen, Allen & Allen
946 Grady Ave., Suite 201
Charlottesville, VA 22903
434-284-4283 - Phone
434-284-4283 - Fax
kari.lafratta@allenandallen.com

3

Richard.Armstrong@AllenandAllen.com

Matthew D. Green, Esq.
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998
804-648-1636 - Phone
804-783-7291 - Fax
MGreen@sandsanderson.com

G. Christopher Jones, Jr., Esq.
VSB No. 82260
Sinnott Nuckols & Logan, P.C.
13811 Village Mill Drive
Midlothian, VA 23114-4365
804-378-7600 - Phone
804-378-2610 - Fax
cjones@snllaw.com

Christopher R. Hedrick, Esq.
VSB No. 34885
Mason, Mason, Walker & Hedrick, P.C.
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
757-873-3909 - Phone
757-873-1781 - Fax
chedrick@masonwalker.com

C. Stephen Setliff, Esq.
Sean Barrick, Esq.
Setliff Law, P.C.
4940 Dominion Blvd.
Glen Allen, VA 23060

James R. Jebo

4